**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| CAROLYN W. HAFEMAN, | |
| Plaintiff, | |
| v. | Civil Action No. 6:21-cv-00696-ADA |
| LG ELECTRONICS, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Carolyn W. Hafeman ("Hafeman" or "Plaintiff"), by and through her undersigned counsel, hereby files this First Amended Complaint for Patent Infringement against Defendant LG Electronics, Inc. ("LG" or "Defendant"). For her complaint, Hafeman alleges as follows:

**INTRODUCTION**

1.      This is an action for patent infringement against Defendant LG. Plaintiff seeks judgment that LG has directly and indirectly infringed United States Patent Nos. (i) 9,892,287, (ii) 10,325,122, and (iii) 10,789,393 (collectively, the "Asserted Patents") by manufacturing and selling cellular, computer tablet, and laptop devices which include systems for displaying the owner's name and contact information, as well as a remote access system to change the information displayed and lock future uses of the device, to aid in the recovery of the device.

**THE PARTIES**

2.      Plaintiff Carolyn W. Hafeman is an individual who is a resident and citizen of the State of Colorado, and currently resides in the County of Jefferson.

3.      Defendant LG Electronics, Inc. is a corporation organized and existing under the laws of Korea with its principal place of business at LG Twin Towers, 128 Yeoui-daero, Yeongdungpo-gu, Seoul 150-721, Republic of Korea. On information and belief, LG may be

served with process at its principal place of business. LG designs, makes, and sells many products throughout the world for consumer use, including wireless mobile communications devices.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Hafeman's claims pursuant to 28 U.S.C. §§ 1338(a) because this matter arises under the patent laws of the United States, Title 35 of the United States Code.

5.      This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly or through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391(c)(3). Personal jurisdiction over Defendant exists in this District. Upon information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the asserted patents. Further, the Accused Products asserted in this complaint are sold throughout Waco, Texas, and the infringing features are used throughout Waco, Texas. Additionally, venue is proper as to a foreign defendant in any district. 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018). LG is a foreign corporation organized under the laws of Korea with a principal place of business in Korea.

## THE INVENTOR AND ASSERTED PATENTS

7.      Hafeman began working in the security business with her father after she graduated from college. Together, the father-daughter duo worked to develop and sell security locks that were physically installed on computers to prevent theft. Upon her father's retirement, Hafeman began developing systems of electronic security that could be used to fully protect a device.

8.      On November 25, 2002, Hafeman applied for a patent for her computer recovery and return invention. U.S. Patent No. 8,601,606, a continuation-in-part of this application, entitled "Computer Recovery or Return" ("the '606 Patent") was duly issued by the United States Patent and Trademark Office (the "USPTO") on December 3, 2013, after years of extensive review.

9.      In 2007, realizing that no one else was utilizing this type of technology still, Hafeman developed a system that could be uploaded and stored onto the memory of a device that would display the owner's name and contact information to assist in the device's recovery. This information would be displayed either before or with a lock screen, allowing it to be visible to any person in possession of the device. Hafeman also developed the system to include remote access. Using the internet, the owner (or an authorized third party) could remotely access the security system through an interactive program stored in the memory of the device. With this remote access, the owner could change the information displayed on the screen of the device to show a warning message (e.g., "This computer has been stolen!") and even lock the device from future use.

10.      In 2007, Hafeman incorporated FrontDoorSoftware Corporation and brought the computer recovery system to market. By 2009, FrontDoorSoftware had customers in government, retail, corporate, healthcare, and education. Educational customers included campus-wide licenses for universities like UCLA, USC, Cornell, Brown, Johns Hopkins, and dozens more. In 2011, FrontDoorSoftware received an award, placing first out of 175 companies, as the top start-up at a Vator Pitching Event in San Francisco.

11.      Since Hafeman's initial patent, she has been granted six additional patents relating to the '606 Patent: U.S. Patent Nos. (i) 9,021,610 ("the '610 Patent"), (ii) 9,390,296 ("the '296 Patent"), (iii) 9,672,388 ("the '388 Patent"), (iv) 9,892,287 ("the '287 Patent"), (v) 10,325,122 ("the '122 Patent"), and (vi) 10,789,393 ("the '393 Patent"). Relevant to the claims in this matter are the '287 Patent, the '122 Patent, and the '393 Patent (collectively, the "Asserted Patents"). Each of the Asserted Patents are attached as Exhibit A to this complaint. Hafeman is the sole owner of the Asserted Patents, as she has never sold or otherwise transferred her ownership.

3

12.     Each Asserted Patent includes method, system, apparatus, and stored computer program claims. The asserted claims in this case include the independent and dependent claims of the method, system, apparatus, and stored computer program claims in the Asserted Patents (the "Asserted Claims").

13.     Claim 1 of the '122 Patent is an exemplary method claim. It recites:

A method for displaying information to assist with returning a computer comprising the steps of:

> [a] activating a processor to display on a display screen on the computer which displays information concerning the return information for returning the computer to an owner from data stored in a memory of the computer, the screen displaying return information before or with a lock screen, to facilitate return of the computer and which is maintained on or before or with the lock is screen so the return information is visible to anyone viewing the display screen, the lock screen locks the display screen and protects the computer;
>
> [b] initiating or changing return information which appears on the display through remote communications without assistance by a user with the computer, wherein the changing of the return information is done through an interactive program stored in the memory of the computer which is remotely accessed only by the owner of the computer or the party authorized by the owner to enable the initiating or changing of the display screen;
>
> [c] displaying the screen before or with a security prompt which prevents the user from accessing operatively the computer; and
>
> [d] activating the processor to allow a warning message to the user.

