**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| CAROLYN W. HAFEMAN, an Individual<br><br>            Plaintiff,<br><br>v.<br><br>LG ELECTRONICS INC.,<br><br>            Defendant. | **CIVIL ACTION NO.:**<br>**6:21-cv-00696-ADA-DTG**<br><br><br>**DEMAND FOR JURY TRIAL** |

<u>**MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. §101**</u>

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION.................................................................................................1

II.    THE CLAIMS OF THE ASSERTED PATENTS ARE NOT PATENT ELIGIBLE..2

    A.     Legal Standard ........................................................................................2

    B.     Description of the Asserted Patents...........................................................2

        1.     Overview of the Specifications of the Asserted Patents........................2

        2.     Overview of the Asserted Claims.............................................................5

    C.     ARGUMENT ...........................................................................................6

        1.     Step One: The Asserted Claims Are Directed to an Abstract Idea.......6

            a.     *The Asserted Claims Are Not Directed Towards a Technological Problem Unique to Computers* ........................................................ 7

            b.     *The Asserted Claims Are Not Directed Towards an Improvement in Computer Functionality* ...................................................... 9

        2.     Step Two: The Asserted Claims Do Not Recite an Inventive Concept ...................................................................................................10

III.   CONCLUSION ...................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DirectTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)............................................................................9

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).................................................................................... *passim*

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016)............................................................................9

*Arunachalam v. Kronos Inc.*,
   No. 14-CV-00091-RGA, 2021 WL 1174530 (D. Del. Mar. 29, 2021) ...................8

*BSG Tech LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)........................................................................8, 13

*BuySAFE v. Google, Inc.*,
   765 F.3d 1350 (Fed.Cir.2014)............................................................................12

*Customedia Techs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020)..................................................................9, 10, 11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)......................................................................7, 10

*Caselas, LLC v. VeriFone, Inc.*,
   No. 1:21-CV-3834-VMC, 2022 WL 3971039 (N.D. Ga. Aug. 30, 2022)...............7

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019)......................................................................11, 12

*ClearDoc Inc. DBA OpenReel v. ReviersideFM, Inc.*,
   21-1422-RGA, 2022 WL 3355960 (D. Del. Aug. 15, 2022).................................12

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
   986 F.3d 1367 (Fed. Cir. 2021)............................................................................7

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) .....................................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)........................................................8, 11, 12, 14

*Finjan, Inc. v. Blue Coat Sys.*,
　879 F.3d 1299 (Fed. Cir. 2018)....................................................................................10

*Intell. Ventures I LLC v. Erie Indem. Co.*,
　850 F.3d 1315 (Fed. Cir. 2017)..................................................................................1, 13

*In re Mohapatra*,
　842 F. App'x 635 (Fed. Cir. 2021) ......................................................... *passim*

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
　811 F.3d 1314 (Fed. Cir. 2016)....................................................................................11

*OIP Tech., Inc. v. Amazon.com*,
　788 F.3d 1359 (Fed. Cir. 2015)......................................................................................8

*RecogniCorp, LLC v. Nintendo Co.*,
　855 F.3d 1322 (Fed. Cir. 2017)......................................................................................9

*In re Rudy*,
　956 F.3d 1379 (Fed. Cir. 2020)......................................................................................7

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
　No. CV 21-2324-GW-JCX, 2021 WL 3160867 (C.D. Cal. July 9, 2021)...............................7

*SAP America, Inc. v. InvestPic, LLC*,
　898 F.3d 1161 (Fed. Cir. 2018)..................................................................................2, 10

*Synopsys, Inc. v. Mentor Graphics Corp.*,
　839 F.3d 1138 (Fed. Cir. 2016)....................................................................................12

*In re TLI Commc'ns LLC Patent Litig.*,
　823 F.3d 607 (Fed. Cir. 2016)........................................................................................8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
　874 F.3d 1329 (Fed. Cir. 2017)................................................................................10, 11

