UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| CAROLYN W. HAFEMAN, an Individual<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS INC.,<br><br>Defendant. | CIVIL ACTION NO.:<br>6:21-cv-00696-ADA-DTG<br><br>DEMAND FOR JURY TRIAL |

**LG ELECTRONICS INC.'S MOTION FOR SUMMARY JUDGMENT
OF NOVEMBER 22, 2013 EFFECTIVE FILING DATE AND
RESULTING INVALIDITY UNDER 35 U.S.C. § 102**

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. LEGAL STANDARDS .................................................................................................... 2

    A. Effective Filing Date ............................................................................................ 2

    B. Anticipation .......................................................................................................... 3

III. BACKGROUND .............................................................................................................. 3

    A. Asserted Patent Family ........................................................................................ 3

    B. Relevant Prior Art ................................................................................................ 4

IV. ARGUMENT .................................................................................................................... 5

    A. Each Asserted Claim Recites Remote Initiating as a Claim Limitation. ............. 5

    B. The Earliest Effective Filing Date is November 22, 2013. .................................. 5

        1. The 2004 App. Discloses Only Local Initiating ....................................... 6

        2. The Patent Office Did Not Conclude that the 2004 App. Supported the Remotely Initiating Limitations of the Asserted Claims ................... 10

        3. The Only Disclosure of Remote Communication in the 2004 App. is Remote Changing. .................................................................................. 11

    C. The Asserted Claims are Invalid as Anticipated Under 35 U.S.C. § 102. ........... 12

V. CONCLUSION ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**                                                            **Page(s)**

*Akeva L.L.C. v. Nike, Inc.*,
  817 F. App'x 1005 (Fed. Cir. July 16, 2020) ................................................................. 2

*Anascape, Ltd. v. Nintendo of Amer. Inc.*,
  601 F.3d 1333 (Fed. Cir. 2010) ...................................................................................... 2

*In re Gamble*,
  No. 2021-1848, 2022 WL 151986 (Fed Cir. Jan. 18, 2022) ........................................... 3

*In re NTP, Inc.*,
  654 F.3d 1268 (Fed. Cir. 2011) ................................................................................ 2, 11

*In re NTP, Inc.*,
  654 F.3d 1278-79 .......................................................................................................... 11

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) ...................................................................................... 2

*Transco Prod. Inc. v. Performance Contracting, Inc.*,
  38 F.3d 551 (Fed. Cir. 1994) .......................................................................................... 2

*Vas-Cath Inc. v. Mahurkar*,
  935 F.2d 1555 (Fed. Cir. 1991) ...................................................................................... 2

**Statutes, Rules & Regulations**

35 U.S.C. § 102 ................................................................................................................... 3, 5, 13

35 U.S.C. § 120 ........................................................................................................................... 2