14.     Claim 4 of the '122 Patent is an exemplary apparatus claim. It recites:

An apparatus for displaying information at a computer owned by an owner which can be used by an owner or user, the apparatus comprising:

> [a] a computer comprising;

4

[b] a memory;

[c] a display; and

[d] a processor in communication with the display and the memory which displays on the display with the computer recovery information for returning the computer to an owner from data stored in the memory of the computer to facilitate return of the computer and which is maintained on or before or with the lock screen so the return information is visible to anyone viewing the display, the processor initiating or changing the return information through remote communication without assistance by the user with the computer, wherein the changing of the recovery information is done through an interactive program stored in the memory of the computer and which is remotely accessed only by the owner of the computer or the party authorized by the owner to enable the initiating or changing of the recovery information on the display, the lock screen locks the display screen and protects the computer.

15.     Finally, Claim 7 of the '122 Patent is an exemplary stored computer program claim. It recites:

A computer program stored in a non-transient memory for displaying information to assist with returning a computer to its owner comprising the computer generated steps of:

[a] displaying by a processor on a display of the computer which displays recovery information for the returning the computer to an owner from data stored in a memory of the computer, the display displaying the recovery information before or with a lock screen, to facilitate return of the computer and which is maintained on or before or with the lock screen so the return information is visible to anyone viewing the display, the lock screen locks the display screen and protects the computer; and

[b] initiating or changing the recovery information through remote communication without assistance by the user with the computer, wherein the initiating or changing

of the recovery information is done through an interactive program stored in the memory of the computer and is remotely accessed only by the owner of the computer of the party authorized by the owner to enable the initiating or changing of the recovery information.

## DEFENDANT'S ACCUSED PRODUCTS

16.     Defendant and/or its divisions, subsidiaries, and/or agents is engaged in the business of making, offering for sale and/or selling cellular and computer devices that are configured to include systems that display the owner's name and contact information on the screen before or with the lock screen, as well as provide remote access to allow the owner (or authorized third party) to lock the device from future access and display a warning message. As so configured, LG's devices, when used, perform all of the steps of the methods claimed and include all of the components recited in the Asserted Claims. These devices include all LG-made Android OS cell phones, tablets, and laptops with the "Find My Device" feature, including: (i) LG Wing LM-F100TM, (ii) LG K92 LM-K920TM, (iii) LG Velvet LM-G900TM, (iv) LG Velvet LM-G900MM, (v) LG G8X ThinQ, (vi) LG Q70, LG K51, (vii) LM-K300QM, (viii) LG Stylo6, (ix) LG Stylo5, (x) LG Xpression Plus 3 LM-K400AKR, (xi) LG K30 LM-X320QMG, (xii) LG K22 LM-K200QM, (xiii) LG K31 Rebel LGL355DL, (xiv) LG K8X LM-K300UM, (xv) LG Harmony 4 LM-K400AM, (xvi) LG Reflect LG L555DL, (xvii) LG Risio 4 LM-K300AM4, (xviii) LG Risio 4 LM-K300CMR, (xix) LG V60 ThinQ LM-V600TM, (xx) LG Neon Plus LM-X320APM, (xxi) LG Neon Plus LM-X320AM8, (xxii) LG Tribute Royal LM-X320PM, (xxiii) LG K40 LM-X420AS, (xxiv) LG Journey LTE LG L322DL, (xxv) LG G7 Fit, (xxvi) LG Arena 2 LM-X320APM, (xxvii) LG Arena 2 LM-X320AM8, (xxviii) LG Prime 2 LM-X320AA, (xxxix) LG GPad 5 10.1 LM-T600TS, (xl) LG GPad 5 10.1 LM-T600QS, (xli) LG GPad 5 10.1 LM-T600MS, (xlii) LG Gram Laptop, 14Z90P Series, (xliii) LG Gram Laptop, 15Z90P Series, (lxiv) LG Gram Laptop, 15Z90P Series, (lxv) LG Ultra Laptop, 13U70P Series, and (lxvi) LG Ultra Laptop, 15U70P Series (the "Accused Products").

17.     Each Accused Product is configured to perform all of the steps and includes all of the components recited in the Asserted Claims, during normal use. On information and belief, LG has actually used the Accused Products to perform each step of the methods and included components recited in the Asserted Claims, within the United States, either itself, through intermediaries, or in conjunction with one or more joint ventures or customers.

18.     LG's product literature, website, and other publicly available information shows that the Accused Products are configured to perform all of the steps and include all of the components of the Asserted Claims during normal use.

19.     The Accused Products are pre-loaded with a "Find My Device" feature that is meant to assist in the recovery of such device. Specifically, the cellular and tablet Accused Products are pre-loaded with Google's "Find My Device" feature, which is now part of Google Play Protect. The laptop/computer Accused Products are pre-loaded with Microsoft's "Find My Device" feature, which is automatically included in all Windows 10 devices. Using these built-in features, each Accused Product displays the owner's contact information through a processor using data stored in the device's memory. This owner contact information is displayed before or with the device's lock screen, such that it is visible to anyone in possession of the device. By using an internet browser, each Accused Product is also capable of being remotely accessed in order to change and/or add additional information displayed on the device's screen. This access can only be initiated by the owner, or authorized third party, using a Google or Microsoft Account login. Through this remote access, the owner of an Accused Product can also lock the device to prevent future access, as well as display a custom warning message at or before the lock screen. With the Accused Product being locked through remote access, the device cannot be accessed until the newly set password has been provided through a security prompt on the device.