*USC IP P'ship, L.P. v. Facebook, Inc.*,
　576 F. Supp. 3d 446 (W.D. Tex. 2021)......................................................................9, 10, 11

**Statutes**

35 U.S.C. §101.............................................................................................................2, 7, 9

## I.      INTRODUCTION

Plaintiff allegedly conceived of software in the early 2000s to display owner contact information on a computer's boot-up screen to assist a good samaritan with returning a lost computer to its owner. Plaintiff's software further allowed for the owner to remotely change the displayed information. Plaintiff filed a patent application claiming this program in 2004, which did not issue until December 2013. In 2013, after large industry leaders entered the market with device location-tracking programs, Plaintiff began filing a series of "continuation"[1] applications, stripping out claim limitations including the boot-up screen limitation.[2] What remains in the continuation patent claims now asserted in this case is undeniably only the abstract idea of displaying and changing information on a computer screen to assist with returning a computer.

The idea of displaying information to assist with returning a lost item has, of course, existed in the real world long before the 21st Century, such as by applying a label to an item or attaching a tag to luggage. The asserted claims merely apply this idea to a computer display and use the computer's conventional network capabilities to allow the owner to initiate or change the information through remote access. But "[r]emotely accessing and retrieving user-specified information is an age-old practice that existed well before the advent of computers and the Internet." *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017). And the Federal Circuit has recently held very similar claims for enabling a credit card holder to remotely change the card's security code to protect against fraud as being directed towards an abstract idea, despite the claims being narrowly directed to a specific purpose and having real-

---

[1] Defendant reserves the right to challenge whether the patents-in-suit are entitled to priority of the patent applications to which the patents-in-suit claim priority.

[2] This motion is primarily based on the preliminary claim constructions, which the Court indicated it would adopt at the Markman hearing. Ex. 1 (email with preliminary constructions); Ex. 2 (Markman Tr. Excerpt) at 16, 39-40, 52. However, if the Court adopts any proposed constructions not preliminarily adopted, the claims are still patent ineligible for the same reasons.

world benefits. *In re Mohapatra*, 842 F. App'x 635, 638-40 (Fed. Cir. 2021).

The asserted claims fail step one of the *Alice* test for patent eligibility under 35 U.S.C. §101 because they are directed to an abstract idea and recite only desired results, which do not improve the functioning of a computer. The claims are not saved at step two because they state only open-ended, functional objectives using routine and conventional computing functionality.

Defendant respectfully requests that the Court enter summary judgment that all asserted claims are not patent eligible under §101.

## II.     THE CLAIMS OF THE ASSERTED PATENTS ARE NOT PATENT ELIGIBLE

### A.     Legal Standard

A claim is patent ineligible under §101 if it fails both parts of the two-step test set forth in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). That is, the claim is not eligible for patenting if (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2) the claim elements do not add an "inventive concept" sufficient enough to transform the claim into a patent-eligible application. *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166-67 (Fed. Cir. 2018).

### B.     Description of the Asserted Patents

#### 1.     Overview of the Specifications of the Asserted Patents

Plaintiff asserts three patents in this case: U.S. Patent Nos. 9,892,287 (the "'287 patent") filed in May 2017 (Ex. 3); 10,325,122 (the "'122 patent") filed in May 2018 (Ex. 4); and 10,789,393 (the "'393 patent") filed in April 2019 (Ex. 5), all titled "Computer Recovery or Return" (collectively, the "Asserted Patents"). The '393 patent is a continuation of the '122 patent, which is a continuation of the '287 patent. The specifications of all three patents are identical. The Asserted Patents claim priority through a series of continuations to U.S. Patent No. 8,601,606, filed in 2004, as a continuation-in-part of an abandoned application filed in 2002.

2

The Asserted Patents are "related to the return of lost or stolen computers." Ex. 3[3] at 1:22-23. Prior art methods of computer recovery include "[p]hysical labels that attach to the outside hardware of the computer equipment." *See, e.g.*, *id.* at 1:32-33. According to the specification, the claimed invention "is greatly different from this system, ***because this is a software program rather than a hardware solution***." *Id.* at 1:54-58.[4] Other prior art software attempted recovery by regularly contacting a recovery server using the modem. *Id.* at 1:66-2:22.