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| A | U.S. Patent No. 9,892,287 |
| B | U.S. Patent No. 10,325,122 |
| C | U.S. Patent No. 10,789,393 |
| D | U.S. Patent Application No. 10/304,827 [LG_00024509-24546] ("2002 App.") |
| E | Excerpts from Deposition Transcript of Carolyn W. Hafeman (Nov. 17, 2022) |
| F | IPR2022-01189, Paper 8, Patent Owner's Preliminary Response Pursuant to 37 C.F.R. §42.107 (Nov. 3, 2022) |
| G | U.S. Patent Application No. 10/945,332 [HAFEMAN-LG_000732-789] ("2004 App.") |
| H | U.S. Patent Publication No. 2005/0071670 [LG_00030109-30129] |
| I | IPR2022-01189, Exhibit 1016, Comparison of the 2002 App. and the 2004 App. |
| J | U.S. Patent Application No. 10/945,332, July 26, 2006 Amendment and Remarks [HAFEMAN-LG_000855-868] |
| K | U.S. Patent Application No. 10/945,332, Oct. 19, 2006 Office Action [HAFEMAN-LG_000870-879] |
| L | IPR2022-01189, Exhibit 1018, Court's Preliminary Claim Constructions (Apr. 26, 2022) |
| M | Plaintiff's Second Amended and Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-19) (Nov. 23, 2022) |
| N | Plaintiff's First Supplemental and Amended Responses and Objections to Defendant's First Set of Requests for Admission (Dec. 20, 2022) |
| O | Tangible IP Confidential Intake Patent Listing Questionnaire (Ex. 11 to Hafeman Dep.) [HAFEMAN-LG_005608-5612] **- CONFIDENTIAL** |
| P | Hafeman Patent Investments Hafeman US Patent 10,325,122 vs Apple Evidence of Use [HAFEMAN-LG_005654-5670] **- CONFIDENTIAL** |
| Q | Hafeman Patent Investments Hafeman US Application 16/377,768 (issued as '393 patent) vs Apple Evidence of Use [HAFEMAN-LG_005671-5684] **- CONFIDENTIAL** |
| R | Tangible IP US Patent No. 9,892,287 vs. Apple Devices Evidence of Use [HAFEMAN-LG_006143-6167] **- CONFIDENTIAL** |
| S | Tangible IP US Patent No. 10,325,122 vs. Apple Devices Evidence of Use [HAFEMAN-LG_006168-6192] **- CONFIDENTIAL** |
| T | Excerpts from Rebuttal Expert Report of Dr. Scott Schaefer Regarding Validity (Jan. 20, 2023) |
| U | Comparison of 2002 Application as filed (US App. No. 10/304,827) (Ex. D) to 2004 Application (US App. No. 10/945,332) (Ex. G) |
| V | Institution Decision in IPR2022-01193, Paper 16 (Jan. 31, 2023) ('287 patent) |
| W | Institution Decision in IPR2022-01189, Paper 16 (Jan. 31, 2023)) ('122 patent) |
| X | Institution Decision in IPR2022-01191, Paper 16 (Jan. 31, 2023)) ('393 patent) |

I.       INTRODUCTION

The Asserted Patents claim priority to several related applications, including three filed in 2002, 2004, and 2013. Plaintiff admits that the Asserted Patents are *not* entitled to the effective filing date of the 2002 application. Defendant seeks summary judgment that the Asserted Patents are *also not* entitled to the effective filing date of the 2004 application. The 2004 application as filed lacked sufficient disclosure to support the Asserted Claims' limitations requiring: "*initiating*[1] . . . [return/recovery] information *through remote communication*." Unlike the Asserted Claims, the 2004 application discusses only *local* "initiating" of this information—and its discussion of remote communication is limited to a separate claim limitation for remotely "*changing* [return/recovery] information." There is no genuine issue of material fact as to what was disclosed (and not disclosed) in the 2004 application as filed, and this undisputed 2004 disclosure does not support the Asserted Claims as a matter of law. The earliest effective filing date for the Asserted Claims is November 22, 2013. Indeed, the Patent Trial and Appeal Board ("PTAB") recently reached the same conclusion (preliminarily) when it granted institution in IPR petitions filed against the Asserted Patents. Ex. V at 13 ("On this record, we preliminarily determine that the '332 application [the 2004 Application] does not provide written description support for the 'initiating or changing' limitation in the '287 patent claims."); Ex. W at 13 (same for '122 patent); Ex. X at 17 (same for '393 patent).

Further, Plaintiff admits that systems that qualify as prior art based on a November 22, 2013 priority date meet all the limitations of, and thus, anticipate the Asserted Claims. Specifically, Plaintiff admits that her company sold a product that practiced the Asserted Claims beginning in 2007—six years prior to the earliest effective filing date. Plaintiff also admits that

---

[1] Unless otherwise noted, italicized underlined text indicates emphasis added.

Apple's Find My iPhone app practices the Asserted Claims and was publicly available prior to November 22, 2013. Thus, there is no genuine issue of material fact and this Court should grant summary judgment of invalidity for all Asserted Claims.