20.     Thus, as configured, the Accused Products directly infringe the method Asserted Claims of the Asserted Patents.

21.     Further, the Accused Products, which are "computers" (i.e., cell phones, computer tablets, and laptops), include components of a memory, a display, and a processor in

communication with the display. When in use, the "Find My Device" pre-loaded onto the Accused Product uses a processor to communicate with the display to show the owner's contact information by using data stored in the device's memory. This contact information is displayed at or before the lock screen. In addition to the features described above, the Accused Products also allow the owner to remotely control and design the display screen to include custom buttons (e.g., a "Call" button) and design the layout of the displayed contact information.

22.     In combination of the features and components described above, the Accused Products directly infringe the apparatus Asserted Claims of the Asserted Patents.

23.     As described, the Accused Products are pre-loaded with Google's (for the cellular and tablet devices) and Microsoft's (for the laptop devices) Find My Device features. As such, the Accused Products include a computer program that is stored, at least in part, in their non-transient memory. This feature is pre-loaded into the Accused Products to assist in the return of a device to its owner. As stated above, the "Find My Device" feature displays the owner's contact information through a processor using data stored in the device's memory. This owner contact information is displayed before or with the device's lock screen so that it is visible to anyone in possession of the device. By using an internet browser, each Accused Product is also capable of being remotely accessed in order to change and/or add additional information displayed on the device's screen. This access can only be initiated by the owner, or authorized third party, using a Google or Microsoft Account login. Through this remote access, the owner of an Accused Product can also lock the device to prevent future access, as well as display a custom warning message at or before the lock screen. With the Accused Product being locked through remote access, the device cannot be accessed until the newly set password has been provided through a security prompt on the device.

24.     As the Accused Products are pre-loaded with the "Find My Device" feature, which preforms the steps of the stored computer program Asserted Claims of the Asserted Patents, the Accused Products infringe those Asserted Claims.

25.     Additionally, on information and belief, LG has been and is aware of the Asserted Patents. On or about March of 2018, Tangible IP, a patent broker retained by Plaintiff, began to assist in efforts to enforce, license, or sell Plaintiff's patent portfolio. On information and belief, sometime after March 2018 Tangible IP communicated with Defendant, notifying it of the Asserted Patents (the "Tangible IP 2018 Notification"). Tangible IP further created an Executive Summary of Plaintiff's Patent Portfolio that, on information and belief, was made available to Defendant. The Executive Summary included, among other things, a list of the patents in the portfolio, claim charts showing how the Asserted Patents read on Defendant's Accused Devices that use Android's and Microsoft's "Find My Device" features, a description of the patents' market relevance, information about Plaintiff and her company, and evidence of use. On information and belief, Tangible IP sent Defendant multiple follow-up notifications, which included the additional information from the original Executive Summary. LG never responded to the notice of information regarding the Asserted Patents. On information and belief, Defendant was also aware of the Asserted Patents as Plaintiff took substantial efforts to make information regarding the Asserted Patents publicly available via news outlets mentioning Plaintiff's patents, Plaintiff's press releases, Plaintiff's participation in large start-up contests attended by thousands, IPWatchdog's media news story coverage, Tangible IP's marketing efforts, Tangible IP's monthly newsletters, information provided at Intellectual Property conferences, LinkedIn posts, as well as information provided by organizations such as RPX Corporation, of which Defendant is a member.

26.     LG has not obtained a license to use the methods apparatuses, and stored programs claimed in the Assert Patents or to offer for sale in the United States products containing the recited apparatuses and stored programs, and/or that perform the recited methods.

## COUNT I – DIRECT PATENT INFRINGEMENT (35 U.S.C. § 271(a))

### (U.S. Patent No. 9,892,287)

27.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–26 above, as if fully set forth herein.

28.     Defendant has infringed, and is continuing to infringe, the '287 Patent, either literally or under the doctrine of equivalents, by, *inter alia*, making, selling, or otherwise offering to sell in the United States products, including the Accused Products, for commercial sale which incorporate the methods and components of the Asserted Claims of the '287 Patent.

29.     Defendant's acts detailed herein, including the making and selling of the Accused Products, directly infringe the '287 Patent, because—as shown in Paragraphs 13–25 *supra*—the Accused Products are configured to perform all of the steps during normal use and include all of the components recited in those claims.

30.     Defendant has directly infringed the Asserted Claims of the '287 Patent by making and selling the Accused Products, which perform all of the steps and include all of the components of those claims within the U.S., either itself, through intermediaries, or in conjunction with joint ventures and/or customers. Specifically, on information and belief, Defendant has performed all of the steps and Defendant's Accused Products contain all limitations, recited in each Asserted Claim of the '287 Patent, either personally, through intermediaries, or in conjunction with joint venturers and/or customers, by operating the Accused Products within the U.S., and making and selling the Accused Products within the United States. Such manufacturing, sales, and operations necessarily perform all the steps and include all the components recited in those claims, as shown in Paragraphs 13–25 *supra*.

## COUNT II – INDUCEMENT OF INFRINGEMENT (35 U.S.C. § 271(b))

## (U.S. Patent No. 9,892,287)

31.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–30 above, as if fully set forth herein.

32.     Upon information and belief, Defendant has actively induced infringement of the Asserted Claims of the '287 Patent, in violation of 35 U.S.C. § 271(b).