The specification instead teaches a software program 24 stored in the memory 16 that causes a return screen 20 to appear on the display 18. *Id.* at 4:54-5:9. The return screen "displays ownership information concerning who owns the computer 12 and return information for returning the computer 12 to the owner from data stored in the memory 16." *Id.* at 4:54-60.[5] A return screen is depicted in Fig, 6 (shown on the right). This is the focus of the purported invention—the return information (highlighted green) displayed on the screen is what enables a good samaritan to return a lost computer to its owner. *See id.* at 6:30-34, 7:11-19.



FIG.6

The specification further teaches that the program 24 causes the return screen to appear "before a security prompt such as a password to be entered to obtain access to the primary operating system of the computer 12." *Id.* at 5:10-12. And the program 24 "allows the owner to change the return information," both locally and remotely. *Id.* at 5:13-20.

---

[3] All citations are to the '287 patent. (Ex. 3).

[4] Unless otherwise indicated, emphasis by bold and italics added.

[5] The specification treats "return information" and "recovery information" interchangeably, consistent with the Court's preliminary, and the parties' proposed, claim constructions.

But the specification does not disclose technical details for implementing the software program 24 and provides only a high-level, functional description: (1) "[s]omeone finds a lost or stolen computer 12" and "turns the computer 12 on;" (2) "[t]he computer 12 display 18 screen turns on," and the program "automatically initiates during the computer's 12 boot-up process;" (3) "[a]s the computer 12 booting up process moves the user to a password or security prompt screen," the program "displays a dialogue box which includes owner recovery and return information," as shown in Fig. 2; and (4) "[t]he individual who has found the lost or stolen computer 12, is now able to easily return the equipment to the rightful owner." *Id.* at 6:40-7:13.[6]

And the specification makes clear that nothing more than routine and conventional components are required to implement the program. The only physical components are "a computer 12 return apparatus 10," which comprises "a processor 14," "a memory 16 connected to the processor 14," and "a display 18," as illustrated in Fig.1 (shown on the right). *Id.* at 4:50-54. The program "could in fact, be installed and used by any type of computer 12 that utilized a monitor display screen" (*id.* at 5:67-6:2), and "[t]he coding language used for the software program 24 could and would vary depending upon the computer equipment, but the core structure of how the program operates would be similar in all items." *Id.* at 6:4-8. The remote access for changes is also provided through generic, well-known communication techniques, such as



FIG.1

---

[6] The specification repeatedly emphasizes the layering of the application as part of the boot-up process as a "critical" feature of "the present invention." *Id.* at Abstract, 1:22-26, 1:58-65 (distinguishing "the present invention" from hardware labels because of "the positioning of the program layer ***in the equipment boot-up process***."), 2:27-31, 2:43-47, 2:54-58; 3:26-31, 3:35-40, 3:62-37:5, 3:44-48, 3:53-58, 4:6-10, 5:20-45, 10:64-11:4, 11:23-28. However, the asserted claims do not expressly recite a "boot-up" limitation as discussed below.

"via phone line" or "cable, wi-fi, bluetooth, satellite." *Id*. at 14:11-15. The Asserted Patents make

clear that "[t]he program is essentially a recovery/return information screen that is displayed, and

***does not duplicate or replace more sophisticated access security programs already on the***

***system***." *Id*. at 8:49-52.

### 2.  Overview of the Asserted Claims

Plaintiff asserts independent claims 1, 4, and 7 of each Asserted Patent (collectively, the

"Asserted Claims"). Representative claim 1 of the '287 patent recites:

> 1.  A method for displaying information to assist with returning a computer comprising the steps of:
>
> activating a processor to display on a display screen on the computer which displays information concerning return information for returning the computer to an owner from data stored in a memory of the computer, the screen displaying recovery information, to facilitate return of the computer so the return information is visible to anyone viewing the display screen;
>
> initiating or changing return information which appears on the display through remote communication without assistance by a user with the computer, wherein the changing of the return information is done through an interactive program stored in the memory of the computer which is remotely accessed only by the owner of the computer or the party authorized by the owner to enable the initiating or changing of the display screen;
>
> displaying the screen before or with a security prompt which prevents the user from accessing operatively the computer; and
>
> activating the processor to allow a warning message to the user.