## II. LEGAL STANDARDS

### A. Effective Filing Date

A claim in a U.S. patent application is not entitled to the benefit of the filing date of an earlier-filed U.S. patent application unless the subject matter of the claims is "disclosed in the manner provided by section 112(a)" in the earlier filed application. 35 U.S.C. § 120; *see, e.g.*, *In re NTP, Inc.*, 654 F.3d 1268, 1277 (Fed. Cir. 2011). To satisfy the written description requirement, the disclosure of the prior application must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession of *the invention*." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). Only the disclosure of the specification and claims from the original application <u>as filed</u> can be considered for written description support. *Anascape, Ltd. v. Nintendo of Amer. Inc.*, 601 F.3d 1333, 1337 (Fed. Cir. 2010). All elements of the claim, including both alternative or disjunctive limitations, must be supported to meet the written description requirement. *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1332-34 (Fed. Cir. 2008).

An inventor's designation of an application as a "continuation" is given no weight: "[T]he bottom line is that, no matter what term is used to describe a continuing application, that application is entitled to the benefit of the filing date of an earlier application <u>only</u> as to common subject matter." *Transco Prod. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 (Fed. Cir. 1994); *see also Akeva L.L.C. v. Nike, Inc.*, 817 F. App'x 1005, 1012-13 (Fed. Cir. July 16, 2020).

B.   **Anticipation**

When the effective filing date of a patent is after March 16, 2013, the current AIA version of 35 U.S.C. § 102 applies. *In re Gamble*, No. 2021-1848, 2022 WL 151986, at *2 n.3 (Fed Cir. Jan. 18, 2022). Under AIA § 102, "A person shall be entitled to a patent unless the claimed invention was patented, described in a printed publication or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."

III.   **BACKGROUND**

A.   **Asserted Patent Family**

Plaintiff asserts LG infringes U.S. Patent Nos. 9,892,287 ("the '287 patent") (Ex. A), 10,325,122 ("the '122 patent") (Ex. B), and 10,789,393 ("the '393 patent") (Ex. C) (collectively, "the Asserted Patents"). Each Asserted Patent claims priority to a number of patent applications, the earliest of which is U.S. Patent Application No. 10/304,827 ("the 2002 App.")[2] (Ex. D), which was filed on November 25, 2002. *See also* Ex. E at 51:4-52:1. Plaintiff admits that the 2002 App. "does not disclose ***anything*** relating to 'initiating or changing return information . . . ***through remote communication***" and that the Asserted Claims are not entitled to claim priority to the 2002 application. Ex. F at 6-7 (emphasis in original); *see also* Ex. E at 56:9-17, 56:24-57:14; Ex. T ¶¶ 56, 88-89. Plaintiff abandoned the 2002 App. and it never issued. Ex. E at 69:12-22.

Plaintiff filed a continuation-in-part patent application claiming priority to the 2002 App. on September 20, 2004 ("the 2004 App.") (Ex. G). The 2004 App. was published on March 31, 2005 as U.S. Patent Publication No. 2005/0071670 (Ex. H). The 2004 App. added new matter

---

[2] The Parties also refer to the 2002 App. as "Hafeman 298" based on its publication number.

that related to remotely changing return/recovery information and claims with a limitation stating, "*changing* the return information . . . *through remote communication*" (collectively referred to as the "New Matter"). Ex. G at HAFEMAN-LG_000776-778; *see also* Ex. U (highlighting in blue the New Matter added to the 2004 App. (Ex. G) compared to the 2002 App. (Ex. D)); Ex. I (same comparison between 2004 App. as published to 2002 App. as published). However, the 2004 App. claims *as filed* did not include any limitations for remote "initiating." Ex. G at HAFEMAN-LG_000776-778. During prosecution of the 2004 App., Plaintiff amended the claims to add "initiating and" to the "changing recovery information . . . through remote communication" limitations of the pending claims. Ex. J at HAFMEAN-LG_000856, 858-861. Plaintiff asserted that support for these "initiating" claim amendments was found at page 31, line 2 of the 2004 App., which states: "The program design feature allows the 'owner' to . . . initiate a download of changes to the protected equipment." *Id.* at HAFEMAN-LG_000864 (citing Ex. G at HAFEMAN-LG_000769). The Examiner entered the amendments without comment, but rejected the amended claims on other grounds. Ex. K. Over seven years later, the 2004 App. issued as U.S. Patent No. 8,601,606. Ex. E at 70:1-5.