33.     Upon information and belief, Defendant has actively induced infringement of these claims by selling the Accused Products to one or more customers in the U.S., along with documents and instructions demonstrating how to use the devices to infringe the claims, and/or by providing

service, support, or other active assistance to its customers in using the Accused Products in the U.S. The documentation which Defendant has provided includes, at least: (i) the product information for the Accused Products set forth on Defendant's websites, including httpps://lg.com/us, which includes various manuals, specifications, and other technical documentation for the Accused Products provided on Defendant's websites; and (ii) the other product documentation which, on information and belief, Defendant provides in electronic and/or paper form to its customers for the Accused Products.

34.     For instance, Defendant published technical support information on its website which instructs users on how to use the Accused Product to display such information described above and how to remotely access such features. *See* https://www.lg.com/us/support/help-library/how-to-use-google-find-my-phone-and-device-reset-CT10000026-20150375512868 (LG Support Page).

35.     The LG Support Page contains extensive instructions on how to configure and operate the Accused Products to perform the infringing activities. For instance, the LG Support Page lays out in a step-by-step process how to correctly remotely log in to the processor to access information on the device which could either display the contact information of the owner, lock the device, and/or write a custom message to the individual in possession of the device. *See* LG Support Page.

36.     Accordingly, the LG Support Page expressly teaches Defendant's customers how to use the Accused Products to infringe the Asserted Claims of the '287 Patent. Defendant's publication of this website shows both that Defendant specifically intended to induce infringement by its customers, and that Defendant engaged in acts—including the publication of the LG Support Page—which actually did induce infringement by its customers. A customer, following the instructions on the LG Support Page, would necessarily infringe each of the Asserted Claims of the '287 Patent.

37.     As shown in Paragraphs 13–25 *supra*, when Defendant's customers use the Accused Products in the U.S., such use meets all of the elements recited in the Asserted Claims of

the '287 Patent. Thus, Defendant has committed affirmative acts (i.e., selling the Accused Products, providing documents on how to use the Accused Products, and/or providing service or technical support, or other active assistance to its customers) which have resulted in the direct infringement of the '287 Patent by its customers in the United States.

38.     Further, on information and belief, when Defendant performed the acts of inducement outlined in paragraphs 33–36 *supra* (and other acts of inducement), it was aware of the Asserted Patents, and knew (or was willfully blind) that its customers' normal use of the Accused Products would infringe the Asserted Claims of the Asserted Patents.

39.     As stated above, on information and belief, sometime after March 2018, Tangible IP, a patent broker retained by Plaintiff, communicated with Defendant, notifying it of the Asserted Patents. Tangible IP further created an Executive Summary of Plaintiff's Patent Portfolio that, on information and belief, was made available to Defendant. The Executive Summary included, among other things, a list of the patents in the portfolio, claim charts showing how the Asserted Patents read on Defendant's Accused Devices that use Android's and Microsoft's "Find My Device" features, a description of the patents' market relevance, information about Plaintiff and her company, and evidence of use. On information and belief, LG never responded to the notice of information regarding the Asserted Patents.

40.     Defendant is a sophisticated company with ~$50 billion in annual revenue. On information and belief, Defendant has a large intellectual property department, with multiple in-house counsel devoted to analyzing patent issues. Defendant also has relationships with many outside law firms to address patent issues.

41.     In view of the foregoing, at all relevant times, Defendant has known about the existence and relevance of the Asserted Patents and has known that the operation of the Accused Products, as configured and used during normal operation, infringes the Asserted Claims of the Asserted Patents during normal use.

42.     On information and belief, when Defendant sold the Accused Products to U.S. customers, and/or provides technical support, or other active assistance to such customers, it did

so with the specific intent to encourage the customers to perform acts constituting direct infringement of the Asserted Patents. This is evidenced by Paragraphs 38–41 *supra*, which show that Defendant was aware of the existence and relevance of the Asserted Patents at all relevant times. Because Defendant was aware of the Asserted Patents' relevance and existence, it always knew—based on information and belief—that its customers' use of the Accused Products would constitute infringement of the Asserted Patents. Defendant's decision to continue marketing the Accused Products to U.S. customers, despite knowing that such customers' use would constitute direct infringement, evidences that Defendant had specific intent to encourage direct infringement of the Asserted Patents by its customers.

43.     Therefore, Defendant has unlawfully induced infringement of the '287 Patent, in violation of 35 U.S.C. § 271(b).

## COUNT III – CONTRIBUTORY INFRINGEMENT (35 U.S.C. § 271(c))

## (U.S. Patent No. 9,892,287)

44.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–43 above, as if fully set forth herein.

45.     Defendant has committed contributory infringement of the method claims of the '287 Patent, in violation of 35 U.S.C. § 271(c).

46.     Defendant has committed contributory infringement by selling, offering to sell, and/or importing into the United States the Accused Products which allows customers to perform the steps of the method claims of the '287 Patent. As shown in Paragraphs 13–25 *supra*, the Accused Products, as normally configured, allow customers to perform actions which display the contact information for the device's owner and allow for remote access to either lock the device to prevent future access or display a custom message to the individual in possession of the device. These actions, when used as configured during normal operation, perform the steps of the method claims of the '287 Patent.

47.     The "Find My Device" feature of the Accused Products practices a material part of the method claims of the '287 Patent, because it performs several of the key functions of the '287

Patent—i.e., it displays the contact information for the device's owner, and it allows for remote access to either lock the device to prevent future access or to display a custom message to the individual in possession of the device.