*Id*. at 17:13-34.

Independent claim 4 of the '287 patent is similar in scope, but instead claims "[a]n

apparatus for displaying information at a computer" instead of a method. The apparatus

comprises "a computer" which comprises "a memory," "a display," and "a processor in

communication with the display and the memory." The processor performs the displaying

recovery information and initiating or changing steps of claim 1.[7] Independent claim 7 of each

---

[7] Notably, while their specification repeatedly mentions that the return/recovery software program of the present invention "automatically initiates during the computer's boot-up process"

Asserted Patent describes the same basic technique as claims 1 and 4, but in the form of "[a] computer program stored in a non-transient memory."[8]

Asserted Claims 1, 4, and 7 of the '121 and '393 patents largely mirror claims 1, 4, and 7 of the '287 patent, except that (1) instances of "return information" are replaced with "recovery information"; (2) claims 1 of the '121 and '393 patents replace "a warning message" with "a message"; (3) claims 1, 4, and 7 of the '121 patent and claim 7 of the '393 patent require the display of the return/recovery information to be "before or with" a lock screen; (4) claims 7 of the '121 and '393 patent replace "additional information" with "recovery information"; and (5) claims 1 and 4 of the '393 patent adds "initiating or" to the "wherein the changing of the [return/recovery information]" limitation.

### C.    ARGUMENT

#### 1.    Step One: The Asserted Claims Are Directed to an Abstract Idea

The Asserted Claims fail step one of *Alice* because each is directed towards an abstract idea of displaying and changing information on a computer screen to assist with returning a computer.[9] This is similar to the claims in *Mohapatra*, which enabled a credit card holder to remotely change the card's security code to protect against fraud. The Federal Circuit found

---

and causes a return screen 20 to appear on a display 18 of the computer 12 "during or after boot-up of the computer 12," the return screen being displayed during the boot-up process of the computer is not an express part of the Asserted Claims. *Compare* Ex. 3 at 1:23-26, 3:38-40, 3:46-48, 4:53-57 *with* Ex. 3 at 17:13-34, 17:45-18:17, 18:29-48. Indeed, Plaintiff contended during claim construction that the return/recovery information does not need to be displayed during every boot-up, and the Court preliminarily adopted plaintiff's construction of "plain and ordinary meaning." *See* Dkt. No. 55 at 2-4; Ex. 2 (Markman Tr. Excerpt) at 26:3-9, 39:10-16. Defendant reserves the right to challenge this construction on appeal.

[8] The Court's preliminary claim construction found the term "the additional information" in claim 7 of the '287 Patent indefinite. If the claim is ultimately construed to avoid indefiniteness, it is invalid as abstract for the same reasons as the other Asserted Claims.

[9] This mirrors Plaintiff's prior characterization of her claims. *See* Ex. 6 at 7 (Jan. 24, 2019 Response to Office Action, Application 15/864,749 File Wrapper) ("1/24/19 Response") ("The claimed invention is directed to displaying information to assist with returning a computer.").

those claims to be directed towards the abstract idea "for an individual to alter the identification code associated with a financial instrument, such as a credit card, to protect against fraud." *In re Mohapatra*, 842 F. App'x at 638-40. Like the *Mohapatra* claims, the Asserted Claims are not directed towards a technological problem unique to computers or towards an improvement in computer functionality. *See id.* Rather, they are directed towards an abstract idea using conventional computer components to perform longstanding and well-known functions.