Plaintiff filed a third "continuation" application claiming priority to the 2004 App. on November 22, 2013, which issued as U.S. Patent No. 9,021,610. Exs. A-C. Plaintiff filed subsequent continuations within this family, including the three Asserted Patents, which all share the same disclosure. Exs. A-C.

Plaintiff asserts that Defendant infringes claims 1 and 4 of the '287 patent, claims 1, 4, and 7 of the '122 patent, and claims 1, 4, and 7 of the '393 patent ("the Asserted Claims").

      **B.**      **Relevant Prior Art**

Defendant has identified at least two references that Plaintiff admits practice all elements

of the Asserted Claims. If the earliest effective filing date of the Asserted Claims is November 22, 2013, these references qualify as prior art under AIA § 102. First, Plaintiff admits that her own product—The Retriever—practices the Asserted Claims and was sold or offered for sale prior to November 22, 2012. Ex. M at 23-24; Ex. N at 25. Second, Plaintiff has admitted that Apple's Find My iPhone practices the Asserted Claims and was sold or offered for sale prior to November 22, 2013. Ex. E at 98:4-17, 101:10-22; Ex. N at 23-24; *see also* Ex. O at HAFEMAN-LG_005609; Exs. P-S.

## IV. ARGUMENT

### A. Each Asserted Claim Recites Remote Initiating as a Claim Limitation.

Each of the Asserted Claims recites two distinct actions to be taken on the return/recovery information through remote communication: "[1] initiating or [2] changing [return/recovery][3] information . . . through remote communication" ([1] is "the remote initiating limitation" and [2] is "the remote changing limitation"). Ex. A at 17:22-23, 28:8-9; Ex. B at 16:62-63, 17:30-32, 18:28-29; Ex. C at 16:32-33, 16:67-17:1; 18:11-12.

The meanings of the claim terms "initiating" and "changing" were not at issue during claim construction and thus are to be given their plain and ordinary meaning to a person of ordinary skill in the art ("POSITA") at the time of the alleged invention. Summary judgment is still appropriate because the 2004 App. does not adequately support either of the two meanings of remote initiating that Plaintiff's experts have put forward.

### B. The Earliest Effective Filing Date is November 22, 2013.

Plaintiff admits that the 2002 App. did not disclose remote communication at all and argued

---

[3] The parties agree that "return information" and "recovery information" are the same. Ex. L at 2.

to the PTAB that "Hafeman '298 [i.e., the 2002 App.] does not disclose **anything** relating to 'initiating or changing return information which appears on the display ***through remote communication*** without assistance by a user with the computer'—as is required by all challenged claims." Ex. F at 6-7 (emphasis in original).

Therefore, any disclosure that could possibly support initiating <u>through remote communication</u> must be contained in the "New Matter" added to the 2004 App. as filed. Exs. I, U (blue highlighted information). This New Matter, however, teaches only local <u>initiating</u> or <u>remote</u> changing, but does not disclose <u>remote initiating</u>. Chatterjee Decl. Ex. 1 ¶¶ 456, 462.  The Asserted Claims are not entitled to the claimed September 20, 2004 effective filing date because the 2004 App. did not contain any written description of the remote initiating limitations, let alone a description sufficient for a POSITA to have known that Plaintiff possessed this purported invention at that time. Chatterjee Decl. Ex. 1 ¶ 456.

### 1.    The 2004 App. Discloses Only Local Initiating

All disclosures in the 2004 App. relating to "initiating" return/recovery information refer to <u>local</u> initiating at the device (*i.e.*, computer 12) and none of them relate to the claimed <u>remote</u> initiating (*i.e.*, through remote communication from a remote station). Chatterjee Decl. Ex. 1 ¶ 460; Ex. V at 16 ("The [2004 App.], however, does contemplate initiating the display of return information at a time after the initial boot-up, <u>but not through remote communication</u>.").