48.     On information and belief, prior to the filing of the complaint, Defendant had actual knowledge, or was willfully blind, that the "Find My Device" feature of the Accused Products was especially made or adapted for use in a manner that infringes the Asserted Claims of the '287 Patent. As shown in Paragraphs 38–41 *supra*, Defendant knew, or was willfully blind, that the Accused Products are configured to infringe the '287 Patent upon normal use, at least because of the March 2018 Letter. For the reasons set forth in Paragraphs 38–41 *supra*, and on information and belief, Defendant knew, or was willfully blind, that normal use of the Accused Products infringes the Asserted Claims of the '287 Patent. Despite that knowledge (or willful blindness), Defendant actively sold the Accused Products in the United States, knowing that its customers would use the Accused Products in the United States, and knowing (or being willfully blind) that such use would constitute direct infringement of the Asserted Claims of the '287 Patent.

49.     The "Find My Device" feature of the Accused Products is not a staple article of commerce, and—as configured to perform the steps of the method claims —is not capable of substantial non-infringing use, as its only function is to perform the steps of the method claims. For the reasons set forth above, use of the Find My Device feature will always, during normal use, infringe the method claims of the '287 Patent.

50.     Accordingly, Defendant has unlawfully contributed to infringement of the method claims of the '287 Patent, in violation of 35 U.S.C. § 271(c), by selling the Accused Products, whose "Find My Device" feature is especially adapted to infringe the method claims of the '287 Patent.

## COUNT IV – DIRECT PATENT INFRINGEMENT (35 U.S.C. § 271(a))

### (U.S. Patent No. 10,325,122)

51.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–50 above, as if fully set forth herein.

52.     Defendant has infringed, and is continuing to infringe, the '122 Patent, either literally or under the doctrine of equivalents, by, *inter alia*, making, selling, or otherwise offering to sell in the United States products, including the Accused Products, for commercial sale which incorporates the methods and components of the Asserted Claims of the '122 Patent.

53.     Defendant's acts complained herein, including the making and selling of the Accused Products, directly infringe the '122 Patent, because—as shown in Paragraphs 13–25 *supra*—the Accused Products are configured to perform all of the steps during normal use and include all of the components recited in those claims.

54.     Defendant has directly infringed the Asserted Claims of the '122 Patent by making and selling the Accused Products, which perform all of the steps and include all of the components of those claims within the U.S., either itself, through intermediaries, or in conjunction with joint ventures and/or customers. Specifically, on information and belief, Defendant has performed all of the steps and Defendant's Accused Products contain all limitations, recited in each Asserted Claim of the '122 Patent, either personally, through intermediaries, or in conjunction with joint venturers and/or customers, by operating the Accused Products within the U.S., and or making and selling the Accused Products within the United States. Such manufacturing, sales, and operations necessarily performs all the steps and includes all the components recited in those claims, as shown in Paragraphs 13–25 *supra*.

## COUNT V – INDUCEMENT OF INFRINGEMENT (35 U.S.C. § 271(b))

### (U.S. Patent No. 10,325,122)

55.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–54 above, as if fully set forth herein.

56.     Upon information and belief, Defendant has actively induced infringement of the Asserted Claims of the '122 Patent, in violation of 35 U.S.C. § 271(b).

57.     Upon information and belief, Defendant has actively induced infringement of these claims by selling the Accused Products to one or more customers in the U.S., along with documents and instructions demonstrating how to use the devices to infringe the claims, and/or by providing

service, support, or other active assistance to its customers in using the Accused Products in the U.S. The documentation which Defendant has provided includes, at least: (i) the product information for the Accused Products set forth on Defendant's websites, including httpps://lg.com/us, which includes various manuals, specifications, and other technical documentation for the Accused Products provided on Defendant's websites; and (ii) the other product documentation which, on information and belief, Defendant provides in electronic and/or paper form to its customers for the Accused Products.

58.     For instance, Defendant published technical support information on its website which instructs users on how to use the Accused Product to display such information described above and how to remotely access such features. *See* https://www.lg.com/us/support/help-library/how-to-use-google-find-my-phone-and-device-reset-CT10000026-20150375512868   (LG Support Page).

59.     The LG Support Page contains extensive instructions on how to configure and operate the Accused Products to perform the infringing activities. For instance, the LG Support Page lays out in a step-by-step process how to correctly remotely log in to the processor to access information on the device which could either display the contact information of the owner, lock the device, and/or write a custom message to the individual in possession of the device. *See* LG Support Page.

60.     Accordingly, the LG Support Page expressly teaches Defendant's customers how to use the Accused Products to infringe the Asserted Claims of the '122 Patent. Defendant's publication of this Website shows both that Defendant specifically intended to induce infringement by its customers, and that Defendant engaged in acts—including the publication of the LG Support Page—which actually did induce infringement by its customers. A customer, following the instructions on the LG Support Page, would necessarily infringe each of the Asserted Claims of the '122 Patent.

61.     As shown in Paragraphs 13–25 *supra*, when Defendant's customers use the Accused Products in the U.S., such use meets all of the elements recited in the Asserted Claims of

the '122 Patent. Thus, Defendant has committed affirmative acts (i.e., selling the Accused Products, providing documents on how to use the Accused Products, and/or providing service or technical support, or other active assistance to its customers) which have resulted in the direct infringement of the '122 Patent by its customers in the United States.

62.     Further, on information and belief, when Defendant performed the acts of inducement outlined in paragraphs 33–36 *supra* (and other acts of inducement), it was aware of the Asserted Patents, and knew (or was willfully blind) that its customers' normal use of the Accused Products would infringe the Asserted Claims of the Asserted Patents.