### a. The Asserted Claims Are Not Directed Towards a Technological Problem Unique to Computers

The Asserted Claims are directed towards a longstanding, real-world problem relating to the return of lost items, and ***not*** a computer-network-specific problem. *C.f. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). During prosecution of the '122 patent, Plaintiff told the USPTO that her invention solved a real-world problem for computers because prior art contact info labels could be covered over or removed and could not be updated without physical possession of the computer.[10] 1/24/19 Response at 6-8 (Ex. 6). But this is a problem with all physical labels and is not specific to computers. These are long-standing problems (*e.g.*, being covered up or removeable or not updateable) for both non-computer objects (*e.g.*, suitcases) as well as computers. The Plaintiff also told the USPTO that "the data for the return

---

[10] Plaintiff traversed a §101 rejection during prosecution of the '122 patent. 1/24/19 Response (Ex. 6). However, the Federal Circuit has repeatedly noted that ***the courts are not bound by the Patent Office guidelines***. *See, e.g., In re Rudy*, 956 F.3d 1379, 1383 (Fed. Cir. 2020) ("We are not, however, bound by the Office Guidance, which cannot modify or supplant the Supreme Court's law regarding patent eligibility, or our interpretation and application thereof. . . . To the extent the Office Guidance contradicts or does not fully accord with our caselaw, it is our caselaw, and the Supreme Court precedent it is based upon, that must control."); *see also cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1375 n.1 (Fed. Cir. 2021) (same); *Sanderling Mgmt. Ltd. v. Snap Inc.*, No. CV 21-2324-GW-JCX, 2021 WL 3160867, at *6 (C.D. Cal. July 9, 2021) (invalidating patents under §101 despite USPTO's opposite finding); *Caselas, LLC v. VeriFone, Inc.*, No. 1:21-CV-3834-VMC, 2022 WL 3971039, at *8 (N.D. Ga. Aug. 30, 2022) (same). The USPTO was wrong to allow the claims, and subsequent Federal Circuit cases confirm this conclusion. *See, e.g., Mohapatra*, 842 F. App'x at 638-40.

information is now the tag or label that is part of the structure of the computer, and is a real-world three-dimensional object that is an integral part of the computer." *Id.* at 7. But the return information is not an essential structure of the computer, and in fact, is not used in the claims other than being stored and displayed. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (information collected, analyzed, and displayed is intangible, and the processes abstract); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (collecting and storing data in memory is abstract).

Like the claims from *Mohapatra*, the real-world benefits that arise from being tied to a particular technology (*e.g.*, network-connected computers) do not render the Asserted Claims any less abstract. *Mohapatra*, 842 F. App'x at 638 ("The idea of changeable personal-identification numbers may be beneficial. But it is also abstract and therefore not patentable without more."); *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287-88 (Fed. Cir. 2018) (benefits that "flow from performing an abstract idea in conjunction with a well-known database structure" did not transform an abstract idea into patent-eligible matter). Displaying and changing information on a computer screen to assist with returning a computer to its owner are similarly not transformed into patent-eligible matter merely because they are confined to a particular technological environment using conventional components to effectuate a real-world benefit.[11] *See Mohapatra*, 842 F. App'x at 638 ("The fact that the claims are directed to a

---

[11] Plaintiff has argued that "even if [her claims are] found to be reciting a judicial exception, [they are not] directed towards that exception because it is a practical application." 1/24/19 Response at 11-12. But post-*Alice*, neither the Supreme Court nor the Federal Circuit have adopted the "practical application" test from the USPTO guidelines. *See Arunachalam v. Kronos Inc.*, No. 14-CV-00091-RGA, 2021 WL 1174530, at *3 (D. Del. Mar. 29, 2021) ("Computer implemented schemes for the practical application of ideas such as risk hedging, intermediated settlement, using advertising as an exchange or currency, data collection, and generating tasks in an insurance organization have all been held to be patent ineligible despite having a practical application.") (citing *OIP Tech., Inc. v. Amazon.com*, 788 F.3d 1359, 1362 (Fed. Cir. 2015)).

specific subset of that abstract idea–in this case, enabling a credit card user to change the security code on the card by using a web application–does not render the idea any less abstract.").