The 2004 App. uses "initiate" only 8 times and always as a verb. In most cases (with two exceptions discussed below), it explains that the thing that is "initiated" or triggered is (1) the display of return/recovery information, or (2) the Retriever "program," which is "<u>essentially a

6

*recovery/return information screen that is displayed.*"[4] Each of these uses of "initiate" is shown in the table below, which is divided into the disclosures from the 2002 App. (*i.e.*, local *only*) versus disclosures in the New Matter portion of the 2004 App.:

| Use of "initiat!" from 2002 App. = Must be Local | Use of "initiat!" in New Matter added to 2004 App. |
|---|---|
| <ul><li>"The present invention automatically *initiates* during the boot-up process of the equipment, *in order to display the recovery/return information* before a security prompt screen to always help protect the owner's confidential information on the hard drive." Ex. U at 4:10-15, Ex. I ¶ 10.</li><li>"[T]he *program* is an additional programming layer added into the initial start up program of the computer 12, *so that the recovery/return display 18 information* occurs during or before a password or security prompt screen. . . . By automatically *initiating this program* during or before a user's security prompt, such as a password screen program, the recovery/return program will not only increase chances of recovery, but will also increase chances that the computer 12 information on the hard drive is protected while the computer 12 is not in the owner's possession." Ex. U at 13:16-28; Ex. I ¶ 43.</li><li>"(2) The computer 12 display 18 screen turns on. The computer 12 *security software return/recovery program automatically initiates* during the computer's 12 boot-up process.</li><li>(3) As the computer 12 booting up process moves the user to a password or security prompt screen, the computer 12 *security software program 24 displays a dialog box which includes owner recovery and return information* . . . ." Ex. U at 14:11-19; Ex. I ¶ 43.</li><li>"If the program *initiated* after the password or security prompt screen, the person finding the lost or stolen equipment *would have difficulty ever seeing the recovery /return display 20.*" Ex. U at 16:7-10; Ex. I ¶ 51.</li></ul> | <ul><li>"The *Retriever display* not only appears during the initial boot-up, but the *Retriever program security recovery display screen* can also be *manually initiated by the computer 12 user*. This would be the Workstation Locked display. (FIG. 10). This allows the computer 12 user to manually lock the computer 12 screen and protect the computer 12 if they need to leave their computer 12 for a few minutes." Ex. U at 36:14-20; Ex. I ¶ 134.</li><li>"The *Retriever display* not only appears during the initial boot-up or with a manual activation by the computer 12 user; the *Retriever workstation locked recovery screen* can also be *initiated* automatically *using a screen saver timer feature* that can be changed by the Owner or the Assigned To person. For example, let's say the computer 12 screen saver time feature has a 10 minute timer. If there is no activity on the computer 12, the Workstation Locked security *Recovery screen will display and stay displayed* until the password prompt is satisfied." Ex. U at 36:22-37:4; Ex. I ¶ 135.</li></ul> |

---

[4] Ex. U at 19:24-25.

Each and every use of "initiate" quoted above in the 2004 App. uses "initiate" to mean triggering or causing the computer to display return/recovery information (via the [Retriever/software] program [24]). Chatterjee Decl. Ex. 1 ¶ 460. Further, each and every use of "initiate" quoted above is referring to *locally* triggering such a display, whether the trigger is turning on/booting up the computer, manually locking the computer before leaving it unattended, or a screen saver timer expiring while the computer is not in use. None of these teachings relate to remote action, and none convey to a POSITA that in 2004 Plaintiff had possession of the idea of remotely triggering the program on the computer to display the return/recovery information on the computer. *Id.*; *see also* Ex. V at 15-17.