63.     As stated above, on information and belief, sometime after March 2018 Tangible IP, a patent broker retained by Plaintiff, communicated with Defendant, notifying it of the Asserted Patents. Tangible IP further created an Executive Summary of Plaintiff's Patent Portfolio that, on information and belief, was made available to Defendant. The Executive Summary included, among other things, a list of the patents in the portfolio, claim charts showing how the Asserted Patents read on Defendant's Accused Devices that use Android's and Microsoft's "Find My Device" features, a description of the patents' market relevance, information about Plaintiff and her company, and evidence of use. On information and belief, LG never responded to the notice of information regarding the Asserted Patents.

64.     Defendant is a sophisticated company with ~$50 billion in annual revenue. On information and belief, Defendant has a large intellectual property department, with multiple in-house counsel devoted to analyzing patent issues. Defendant also has relationships with many outside law firms to address patent issues.

65.     In view of the foregoing, at all relevant times, Defendant has known about the existence and relevance of the Asserted Patents, and has known that the operation of the Accused Products, as configured and used during normal operation, infringes the Asserted Claims of the Asserted Patents during normal use.

66.     On information and belief, when Defendant sold the Accused Products to U.S. customers, and/or provides technical support, or other active assistance to such customers, it did

so with the specific intent to encourage the customers to perform acts constituting direct infringement of the Asserted Patents. This is evidenced by Paragraphs 38–41 *supra*, which show that Defendant was aware of the existence and relevance of the Asserted Patents at all relevant times. Because Defendant was aware of the Asserted Patents' relevance and existence, it always knew—based on information and belief—that its customers' use of the Accused Products would constitute infringement of the Asserted Patents. Defendant's decision to continue marketing the Accused Products to U.S. customers, despite knowing that such customers' use would constitute direct infringement, evidences that Defendant had specific intent to encourage direct infringement of the Asserted Patents by its customers.

67.     Therefore, Defendant has unlawfully induced infringement of the '122 Patent, in violation of 35 U.S.C. § 271(b).

## COUNT VI – CONTRIBUTORY INFRINGEMENT (35 U.S.C. § 271(c))

### (U.S. Patent No. 10,325,122)

68.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–67 above, as if fully set forth herein.

69.     Defendant has committed contributory infringement of the method claims of the '122 Patent, in violation of 35 U.S.C. § 271(c).

70.     Defendant has committed contributory infringement by selling, offering to sell, and/or importing into the United States the Accused Products which allow customers to perform the steps of the method claims of the '122 Patent. As shown in Paragraphs 13–25 *supra*, the Accused Products, as normally configured, allow customers to perform actions which display the contact information for the device's owner and allow for remote access to either lock the device to prevent future access or display a custom message to the individual in possession of the device. These actions, when used as configured during normal operation, perform the steps of the method claims of the '122 Patent.

71.     The "Find My Device" feature of the Accused Products practices a material part method claims of the '122 Patent, because it performs several of the key functions of the '122

Patent—i.e., it displays the contact information for the device's owner, and it allows for remote access to either lock the device to prevent future access or to display a custom message to the individual in possession of the device.

72.     On information and belief, prior to the filing of the complaint, Defendant had actual knowledge, or was willfully blind, that the "Find My Device" feature of the Accused Products was especially made or adapted for use in a manner that infringes the Asserted Claims of the '122 Patent. As shown in Paragraphs 38–41 *supra*, Defendant knew, or was willfully blind, that the Accused Products are configured to infringe the '122 Patent upon normal use, at least because of the March 2018 Letter. For the reasons set forth in Paragraphs 38–41 *supra*, and on information and belief, Defendant knew, or was willfully blind, that normal use of the Accused Products infringes the Asserted Claims of the '122 Patent. Despite that knowledge (or willful blindness), Defendant actively sold the Accused Products in the United States, knowing that its customers would use the Accused Products in the United States, and knowing (or being willfully blind) that such use would constitute direct infringement of the Asserted Claims of the '122 Patent.

73.     The "Find My Device" feature of the Accused Products is not a staple article of commerce, and—as configured to perform the steps of the method claims—is not capable of substantial non-infringing use, as its only function is to perform the steps of the method claims. For the reasons set forth above, use of the Find My Device feature will always, during normal use, infringe the method claims of the '122 Patent.

74.     Accordingly, Defendant has unlawfully contributed to infringement of the '122 Patent, in violation of 35 U.S.C. § 271(c), by selling the Accused Products, whose "Find My Device" feature is especially adapted to infringe the method claims of the '122 Patent.

## COUNT VII – DIRECT PATENT INFRINGEMENT (35 U.S.C. § 271(a))

### (U.S. Patent No. 10,789,393)

75.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–74 above, as if fully set forth herein.

76.     Defendant has infringed, and is continuing to infringe, the '393 Patent, either literally or under the doctrine of equivalents, by, *inter alia*, making, selling, or otherwise offering to sell in the United States products, including the Accused Products, for commercial sale which incorporate the methods and components of the Asserted Claims of the '393 Patent.

77.     Defendant's acts complained herein, including the making and selling of the Accused Products, directly infringe the '393 Patent, because—as shown in Paragraphs 13–25 *supra*—the Accused Products are configured to perform all of the steps during normal use and include all of the components recited in those claims.

78.     Defendant has directly infringed the Asserted Claims of the '393 Patent by making and selling the Accused Products, which perform all of the steps and include all of the components of those claims within the U.S., either itself, through intermediaries, or in conjunction with joint ventures and/or customers. Specifically, on information and belief, Defendant has performed all of the steps and Defendant's Accused Products contain all limitations, recited in each Asserted Claim of the '393 Patent, either personally, through intermediaries, or in conjunction with joint venturers and/or customers, by operating the Accused Products within the U.S., and or making and selling the Accused Products within the United States. Such manufacturing, sales, and operations necessarily perform all the steps and include all the components recited in those claims, as shown in Paragraphs 13–25 *supra*.