### b.   The Asserted Claims Are Not Directed Towards an Improvement in Computer Functionality

The Asserted Claims also are not directed towards a patent-eligible improvement in computer functionality. *C.f. Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020). In assessing patent eligibility of claims that purportedly claim a solution to a real-world problem, the relevant inquiry is "whether the claims are directed to a specific means or method for improving the technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (internal quotation marks and citation omitted); *see USC IP P'ship, L.P. v. Facebook, Inc.,* 576 F. Supp. 3d 446, 455 (W.D. Tex. 2021) (finding abstract claims directed to longstanding problem not unique to the Internet). Although the Plaintiff argued that the claims "specifically identif[y] critical limitations . . . to provide a solution to a real-world problem," they recite only high-level functional language. 1/24/19 Response at 10; *see also* '287 claim 1.

The Federal Circuit has repeatedly held that claims that recite abstract ideas in purely functional form are patent ineligible. *See, e.g., Affinity Labs of Texas, LLC v. DirectTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (finding claims invalid under §101 because they "[c]laim systems including menus with particular features. They do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems."). This Court has likewise held that claims that "only recite high-level functional language without explaining how the claimed invention improve the functionality of the computer or the Internet" "are not 'directed to an improvement to the functionality of the computer or network platform

9

itself,'" but instead "simply recite 'mere result[s]' without reciting specific steps that accomplish the results." *USC IP,* 576 F. Supp. 3d at 455-56 (*quoting Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020); *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018)).

Likewise here, the Asserted Claims recite only high-level functional results without any details on how to achieve the results in a non-abstract way. For instance, they recite functions of "initiating or changing" and "displaying" information without sufficiently describing how to implement these functions. *See Mohapatra*, 842 F. App'x at 639 (citing *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017)). And like the "internet connected card account management facility" used to change the security code in the *Mohapatra* claims, the Asserted Claims require that "changing" "is done through an interactive program" "which is remotely accessed," without "provid[ing] any specificity as to what that [interactive program] is or how that function will be performed." *See Mohapatra*, 842 F. App'x at 639. The specification similarly offers no explanation for how the claimed functions are carried out or how they improve the computer. *See USC IP*, 576 F. Supp. 3d at 456. Thus, the Asserted Claims squarely fit into "the class of claims that do not focus on an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) (internal quotation marks and citation omitted); *c.f. DDR Holdings*, 773 F.3d at 1257. This remains true under both the Court's preliminary claim constructions and the parties' proposed constructions—the claims are directed to the abstract idea of displaying and changing information on a computer screen to assist with returning a computer.

  **2.  Step Two: The Asserted Claims Do Not Recite an Inventive Concept**

The Asserted Claims also fail *Alice* step two because the Asserted Claims do not recite any "saving inventive concept" in application of the abstract idea, *Two-Way Media*, 874 F.3d at 1338, that adds "significantly more" to the abstract idea, *Alice*, 573 U.S. at 217–18, 221–22.

The Asserted Claims recite nothing more than "generic functional language to achieve the[] purported solutions." *Two-Way Media*, 874 F.3d at 1339. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power*, 830 F.3d at 1355. Beyond the abstract concept of displaying and changing information on a computer screen to assist with returning a computer itself, the Asserted Claims simply recite abstract information (*e.g.*, recovery/return information, warning message), but "a claimed invention's use of the ineligible concept to which it is directed ***cannot*** supply the inventive concept." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (internal citation and quotation marks omitted). The Asserted Claims also recite generic "memory," "display" and "processor" components that "were well known in the prior art long before the filing of [the Asserted Patents]." *USC IP*, 576 F. Supp. 3d at 457; *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (generic computer components fail to satisfy the inventive concept requirement); *Customedia Techs.*, 951 F.3d at 1366 ("[T]he invocation of already-available computers that are not themselves plausibly asserted to be an advance amounts to a recitation of what is well-understood, routine, and conventional.") (citation and quotations omitted)). Further, the Asserted Claims state only routine and conventional computer functions (*e.g.*, "activating a processor to display," "initiating or changing . . . information" "remote communication," "displaying") with no implementation