The 2004 App. uses "initiate" in *only* two other places not quoted in the table above. First, "initiate" is used in the sentence relied on by Plaintiff to support the amendment to add "initiating and" to the "changing . . . through remote communication" claim limitations. This sentence says that *the thing* that is "initiated" is "a download *of changes*" – *not* return/recovery information or the program that displays the return/recovery screen. Ex. U at 31:1-5 ("The program design feature allows the 'owner' to access the recovery center administration program, *initiate a* [sic] *download of changes* to the protected equipment . . . ."); Chatterjee Decl. Ex. 1 ¶ 461; Ex. V at 17. Thus, this sentence relates to changing information, not initiating the display of information. Ex. G at HAFEMAN-LG_000769; Chatterjee Decl. Ex. 1 ¶ 461. The 2004 App. explains that the capability to remotely download changes to the return/recovery information "allows the owner to eliminate erroneous or misleading 'assigned to' recovery information that might have been created by the rogue 'assigned to' individual, replace the display 18 screen with correct owner recovery information and even change or delete the 'assigned to' password to stop access to the equipment information." Ex. G at HAFEMAN-LG_000769. Thus, this disclosure

would have merely informed a POSITA about remotely *changing* the information. Chatterjee Decl. Ex. 1 ¶ 461. Second, Fig. 2 uses "initiate" to refer to triggering a shutdown of the operating system, which also does not support the remotely initiating claim limitations.

Additionally, the 2002 App. teaches that "means for causing the [return/recovery] screen to appear on the display 18" "is stored in the memory 16" of the device. Ex. U at 10:9-16; Ex. G at HAFEMAN-LG_000748; *see also* Ex. G at HAFEMAN-LG_000762, 780; Chatterjee Decl. Ex. 1 ¶ 466. In other words, causing means 22 on the local computer 12 is the component that locally "initiates" the display of the return/recovery information. Chatterjee Decl. Ex. 1 ¶ 466. However, unlike the changing means (shown in blue) that Plaintiff added as New Matter to *both* the local computer 12 *and* the remote station in the 2004 App., she did not add the "causing means 22" (shown in yellow) to the remote station, but opted to leave it shown *only* on the local computer 12. *Id.* Thus, a POSITA would conclude that Plaintiff had possession of *only* remotely changing, not remotely initiating at the time of filing of the 2004 App. *Id.*



To the extent that Plaintiff intends to assert that "initiating" means inputting the return/recovery information into the computer 12 in the first instance, there is no support in the 2004 App. for inputting new information via remote communication. While the 2004 App. refers generally to "interactively" entering, inputting, changing, and updating return/and recovery information (Ex. U at 12:25-13:2, 15:3-6), a POSITA would not find that these disclosures

9

support remotely initiating return/recovery information. Chatterjee Decl. Ex. 1 ¶ 465. To the extent that Plaintiff argues that "interactively" is akin to "remote," that is belied by the fact that these disclosures were included in the 2002 App., which Plaintiff has admitted did not disclose any type of remote communication. Ex. U at 1:12-14, 2:13-20, 3:25-4:2, 15:3-6, 18:1-5, 19:10-12, 22:1-5, 23:23-24:4, 35:24-36:9; Ex. E at 56:9-17, 56:24-57:14, 68:10-14; Ex. F at 6-7.

Plaintiff may attempt to argue that disclosures aimed at eliminating, replacing, or overriding existing information constitutes disclosure of "initiating." This is wrong. For example, Plaintiff may point to the disclosures of remotely (1) "eliminat[ing] erroneous or misleading 'assigned to' recovery information that may have been created by the rogue 'assigned to' individual," (2) "replac[ing] the display 18 screen with the correct owner recovery information," or (3) "overrid[ing] the 'assigned to' person's input" to support the remote initiating limitations. It is clear that any action to eliminate, replace, or override existing information would constitute a *change* to information, not the initiation of information. Chatterjee Decl. Ex. 1 ¶ 461; *see also* Ex. F at 10 ("Without display of the return/recovery information, the claimed invention would have nothing to 'change.'"). Given the disjunctive nature of the asserted claims requiring either (a) *initiating* return/recovery information through remote communication or (b) *changing* return/recovery information through remote communication, a POSITA at the time of the invention would not have found that Plaintiff was in possession of the alleged remote initiating limitations based on the disclosure of remote changing. Chatterjee Decl. Ex. 1 ¶ 465.