## COUNT VIII – INDUCEMENT OF INFRINGEMENT (35 U.S.C. § 271(b))
## (U.S. Patent No. 10,789,393)

79.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–78 above, as if fully set forth herein.

80.     Upon information and belief, Defendant has actively induced infringement of the Asserted Claims of the '393 Patent, in violation of 35 U.S.C. § 271(b).

81.     Upon information and belief, Defendant has actively induced infringement of these claims by selling the Accused Products to one or more customers in the U.S., along with documents and instructions demonstrating how to use the devices to infringe the claims, and/or by providing

service, support, or other active assistance to its customers in using the Accused Products in the U.S. The documentation which Defendant has provided includes, at least: (i) the product information for the Accused Products set forth on Defendant's websites, including httpps://lg.com/us, which includes various manuals, specifications, and other technical documentation for the Accused Products provided on Defendant's websites; and (ii) the other product documentation which, on information and belief, Defendant provides in electronic and/or paper form to its customers for the Accused Products.

82.     For instance, Defendant published technical support information on its website which instructs users on how to use the Accused Product to display such information described above and how to remotely access such features. *See* https://www.lg.com/us/support/help-library/how-to-use-google-find-my-phone-and-device-reset-CT10000026-20150375512868 (LG Support Page).

83.     The LG Support Page contains extensive instructions on how to configure and operate the Accused Products to perform the infringing activities. For instance, the LG Support Page lays out in a step-by-step process how to correctly remotely log in to the processor to access information on the device which could either display the contact information of the owner, lock the device, and/or write a custom message to the individual in possession of the device. *See* LG Support Page.

84.     Accordingly, the LG Support Page expressly teaches Defendant's customers how to use the Accused Products to infringe the Asserted Claims of the '393 Patent. Defendant's publication of this website shows both that Defendant specifically intended to induce infringement by its customers, and that Defendant engaged in acts—including the publication of the LG Support Page—which actually did induce infringement by its customers. A customer, following the instructions on the LG Support Page, would necessarily infringe each of the Asserted Claims of the '393 Patent.

85.     As shown in Paragraphs 13–25 *supra*, when Defendant's customers use the Accused Products in the U.S., such use meets all of the elements recited in the Asserted Claims of

the '393 Patent. Thus, Defendant has committed affirmative acts (i.e., selling the Accused Products, providing documents on how to use the Accused Products, and/or providing service or technical support, or other active assistance to its customers) which have resulted in the direct infringement of the '393 Patent by its customers in the United States.

86.     Further, on information and belief, when Defendant performed the acts of inducement outlined in 33–36 *supra* (and other acts of inducement), it was aware of the Asserted Patents, and knew (or was willfully blind) that its customers' normal use of the Accused Products would infringe the Asserted Claims of the Asserted Patents.

87.     As stated above, on information and belief, sometime after March 2018 Tangible IP, a patent broker retained by Plaintiff communicated with Defendant, notifying it of the Asserted Patents. Tangible IP further created an Executive Summary of Plaintiff's Patent Portfolio that, on information and belief, was made available to Defendant. The Executive Summary included, among other things, a list of the patents in the portfolio, claim charts showing how the Asserted Patents read on Defendant's Accused Devices that use Android's and Microsoft's "Find My Device" features, a description of the patents' market relevance, information about Plaintiff and her company, and evidence of use. On information and belief, LG never responded to the notice of information regarding the Asserted Patents.

88.     Defendant is a sophisticated company with ~$50 billion in annual revenue. On information and belief, Defendant has a large intellectual property department, with multiple in-house counsel devoted to analyzing patent issues. Defendant also has relationships with many outside law firms to address patent issues.

89.     In view of the foregoing, at all relevant times, Defendant has known about the existence and relevance of the Asserted Patents, and has known that the operation of the Accused Products, as configured and used during normal operation, infringes the Asserted Claims of the Asserted Patents during normal use.

90.     On information and belief, when Defendant sold the Accused Products to U.S. customers, and/or provides technical support, or other active assistance to such customers, it did

so with the specific intent to encourage the customers to perform acts constituting direct infringement of the Asserted Patents. This is evidenced by Paragraphs 38–41 *supra*, which show that Defendant was aware of the existence and relevance of the Asserted Patents at all relevant times. Because Defendant was aware of the Asserted Patents' relevance and existence, it always knew—based on information and belief—that its customers' use of the Accused Products would constitute infringement of the Asserted Patents. Defendant's decision to continue marketing the Accused Products to U.S. customers, despite knowing that such customers' use would constitute direct infringement, evidences that Defendant had specific intent to encourage direct infringement of the Asserted Patents by its customers.

91.     Therefore, Defendant has unlawfully induced infringement of the '393 Patent, in violation of 35 U.S.C. § 271(b).

## COUNT IX – CONTRIBUTORY INFRINGEMENT (35 U.S.C. § 271(c))

### (U.S. Patent No. 10,789,393)

92.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–91 above, as if fully set forth herein.

93.     Defendant has committed contributory infringement of the method claims of the '393 Patent, in violation of 35 U.S.C. § 271(c).

94.     Defendant has committed contributory infringement by selling, offering to sell, and/or importing into the United States the Accused Products which allow customers to perform the steps of the method claims of the '393 Patent. As shown in Paragraphs 13–25 *supra*, the Accused Products, as normally configured, allow customers to perform actions which display the contact information for the device's owner and allow for remote access to either lock the device to prevent future access or display a custom message to the individual in possession of the device. These actions, when used as configured during normal operation, practice the method claims of the '393 Patent.