details.[12] *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) (affirming district court's decision that claims fail *Alice* step two when reciting conventional elements in a purely functional manner); *see also ClearDoc Inc. DBA OpenReel v. RevierisdeFM, Inc.*, 21-1422-RGA, 2022 WL 3355960, at *4 (D. Del. Aug. 15, 2022) ("A software feature can be implemented in a number of ways. It is the technical implementation that can be inventive. The feature itself is just an abstract idea. . . . Even if features . . . have not been combined before, 'a claim for a new abstract idea is still an abstract idea.'") (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016)).

The claimed "interactive program stored in the memory of the computer" that provides remote access to the computer does not provide an inventive concept. No implementation details are provided. Other than being in memory, the interactive program is described only as enabling remote access (*i.e.*, using the network capability of a computer) to change information stored in the computer's memory, but "[t]hat a computer receives and sends the information over a network—with no further specification—is not even arguably inventive." *BuySAFE v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed.Cir.2014); *see also Alice*, 573 U.S. at 226 ("Nearly every

---

[12] Displaying information is not inventive. *See Elec. Power*, 830 F.3d at 1355. And limiting this display to a type of information (*i.e.*, to help return a computer to its owner) cannot supply an inventive concept because it is nothing more than the claimed abstract idea. *See ChargePoint, Inc.*, 920 F.3d at 774. Further, to the extent the Court ultimately adopts Defendant's proposed construction requiring "automatically displaying return/recovery information during or after every boot-up," it amounts to nothing more than applying the real-world abstract idea of putting up a sign on the front door (*e.g.,* stating this house is protected by a security system) to a computer screen to ensure it is seen before entry, the stated goal of the claimed abstract idea. *See id.*; *In re Mohapatra*, 842 F. App'x at 639-40. Moreover, the concept of displaying information during every boot-up is a well-known computer function, as admitted in the Asserted Patents. *See, e.g.*, Ex. 3 at 8:60-9:42 (showing existing sequence of displays of information on Gateway and Dell computers and AT&T cell phone during boot-up). And this very concept of displaying return/recovery information at boot-up predates the earliest claimed priority date of the asserted patents. *See, e.g.*, Ex. 7 (Cohen) at 5:5-37, Abstract, Fig. 1 (shown below), 4.

computer will include a 'communications controller' and a 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims."); *see also Intell. Ventures I*, 850 F.3d at 1330 ("Remotely accessing and retrieving user-specified information is an age-old practice that existed well before the advent of computers and the Internet."). Like the alleged inventive concept of "making security code numbers changeable, providing for 'card account management on web/mobile devices' to update the changes, and using those features to prevent fraud" in *Mohapatra*, this remote access is simply "the benefits or goals that . . . will flow from the claimed abstract idea." *In re Mohapatra*, 842 F. App'x at 639. As in *Mohapatra*, "[t]he claims do not disclose an inventive way by which those goals are to be achieved; instead, they merely announce the goals themselves," which "does not constitute an 'inventive concept' for purposes of step two of *Alice*." *Id.*

The "security prompt" and "lock screen" claim limitations, which "locks the display screen," "protects the computer," and "prevents the user from accessing operatively the computer," also do not provide an inventive concept. Again, no implementation details are provided. Moreover, the Asserted Patents confirm that security prompts and lock screens were routine and conventional. *See, e.g.*, Ex. 3 ('287 patent) at 7:20-51 (discussing inserting a recovery screen between existing Windows CTR+ALT+DEL and password dialog boxes), 9:5-16 (referencing the "Microsoft Password Security Prompt"); *see also id.* at 8:49-52 ("[t]he program is essentially a recovery/return information screen that is displayed, and does not duplicate or replace more sophisticated access security programs already on the system."); *BSG Tech. LLC*, 899 F.3d at 1291 ("narrow[ing] . . . claims to specific database structures" that "are well-understood and conventional" "does not supply an inventive concept.").