> **2. The Patent Office Did Not Conclude that the 2004 App. Supported the Remotely Initiating Limitations of the Asserted Claims**

The mere fact that the Patent Office examiner allowed the claim amendment of "*initiating and* changing return/recovery information through remote communication" does not

mean that the application as filed supported this amendment under § 112 or that the claim amendment is entitled to the filing date of the 2004 App. *In re NTP, Inc.*, 654 F.3d at 1278-79 ("*The examiner issued no rejection based on § 112, nor did the examiner make an affirmative statement that the claims of the '592 patent satisfied § 112* . . . . Although an examiner does not dispute every single statement an applicant makes—and, of course, the applicants are required to conduct these proceedings with candor and good faith—*this does not constitute an admission by the examiner that he considered and accepted these statements as established*. As Congress acknowledged, examiners have limited time to review each application and cannot be expected to fully address every possible issue before them.") (citations omitted). Like the *NTP* case, there is no affirmative statement that the amended claims satisfied § 112 and there is no basis for this Court to conclude otherwise.

### 3. The Only Disclosure of Remote Communication in the 2004 App. is Remote Changing

The 2004 App. did not disclose or even suggest that the download of changes capability is used for "initiating . . . [return/recovery] information . . . through remote communication" on the device. Chatterjee Decl. Ex. 1 ¶ 463. Instead, all of the references to return/recovery information and "remote communication" in the 2004 App. related *only* to remotely *changing* the return/recovery information already stored in local memory 16:

- "The apparatus 10 preferably includes means for *changing the return information* by the user *through remote communication* with the computer 12. . . . The apparatus 10 preferably includes *means for changing recovery information* of additional computers 12 owned by the owner *through remote communication* by the owner with the additional computers 12." Ex. G at HAFEMAN-LG_000762.

- "The changing step preferably includes the step of *changing the return information* by the user *through remote communication* with the computer 12. . . . [t]here is preferably the step of the owner *changing recovery information* of additional computers 12 owned by the owner *through remote communication* by the owner with the additional computers

11

12." *Id.* at HAFEMAN-LG_000763.

- "It is this *remote communication* ability in the design of the Retriever software recovery program that helps better meet the challenges of internal theft . . . . With the current PDA recovery program, the 'owner' is limited to *only making changes directly on the 'assigned to' person's equipment* and/or the 'assigned to' person's computer 12 or over a limited network that the assigned to person may never access again. With the Retriever's recovery software design, the 'owner' can also attempt to access the 'assigned to' person's equipment by additional ways, *such as over the internet, phone lines, cable, etc.* thereby having more effective ability to try to locate the equipment and *control the recovery information displayed by remote*." *Id.* at HAFEMAN-LG_000769-770.

- "The computer 12 security software recovery/return program would also include an administration section to the program through hard drive *or remote* . . . Once the owner gains access to the primary operating system, the owner will have the ability to select an administration section for the computer 12 security software recovery/return program through the Start Up button or shortcut icon on the display 18 screen. (See Figure 5). The administration dialog box *will allow the owner to interactively change the recovery/return display 18 information* that appears in the recovery/return dialog box displayed during the boot-up process." *Id.* at HAFEMAN-LG_000755-756.

Chatterjee Decl. Ex. 1 ¶ 463. Once again, given the disjunctive nature of the claims, a POSITA reading the disclosure of remote changing information would not have thought it also supported the disclosure of remote initiating display of information. *Id.* Ex. 1 ¶ 465.

Because there is no genuine dispute that the 2004 App. as filed does not sufficiently disclose the remote initiating limitations such that a POSITA would have concluded that Plaintiff had possession of the alleged invention at the time, the Court should enter partial summary judgment that the earliest effective filing date of the Asserted Claims is November 22, 2013.[5]

### C. The Asserted Claims are Invalid as Anticipated Under 35 U.S.C. § 102.

The Asserted Claims are invalid over at least two different systems that qualify as prior art if the earliest effective priority date of the Asserted Claims is November 22, 2013. First,

---

[5] Defendant does not take a position at this time as to whether the Hafeman 2013 App. as originally filed adequately supports the remote initiating limitations.