95.     The "Find My Device" feature of the Accused Products practices a material part of the method claims of the '393 Patent, because it performs several of the key functions of the '393

Patent—i.e., it displays the contact information for the device's owner, and it allows for remote access to either lock the device to prevent future access or to display a custom message to the individual in possession of the device.

96.     On information and belief, prior to the filing of the complaint, Defendant had actual knowledge, or was willfully blind, that the "Find My Device" feature of the Accused Products was especially made or adapted for use in a manner that infringes the Asserted Claims of the '393 Patent. As shown in Paragraphs 38–41 *supra*, Defendant knew, or was willfully blind, that the Accused Products are configured to infringe the '393 Patent upon normal use, at least because of the March 2018 Letter. For the reasons set forth in Paragraphs 38–41 *supra*, and on information and belief, Defendant knew, or was willfully blind, that normal use of the Accused Products infringes the Asserted Claims of the '393 Patent. Despite that knowledge (or willful blindness), Defendant actively sold the Accused Products in the United States, knowing that its customers would use the Accused Products in the United States, and knowing (or being willfully blind) that such use would constitute direct infringement of the Asserted Claims of the '393 Patent.

97.     The "Find My Device" feature of the Accused Products is not a staple article of commerce, and—as configured to perform the steps of the method claims—is not capable of substantial non-infringing use, as its only function is to perform the steps of the method claims. For the reasons set forth above, use of the Find My Device feature will always, during normal use, infringe the method claims of the '393 Patent.

98.     Accordingly, Defendant has unlawfully contributed to infringement of the '393 Patent, in violation of 35 U.S.C. § 271(c), by selling the Accused Products, whose "Find My Device" feature is especially adapted to infringe the method claims of the '393 Patent.

## REMEDIES, ENHANCED DAMAGES, EXCEPTIONAL CASE

99.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1–98 above, as if fully set forth herein.

100.    Defendant's direct infringement (Counts I, IV, VII), induced infringement (Counts II, V, VIII), and contributory infringement (Counts III, VI, IX) of the Asserted Patents has caused,

and will continue to cause, significant damage to Plaintiff. As a result, Plaintiff is entitled to an award of damages adequate to compensate her for Defendant's infringement, but in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284. Plaintiff is also entitled to recover prejudgment interest, post-judgment interest, and costs.

101.    For at least the reasons set forth in 38—41 *supra*, Defendant knew (or was willfully blind) that the Accused Products are configured to infringe the Asserted Claims of the Asserted Patents during normal use. Despite this known, high likelihood that its actions constituted direct and indirect infringement, Defendant continued to directly and indirectly infringe the Asserted Patents, up to the filing of this complaint. Accordingly, Defendant's infringement has been (and is) willful.

102.    In addition to being willful, Defendant's conduct has been egregious.

103.    As set forth in Paragraphs 38–41 *supra*, despite knowing of (or being willfully blind to) its infringement, Defendant continued to infringe, on a large scale, up to the filing of this complaint. Defendant is a massive company, with over $50 billion in annual revenue.[1] In contrast, Plaintiff is an individual with limited resources. On information and belief, Defendant persisted in its willful infringement, at least in part, because it believed it could use its superior resources to overwhelm Plaintiff in litigation. If proven, this would constitute "egregious" conduct, warranting enhanced damages.

104.    For at least the foregoing reasons, Defendant's conduct has been willful and egregious. Accordingly, under 35 U.S.C. § 284, the Court should enhance Plaintiff's damages in this case by up to three times the amount found or assessed.

105.    For at least the foregoing reasons, this case is an "exceptional" case within the meaning of 35 U.S.C. § 285. Accordingly, Plaintiff is entitled to an award of attorneys' fees and costs, and the Court should award such fees and costs.

---

[1] *See* https://www.statista.com/statistics/220847/revenues-of-lg-electronics-since-2005/

## DEMAND FOR JURY TRIAL

106.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Hafeman prays for relief as follows:

1.    that judgment be entered in favor of Hafeman, and against Defendant;

2.    that Hafeman be awarded damages adequate to compensate her for Defendant's infringement of the Asserted Patents, in an amount to be determined at trial, as well as interest thereon;

3.    that Hafeman be awarded costs of suit;

4.    that Defendant's infringement be declared willful and egregious;

5.    that the Court increase Plaintiff's damages up to three times the amount assessed under 35 U.S.C. § 284;

6.    that the Court declare this an exceptional case under 35 U.S.C. § 285, and award Hafeman her attorneys' fees and costs incurred in this action; and

7.    that the Court grant such further relief as it deems just and proper.


DATED:  November 22, 2021

Respectfully submitted,

By:  /s/ Max L. Tribble Jr.
Max L. Tribble Jr. (Texas 20213950)
Krisina J. Zuñiga (Texas 24098664)
Thomas V. DelRosario (Texas 24110645)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
mtribble@susmangodfrey.com
tdelrosario@susmangodfrey.com

Kalpana Srinivasan (California 237460)
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400

Los Angeles, California 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

Genevieve Wallace (Washington 38422)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Tel: (206) 516-3880
Fax: (206) 516-3883
gwallace@susmangodfrey.com

Lawrence M. Hadley (California 157728)
lhadley@glaserweil.com
Christopher N. McAndrew (California 324759)
cmcandrew@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

**Attorneys for Plaintiff Carolyn W. Hafeman**