Further, the concept of displaying contact information with a security prompt/lock screen

13

to protect and prevent access to the computer long predates Plaintiff's earliest asserted priority date. *See, e.g.,* Ex. 7 at 5:5-42, Fig. 1 (shown below); Ex. 8 (Muratov '596) at ¶¶ 0008, 0016, 0035 – 0036, 0057, Fig. 1 (shown below cropped).





The invocation of routine and conventional computer functions cannot provide an inventive concept. *See Elec. Power*, 830 F.3d at 1355-56; *Mohapatra*, 842 F. App'x at 639-40 (citing *Alice*, 573 U.S. at 223-25).

Finally, to the extent Plaintiff contends that the ordered combination of steps provides an inventive concept, her Final Infringement Contentions rely on the information displayed during the "initiating or changing" element for the earlier claimed "displaying" element, which indicates that at least as Plaintiff has interpreted the claims, they do not require the elements to be performed in the order claimed. *See, e.g.*, Ex. 9 (Plaintiff's Final Infringement Contentions, Ex. A). Moreover, the Asserted Claims' elements, when considered as an ordered combination, add nothing that is not already present when the steps are considered separately. *See Alice*, 573 U.S. at 225-26.

## III.    CONCLUSION

The Asserted Claims contain nothing "significantly more" than an abstract idea and fail both *Alice* test steps. The Court should enter summary judgment that they are not patent eligible.

Dated: October 20, 2022                          Respectfully submitted,

*/s/ Celine J. Crowson*

**HOGAN LOVELLS US LLP**
Celine J. Crowson (Admitted *Pro Hac Vice*)
555 Thirteenth St, NW
Washington, DC 20004
Celine.Crowson@hoganlovells.com
(202) 637-5703 (Telephone)
(202) 637-5910 (Facsimile)

Nitin Gambhir (Admitted *Pro Hac Vice*)
Gurtej Singh (CA Bar No. 286547)
(Admitted in this District)
855 Main St Suite 200
Redwood City, CA 94063
Nitin.Gambhir@hoganlovells.com
Tej.Singh@hoganlovells.com
(650) 463-4000 (Telephone)
(650) 463-4199 (Facsimile)

**FAEGRE DRINKER BIDDLE & REATH, LLP**
Kirstin Stoll-DeBell (Admitted *Pro Hac Vice*)
1144 15th Street, Suite 3400
Kirstin.StollDeBell@faegredrinker.com
(303) 607-3500 (Telephone)
(303) 607-3600 (Facsimile)

Carrie A. Beyer (Admitted *Pro Hac Vice*)
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Carrie.Beyer@faegredrinker.com
(312) 569-1000 (Telephone)
(312) 569-3000 (Facsimile)

Brianna L. Silverstein (Admitted *Pro Hac Vice*)
1500 K Street NW, Suite 1100
Washington, DC 20005
Brianna.Silverstein@faegredrinker.com
(202) 842-8800 (Telephone)
(202) 842-8465 (Facsimile)

Kirsten L. Elfstrand (Admitted *Pro Hac Vice*)
2200 Wells Fargo Center
90 S. 7th Street

15

Minneapolis, MN 55402
Kirsten.Elfstrand@faegredrinker.com
(612) 766-7000 (Telephone)
(612) 766-1600 (Facsimile)

**KELLY HART & HALLMAN LLP**
J. Stephen Ravel
Texas State Bar No. 16584975
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

**POTTER MINTON PC**
Michael E. Jones
Shaun William Hassett
110 N College, Suite 500
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 531-3939
Email: mikejones@pttterminton.com
Email: shaunhassett@potterminton.com

*Counsel for Defendant LG Electronics Inc.*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this filing via the Court's CM/ECF system per Local Rule CV-5(a) on October 20, 2022.

*/s/   Celine J. Crowson*

Celine J. Crowson