Plaintiff admits that her own product, the Retriever, practiced the limitations of the Asserted Claims and was on sale in 2007—six years prior to the earliest effective filing date. Ex. M at 23-24; Ex. N at 25. Second, Plaintiff admits that Apple's Find My iPhone application practiced the limitations of the Asserted Claims and was on sale or otherwise publicly available prior to November 22, 2013. Ex. E at 98:4-17, 101:10-22; Ex. N at 23-24; *see also* Ex. O at HAFEMAN-LG_005609; Exs. P-S.[6] Thus, there is no genuine dispute of material fact if the earliest effective filing date is November 22, 2013, these systems anticipate the Asserted Claims and summary judgment of invalidity of the Asserted Claims is appropriate.

## V.  CONCLUSION

For the foregoing reasons, this Motion should be granted, and the Court should enter summary judgment that: (1) the earliest effective filing date of the Asserted Claims is November 22, 2013; and (2) the Asserted Claims are invalid as anticipated under 35 U.S.C. § 102.

---

[6] Plaintiff's validity expert does not opine on whether either of these systems practiced all of the limitations of the Asserted Claims, instead only stating that they do not constitute prior art if the effective filing date is September 20, 2004. Ex. T ¶ 110.

| | |
|---|---|
| Dated: February 6, 2023 | Respectfully submitted, |

/s/ Kirstin Stoll-DeBell

**HOGAN LOVELLS US LLP**
Celine J. Crowson (Admitted *Pro Hac Vice*)
555 Thirteenth St, NW
Washington, DC 20004
Celine.Crowson@hoganlovells.com
(202) 637-5703 (Telephone)
(202) 637-5910 (Facsimile)

Gurtej Singh (CA Bar No. 286547)
(Admitted in this District)
855 Main St Suite 200
Redwood City, CA 94063
Tej.Singh@hoganlovells.com
(650) 463-4000 (Telephone)
(650) 463-4199 (Facsimile)

**FAEGRE DRINKER BIDDLE & REATH, LLP**
Kirstin Stoll-DeBell (Admitted *Pro Hac Vice*)
1144 15th Street, Suite 3400
Denver, Colorado 80202
Kirstin.StollDeBell@faegredrinker.com
(303) 607-3500 (Telephone)
(303) 607-3600 (Facsimile)

Carrie A. Beyer (Admitted *Pro Hac Vice*)
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Carrie.Beyer@faegredrinker.com
(312) 569-1000 (Telephone)
(312) 569-3000 (Facsimile)

Lora A. Brzezynski (Admitted *Pro Hac Vice*)
Brianna L. Silverstein (Admitted *Pro Hac Vice*)
1500 K Street NW, Suite 1100
Washington, DC 20005
Lora.Brzezynski@faegredrinker.com
Brianna.Silverstein@faegredrinker.com
(202) 842-8800 (Telephone)
(202) 842-8465 (Facsimile)

Kirsten L. Elfstrand (Admitted *Pro Hac Vice*)
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, MN 55402
Kirsten.Elfstrand@faegredrinker.com
(612) 766-7000 (Telephone)
(612) 766-1600 (Facsimile)

**KELLY HART & HALLMAN LLP**
J. Stephen Ravel
Texas State Bar No. 16584975
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

**POTTER MINTON PC**
Michael E. Jones
Shaun William Hassett
110 N College, Suite 500
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 531-3939
Email: mikejones@ptterminton.com
Email: shaunhassett@potterminton.com

*Counsel for Defendant LG Electronics Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this filing via the Court's CM/ECF system per Local Rule CV-5(a) on February 6, 2023.

                                                */s/ Kirstin Stoll-DeBell*
                                                Kirstin Stoll-DeBell