# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

CAROLYN W. HAFEMAN, an Individual

                    Plaintiff,

v.

LG ELECTRONICS INC.,

                    Defendant.

**CIVIL ACTION NO.:**
**6:21-cv-00696-ADA-DTG**

**DEMAND FOR JURY TRIAL**

**PUBLIC VERSION**

## DEFENDANT LG ELECTRONICS INC.'S MOTION FOR SUMMARY JUDGMENT TO PRECLUDE PRE-SUIT DAMAGES AND SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT OR INDIRECT INFRINGEMENT

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    STATEMENT OF UNDISPUTED FACTS .......................................................1

III.   LEGAL STANDARDS .......................................................................................4

     **A.**    Marking.......................................................................................................4

     **B.**    Actual Notice .............................................................................................4

     **C.**    Willful Infringement .................................................................................5

     **D.**    Indirect Infringement ................................................................................5

IV.   PLAINTIFF IS NOT ENTITLED TO PRE-SUIT DAMAGES ...........................6

     **A.**    Plaintiff Cannot Show the Hafeman Product Was Properly Marked with Any of the Asserted Patents As Required by Section 287(a)................................6

     **B.**    Plaintiff Also Fails to Show Actual Notice of Infringement to LG. .......................8

          **1.**    The Tangible IP Emails Do Not Identify any LG Product that is Believed to be an Infringement. ...................................................................... 8

          **2.**    The Tangible IP Emails Did Not Communicate a Charge of Infringement. .................................................................................................. 9

          **3.**    The Tangible IP Emails Are Not "Affirmative Communication of A Specific Charge of Infringement" by Plaintiff.......................................... 10

V.    PLAINTIFF FAILS TO PROVE WILLFUL INFRINGEMENT .....................11

VI.   PLAINTIFF FAILS TO PROVE INDIRECT INFRINGEMENT ....................13

VII.  CONCLUSION..................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am Med. Sys., Inc. v. Med. Eng'g Corp.*,
   6 F.3d 1523 (Fed. Cir. 1993)......................................................................................7

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
   24 F.3d 178 (Fed. Cir. 1994)...................................................................................4, 9

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017)..................................................................................4

*Artic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   950 F.3d 860 (Fed. Cir. 2020)..................................................................................4, 5

*Bayer Healthcare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021)....................................................................................5

*Bos. Sci. Corp. v. Nevro Corp.*,
   560 F. Supp. 3d 837 (D. Del. 2021)..........................................................................12

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015)...............................................................................................5, 13

*Evolved Wireless, LLC v. Apple Inc.*,
   No. 15-542-JFB-SRF, 2019 WL 8128550 (D. Del. Feb. 19, 2019).........................12

*Fujitsu Ltd. v. Netgear, Inc.*,
   No. 07-cv-710-bbc, 2009 WL 3047616 (W.D. Wis. Sept. 19, 2009), *rev'd in
   part on other grounds*, 620 F.3d 1321 (Fed. Cir. 2010) ...........................................8

*Gart v. Logitech, Inc.*,
   254 F.3d 1334 (Fed. Cir. 2001)................................................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)....................................................................................................5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   579 U.S. 93 (2016)................................................................................................5, 13

*Jackson v. Intel Corp.*,
   No. 09 C 2178, 2009 WL 2851742 (N.D. Ill. Aug. 31, 2009), *appeal
   dismissed*, 373 F. App'x 45 (Fed. Cir. 2009)...................................................8, 9, 10

*Lans v. Digit. Equip. Corp.*,
   252 F.3d 1320 (Fed. Cir. 2001)............................................................................9, 10

*Malico, Inc. v. Cooler Master USA, Inc.*,
    No. C 11-4537-RS, 2013 WL 4482503 (N.D. Cal. Aug. 20, 2013) ........................................7

*Minton v. Nat'l Ass'n of Secs. Dealers Inc.*,
    336 F.3d 1373 (Fed. Cir. 2003)...........................................................................................6

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998).............................................................................................4

*Northbrook Digit. Corp. v. Browster, Inc.*,
    No. 06-4206, 2008 WL 4104695 (D. Minn. Aug. 26, 2008) ..................................................7

*Shopify Inc. v. Express Mobile, Inc.*,
    No. 19-439-RGA, 2021 WL 4288113 (D. Del. Sept. 21, 2021).......................................11, 12

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir.1997)..........................................................................................5, 8

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    14 F.4th 1323 (Fed. Cir. 2021) ...........................................................................................11

*Stryker Corp. v. Zimmer, Inc.*,
    837 F.3d 1268 (Fed. Cir. 2016).............................................................................................7

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012).............................................................................................6

*Toshiba Corp. v. Imation Corp.*,
    990 F.Supp.2d 882 (W.D. Wis. 2013) ...............................................................................8, 10

*In re Volkswagen Group of Am., Inc.*,
    28 F.4th 1203 (Fed. Cir. 2022) ...........................................................................................10

*Zenith Elecs., LLC v. Sceptre, Inc.*,
    No. LACV1405150JAKAJWX, 2016 WL 7177530 (C.D. Cal. Feb. 5, 2016) ......................10

**Statutes**

35 U.S.C. § 102(b) ...............................................................................................................6

35 U.S.C. § 287...............................................................................................1, 9, 10, 11

35 U.S.C. § 287(a) ................................................................................................. *passim*

**TABLE OF EXHIBITS**

| EXHIBITS | DESCRIPTION |
|---|---|
| Ex. 1 | Excerpts from Carolyn Hafeman Deposition Transcript (November 17, 2022) |
| Ex. 2 | Excerpts from Plaintiff's Second Amended and Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-19) (November 23, 2022) |
| Ex. 3 | Excerpts from Plaintiff's First Supplemental Objections and Responses to Defendant's Second Set of Interrogatories (Nos. 20-28) (December 20, 2022) |
| Ex. 4 | Excerpts from Plaintiff's Responses and Objections to Defendant's First Set of Requests for Admission (January 20, 2023) |
| Ex. 5 | LG Electronics Inc.'s Letter to Hafeman re Marking Defense (August 30, 2022) |
| Ex. 6 | LG Electronics Inc.'s Follow Up Letter to Hafeman re Marking Defense (October 7, 2022) |
| Ex. 7 | Excerpts from Expert Report of Dr. Scott Schaeffer Regarding Infringement (December 14, 2022) |
| Ex. 8 | Brokerage Agreement between Carolyn Hafeman and Tangible IP ("Brokerage Agreement") (TANGIBLE_000365 – 371) |
| Ex. 9 | Email sent by Tangible IP on March 29, 2018 ("March 2018 Email") (TANGIBLE_000001 – 003) |
| Ex. 10 | Return receipt to the March 2018 Email (TANGIBLE_000005) |
| Ex. 11 | Excerpts from LG Electronics Inc.'s Objections and Responses to Plaintiff's Second Set of Interrogatories to Defendant (Nos. 27-29) (November 21, 2022) (Verified) |
| Ex. 12 | Excerpts from LG Electronics Inc.'s Second Amended and Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories to Defendant (Nos. 1-26) (October 24, 2022) (Verified) |
| Ex. 13 | Excerpts from Louis Carbonneau Deposition Transcript (November 29, 2022) |

| Ex. 14 | Email sent by Tangible IP on December 13, 2018 (TANGIBLE_000010 – 13) |
| Ex. 15 | Email sent by Tangible IP on October 18, 2018 (TANGIBLE_000014 – 17) |
| Ex. 16 | Email sent by Tangible IP on August 4, 2020 (TANGIBLE_000018 – 22) |
| Ex. 17 | Declaration of Louis Carbonneau (November 10, 2022) (LG_00091830 – 91832) |
| Ex. 18 | Cover page of Tangible IP claim chart U.S. Patent No. 9.892, 287 v. Apple Devices (TANGIBLE_000023) |
| Ex. 19 | Cover page of Tangible IP claim chart U.S. Patent No. 9.892, 287 v. Norton Mobile Security App and Services (TANGIBLE_000048) |
| Ex. 20 | Cover page of Tangible IP claim chart European Patent No. EP1792432B1 v. Apple Mac Computers (TANGIBLE_000089) |
| Ex. 21 | Disclaimer page of Tangible IP's Executive Summary of Hafeman Portfolio (TIP #1006) (TANGIBLE_000172) |
| Ex. 22 | Cover page of Tangible IP claim chart U.S. Patent No. 10,325,122 v. Apple Devices (TANGIBLE_000373) |
| Ex. 23 | Tangible IP claim chart U.S. Patent No. 9.892, 287 v. Android Find My Device (HAFEMAN-LG_006094) |
| Ex. 24 | Institution Decision in IPR2022-01188, Paper 16 (January 31, 2023) |
| Ex. 25 | Institution Decision in IPR2022-01189, Paper 16 (January 31, 2023) |
| Ex. 26 | Institution Decision in IPR2022-01190, Paper 16 (January 31, 2023) |
| Ex. 27 | Institution Decision in IPR2022-01191, Paper 16 (January 31, 2023) |
| Ex. 28 | Institution Decision in IPR2022-01192, Paper 16 (January 31, 2023) |
| Ex. 29 | Institution Decision in IPR2022-01193, Paper 16 (January 31, 2023) |

## I.      INTRODUCTION

Plaintiff Carolyn W. Hafeman ("Plaintiff") is not entitled to pre-suit damages. Her companies sold unmarked products that she admits embody claims of the Asserted Patents; neither her products nor her website listed the numbers of the Asserted Patents prior to this litigation; and her only evidence of Defendant LG Electronics Inc.'s ("LG") alleged pre-suit knowledge—emails from her broker with a clear disclaimer that they were not intended to charge infringement—falls short of the actual notice required by 35 U.S.C. § 287. Thus, she cannot meet her burden of proving entitlement to pre-suit damages. Further, the record is insufficient to establish that LG had the requisite knowledge and intent to willfully infringe or indirectly infringe any of the Asserted Patents. Accordingly, LG is entitled to summary judgment of no pre-suit damages, no willful infringement, and no indirect infringement.

## II.     STATEMENT OF UNDISPUTED FACTS

On July 2, 2021, Plaintiff filed this lawsuit against LG for infringing U.S. Patent Nos. 9,021,610 ("the '610 patent"), 9,390,296 ("the '296 patent"), 9,672,388, ("the '388 patent"), 9,892,287 ("the '287 patent"), 10,325,122 ("the '122 patent"), and 10,789,393 ("the '393 patent"), all of which are continuations of U.S. Patent No. 8,601,606 ("the '606 patent"). On November 22, 2021, Plaintiff amended the original complaint to limit her infringement causes of action to the '287, '122, and '393 patents (collectively "the Asserted Patents").

In 2007, Plaintiff's company, Front Door Software Corporation, began publicly selling/licensing a computer program, called the Retriever, that embodied the Asserted Patents. Am. Compl. (Dkt. 35) at ¶ 10; Ex. 1 at 21:24-23:7. This product was subsequently renamed the Front Door Software product (collectively, the "Hafeman Product"). *See* Ex. 1 at 21:24-23:7, 119:2-120:4, 121:10-13; Ex. 2 at No. 18. The Hafeman Product continued to be licensed, with

Plaintiff's authorization, after February 13, 2018 – the date the first patent-in-suit was issued – through at least the filing of this lawsuit by a company named Guardian Angel d/b/a Front Door Software of which Plaintiff is a majority shareholder. *See* Ex. 3 at Nos. 20, 23; Ex. 4 at Nos. 5, 7, 9; Ex. 1 at 176:3-8. Plaintiff relies on the Hafeman Product as "encompassing the subject matter of the claims of the Patents-in-Suit." Ex. 2 at No. 6. However, no one marked the Hafeman Product with the numbers of the Asserted Patents. Ex. 4 at Nos. 10-12. Prior to the filing of this lawsuit, Plaintiff's company's website listed only the numbers for the '606 and '610 patents (neither asserted). Ex. 2 at No. 18, Ex. 3 at No. 23; Ex. 1 at 125:13-126:19 (admitting that before this litigation, only the '606 and '610 patents were listed with a note that additional patents were pending). In August and October 2022, LG sent two letters to Plaintiff's counsel asserting Plaintiff had a duty to mark the Hafeman Product and had failed to meet her marking duty. Exs. 5-6. It was only after receiving these letters that Plaintiff requested that the numbers for the Asserted Patents be added to the website. Ex. 1 at 125:24-126:14.

For actual notice, Plaintiff relies only on a March 29, 2018 email to LG from Tangible IP. Ex. 7 at ¶ 450; *see* Ex. 2 at No. 2. Tangible IP was hired to "market and dispose of" Plaintiff's patents." Ex. 8 at 1. Under their agreement, "Hafeman retain[ed] full authority to ultimately accept or refuse any bid received from Prospects." *Id.* at 2. And the agreement specifically stated that "[n]either party is an agent, partner or joint venturer with the other party and neither one can make commitments on behalf of the other." *Id.* at 5.

The March 29, 2018 email was sent to two LG individuals, Ji Young Bae and Charlie Yu, with the subject line stating, "***Patent Portfolio for Sale*** with Industry-wide EoU: Computer Security, Communication and Mobile Advertising (TIP #1006)." Ex. 9 ("March 2018 Email").[1]

---

[1] Emphasis in bold and italics added unless otherwise noted.

Claim charts directed to "Find My Device" functionality ***in a*** ██████ ***product*** and an executive summary of the patent portfolio for sale were linked, but not attached. The email listed the '287 patent, but not the '122 or '393 patents (which had not issued). *Id.* Neither LG nor any LG product is mentioned in the email or the linked chart. *Id.* One return receipt to this email from Charlie Yu was produced. Ex. 10. However, Mr. Yu, who does not work on patent related matters but ***only*** on trademark and design anti-counterfeiting, does not recall the email. Ex. 11 at No. 28; Ex. 12 at No. 15. And there is no evidence any of the links in the email were clicked by anyone at LG. *See* Ex. 13 at 26:16-18. Critically, this email contained the following disclaimer:

> This email may include information regarding the sale or license of patents and other intellectual property. ***Any information, data, and charts are provided only for each prospective buyer's use in independently evaluating the portfolio***. The discussion of the use or applicability of the assets described is only for illustrative purposes. ***Nothing in this communication or in any attachment thereof intended to be, and should be interpreted as being, a notice of infringement, any form of accusation of infringement, or any opinion regarding the actual use of the assets***.

Ex. 9. Subsequent emails were sent between 2018 and 2020, all of which include the same disclaimer that the communication was not a notice of infringement for LG. *See* Ex. 14 at 4; Ex. 15 at 4; Ex. 16 at 4 (collectively with the March 2018 Email, the "Tangible IP Emails."). But no return receipt to any of these emails was produced, and no LG employees recalled these emails either. Ex. 12 at No. 15.

According to Mr. Carbonneau (Tangible IP CEO and author of the emails), Tangible IP intentionally includes the foregoing disclaimer to "specifically avoid providing a notice of infringement to the recipient companies." Ex 17 at ¶ 5; Ex. 13 at 18:7-19:1, 26:8-18, 48:12-49:4. Further, "Tangible IP purposefully will not include a claim chart against the recipient company's products in such emails ***so that it does not provide notice of infringement***." Ex 17 at ¶ 5; Ex. 13 at 26:8-18. Also, as part of the effort to avoid putting any entity on a notice of infringement,

Tangible IP will redact any written communication that may suggest the recipient entity is infringing. Ex. 13 at 48:12-49:4; Ex. 1 at 135:7-24. Plaintiff was aware of Tangible's practice to avoid sending notices of infringement. Ex. 1 at 135:7-15. Plaintiff "reviewed every single document that [Tangible IP] ever prepared in this matter." Ex. 13 at 27:16-29:19; *see also* Ex. 1 at 135:1-24. Plaintiff even prepared the first draft of the Tangible IP Executive Summary herself in which she included the same disclaimer that Tangible IP's communications were not notices of infringement. Ex. 13 at 27:16-29:19; *see also* Ex. 1 at 145:13-147:1.

## III.   LEGAL STANDARDS

### A.   Marking

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover [pre-suit] damages." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017). "If a patentee who makes, sells, offers for sale, or imports his patented articles has not given notice of his right by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." *Id.* at 1366 (internal citation and quotation marks omitted). Once an alleged infringer identifies products it believes are unmarked patented articles, the patent owner bears the burden of proving compliance with the marking statute by a preponderance of evidence. *Arctic Cat*, 876 F.3d at 1368; *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).

### B.   Actual Notice

"Actual notice requires the affirmative communication of ***a specific charge of infringement by a specific accused product or device***." *Artic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) (quoting *Amsted Indus. Inc. v.*

4

*Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994)). The analysis of whether a communication constitutes actual notice "must focus on the action of the patentee, not the knowledge or understanding of the [alleged] infringer." *Id*. "[T]he purpose of the actual notice requirement is met when the recipient is notified, ***with sufficient specificity***, that the patent holder believes that the recipient of the notice may be an infringer." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir.1997).

### C.    Willful Infringement

"[W]illfulness requires ***deliberate or intentional*** infringement." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Id*. "To establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Id*. at 987. Further, a claim for enhanced damages based on willful infringement requires conduct "variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed— characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-104 (2016).

### D.    Indirect Infringement

A defendant is liable for "induced infringement under § 271(b)" if the defendant took certain affirmative acts to bring about the commission by others of acts of infringement and had "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011). Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). Further, "[t]o establish contributory

infringement liability, the patent owner must show . . . that there are no substantial non-infringing uses." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012).

## IV.   PLAINTIFF IS NOT ENTITLED TO PRE-SUIT DAMAGES

### A.   Plaintiff Cannot Show the Hafeman Product Was Properly Marked with Any of the Asserted Patents As Required by Section 287(a).

It is undisputed that the Hafeman Product embodies the claimed subject matter of the Asserted Patents. Ex. 2 at Nos. 6, 18; *see also* Exs. 5, 6. The Hafeman Product was offered for license, with authorization from Plaintiff, at least from February 13, 2018—the issue date of the earliest patent-in-suit—through at least the filing of this case. Ex. 4 at Nos. 5, 7, 9, 14; *See* Ex. 1 at 21:24-23:7, 119:2-120:4, 121:10-13, 128:13-24, 176:3-8; *Minton v. Nat'l Ass'n of Secs. Dealers Inc.*, 336 F.3d 1373, 1377-78 (Fed. Cir. 2003) (holding that a "license" combined with "computer program implementing and thus embodying the claimed method" was a sale under 35 U.S.C. § 102(b)). As such, in the absence of actual notice, Plaintiff had the obligation to mark the Hafeman Product to receive pre-suit damages.

Plaintiff concedes that the Hafeman Product was not marked with the actual patent number of any of the Asserted Patents before this suit was filed. Ex. 4 at Nos. 10, 11, 12. Instead, Plaintiff relies on two webpages on frontdoorsoftware.com which state: "Front Door Software's products are protected by the '606 and '610 patents with additional patents pending in the United States and internationally." *See* Ex. 2 at No. 18; Ex. 1 at 125:21-22. Plaintiff did not add the Asserted Patent numbers to the website until 2022 after receiving communications from Defendant regarding this issue. Ex. 3 at No. 23 ("In 2022, [Plaintiff] made a request to Guardian Angel to change the website to include the patent number for continuation patents that had been granted, including patents granted in 2018, 2019, and 2020."); Ex. 1 at 125:18-126:19.

The marking statute is clear that the product must be marked with "the number **of the patent** [or] an address of a posting on the Internet . . . that must associate[] the patented article with the number **of the patent**." 35 U.S.C. § 287(a). Marking with non-asserted patent numbers is not good enough.[2] *See Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1278 n.5 (Fed. Cir. 2016) ("[T]he [marking] statute is not so broad as to allow marking with a different patent—with different claims—to provide sufficient notice to the public. Rather, the plain language of the marking statute provides that the patented article be marked with the 'number of the patent.' 35 U.S.C. § 287(a)."); *Malico, Inc. v. Cooler Master USA, Inc.*, No. C 11-4537-RS, 2013 WL 4482503, at *8-9 (N.D. Cal. Aug. 20, 2013) (granting summary judgment of no pre-suit damages for failure to properly mark the specifically asserted patent and further ruling that marking with a different, unasserted patent number did not suffice (citations omitted)).

The Federal Circuit has held that because the purpose of the marking statute was to "place the world on notice of the existence of the patent," compliance is not met until a patentee "consistently marked substantially all of its patented products, and it was no longer distributing unmarked products." *Am Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993). Not a single Hafeman Product was marked with the Asserted Patents before this lawsuit.

---

[2] Even if the two webpages listed the Asserted Patents, they would still fail to satisfy Plaintiff's marking obligation because a user can download the software without seeing either page. Plaintiff has not shown that the word 'patent' or 'pat.' appears with the URL of either webpage on the home or download page of the Front Door Software website through which customers download the patented product. 35 U.S.C. § 287(a). *See Northbrook Digit. Corp. v. Browster, Inc.*, No. 06-4206, 2008 WL 4104695, at *4 (D. Minn. Aug. 26, 2008) ("[T]he website through which the software could be downloaded constituted 'a tangible item to mark.'" (citation omitted)).

**B.      Plaintiff Also Fails to Show Actual Notice of Infringement to LG.**

Plaintiff never contacted LG directly with a charge of infringement against LG. The Tangible IP Emails to two LG employees upon which Plaintiff relies for actual notice are insufficient as a matter of law for several reasons.

**1.      The Tangible IP Emails Do Not Identify any LG Product that is Believed to be an Infringement.**

The Tangible IP Emails fail to inform LG of "the activity that is believed to be an infringement" as required by statute. *SRI*, 127 F.3d at 1470. Neither the emails themselves nor the linked materials identify any specific LG product, let alone an LG product that Plaintiff believed to be infringing. Although the March 2018 Email included a link to a claim chart against "Android Find My Device" functionality in a ████████ phone,[3] this email and the link "lack[s] the requisite specificity required by the notice statute." *See Toshiba Corp. v. Imation Corp.*, 990 F.Supp.2d 882, 900 (W.D. Wis. 2013) (finding letter asserting patents against DVD standards did not provide actual notice because the letters did not identify "any ***particular*** product or device"); *see also Fujitsu Ltd. v. Netgear, Inc.*, No. 07-cv-710-bbc, 2009 WL 3047616, at *9 (W.D. Wis. Sept. 19, 2009), *rev'd in part on other grounds*, 620 F.3d 1321 (Fed. Cir. 2010) (finding letter offering license to IEEE 802.11 standard-essential patents was not a specific charge of infringement because it did not refer to any specific products sold by defendant); *Jackson v. Intel Corp.*, No. 09 C 2178, 2009 WL 2851742, at *4 (N.D. Ill. Aug. 31, 2009), *appeal dismissed*, 373 F. App'x 45 (Fed. Cir. 2009) (finding that generally mentioning a class or type of product covered by the patent does not suffice to meet the requirement of Section 287(a)). In Tangible IP's own words, LG was "not the target." Ex. 13 at 48:12-49:4. In short, the

---

[3] There is no evidence LG clicked on the link or saw the claim chart that was against a ████████ phone, not an LG product. Ex. 23 at 7-25.

Tangible IP Emails fail to "fulfill[] the purposes of § 287(a) by facilitating the alleged infringer's efforts to avoid continued infringement." *Lans v. Digit. Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001).

### 2. The Tangible IP Emails Did Not Communicate a Charge of Infringement.

The Tangible IP Emails do not amount to a charge of infringement as a matter of law. *See Amsted*, 24 F.3d at 187 (finding a letter which notified the whole industry only of patentee's ownership of the patent and generally advised companies not to infringe was not Section 287 notice). All of the Tangible IP Emails include a disclaimer stating that "***Nothing in this communication or in any attachment thereof intended to be, and should be interpreted as being, a notice of infringement, any form of accusation of infringement, or any opinion regarding the actual use of the assets***." *See* Ex. 9 at 3, Ex. 14 at 4, Ex. 15 at 4, Ex. 16 at 4. A similar disclaimer is also included in the linked Executive Summary and claim charts:

> ***The discussion of the use or applicability of the portfolio is only for illustrative purposes. This document and any documents exchanged during the sales process are not intended to be, and should not be interpreted as being, a notice of infringement, any form of accusation of infringement, or any opinion regarding the actual use of the patent portfolio.***

*See* Exs. 18-22. Furthermore, while these emails indicate claim charts against certain products have been prepared, no claim charts are directly attached. *See* Ex. 9, Exs. 14-16. Instead, recipients are invited to either download the additional materials through the embedded links or reach out to receive those documents. *Id.* LG never reached out for those documents, and there is no evidence that LG downloaded any of them. Ex. 1 at 171:23-172:1; Ex. 13 at 26:16-18.

Courts have found actual notice lacking in analogous circumstances. In *Jackson*, the plaintiff, when offering a license, specifically stated in the notice letter that he had no opinion as to whether the recipient was infringing and did not make explicit that he was providing an

9

opportunity to abate infringement. *Jackson*, 2009 WL 2851742, at *4. There, the court found the plaintiff failed to provide a specific charge of infringement because the letter did not (1) identify the activity believed to be an infringement or (2) include a proposal to abate that infringement. *Id.*; *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001) (finding a letter stating that the defendant might find that patent "particularly interesting" not effective actual notice because it does not indicate plaintiff's belief that defendant's products were infringing). Likewise, the inclusion of the disclaimer is fatal to Plaintiff's claim that these communications provided actual notice to LG.

### 3. The Tangible IP Emails Are Not "Affirmative Communication of A Specific Charge of Infringement" by Plaintiff.

The Tangible IP Emails are not an affirmative action of Plaintiff for purposes of Section 287 because Tangible IP was not acting on her behalf to provide notice of infringement. *Lans,*, 252 F.3d at 1327 ("[N]otice from someone closely associated with the patentee does not satisfy § 287(a)."); *c.f. Zenith Elecs., LLC v. Sceptre, Inc.,* No. LACV1405150JAKAJWX, 2016 WL 7177530, at *3 (C.D. Cal. Feb. 5, 2016) (finding notice letters from licensing agent may satisfy § 287(a) when the agent was contracted to act affirmatively on behalf of plaintiffs as to making charges of infringement). Nor was Tangible IP the party with ultimate responsibility for licensing and enforcement of the Asserted Patents. *Toshiba Corp. v. Imation Corp.*, 990 F.Supp.2d at 899 (finding letter from licensing agent for patent pool not an action of the patentee because the agent did not have ultimate responsibility for licensing and enforcement of the patents-in-suit). Instead, Tangible IP was Plaintiff's agent for ***divestiture*** of Plaintiff's patent portfolio.[4] Ex. 17 at ¶ 6

---

[4] The fact that Tangible IP may be an agent of Plaintiff for divestiture of her patent portfolio does not automatically make it her agent for licensing or assertion. *In re Volkswagen Group of Am., Inc.*, 28 F.4th 1203, 1209 (Fed. Cir. 2022) ("[J]ust because a party may be a principal's agent for a particular purpose does not mean that the party is the principal's agent for another.").

(Tangible IP was retained by Plaintiff "to provide brokerage services to market and sell her patents," and "was not hired to . . . send a notice of infringement to any entity on behalf of [Plaintiff]."). The brokerage agreement between Tangible IP and Plaintiff clearly provides that "[n]either Party is an agent, partner or joint venturer with the other party and ***neither one can make commitments on behalf of the other***." Ex. 8 at 5. Thus, Plaintiff retained ultimate responsibility for licensing and enforcement of the Asserted Patents, and the communications from Tangible IP cannot be deemed to have come from Plaintiff under § 287(a).

Thus, there are no genuine disputes as to any material facts that Plaintiff is not entitled to pre-suit damages due to her failure to mark the Hafeman Product or provide sufficient actual notice to LG as required under Section 287.

## V.     PLAINTIFF FAILS TO PROVE WILLFUL INFRINGEMENT

To establish willful infringement, Hafeman must prove that LG had knowledge of the Asserted Patents and knew that its conduct was infringing, and that LG's infringement was deliberate.  *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021).  Plaintiff cannot meet any of these requirements, whether based on pre-suit or post-suit knowledge.

First, even if Plaintiff could show that LG knew of the patents-in-suit, willful infringement requires proof that the accused infringer had evidence of infringement. For pre-suit knowledge, Plaintiff relies only on claim charts that were linked, but not attached, to the Tangible IP Emails to establish that LG had evidence of infringement by Android software (and had no evidence for Windows[5]). However, as explained in sections III.B.3 above, the Tangible IP Emails explicitly stated that ***nothing*** in the communication or attachments should be interpreted as a notice or accusation of infringement. *See Shopify Inc. v. Express Mobile, Inc.*,

---

[5] The accused LG laptops use the Windows operating system.

No. 19-439-RGA, 2021 WL 4288113, at *20 (D. Del. Sept. 21, 2021) ("[L]etter soliciting bids to purchase the [patents-in-suit] without any mention of infringement by [defendant] could hardly show [defendant] as acting in the face of a risk of infringement."). Further, although Plaintiff presents no evidence that any LG employee ever accessed or reviewed the linked claim charts, even if they did, that *claim chart refers to a ▮▮▮▮▮▮ phone not an LG product*.  *See id.*; *Bos. Sci. Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 843 (D. Del. 2021) ("Knowledge of a patent is not the same thing as knowledge that a product or the use of that product infringes the patent.").

Second, even if LG had knowledge of the alleged infringement, Plaintiff has offered no evidence that LG deliberately infringed the patents. Since the filing of this lawsuit, LG has presented reasonable defenses of invalidity. Indeed, the Patent Trial and Appeal Board recently granted institution of six IPR petitions, finding a reasonable likelihood of prevailing in demonstrating that each of the Asserted Claims are invalid. *See, e.g.,* Ex. 24 at 17-18 (finding reasonable likelihood of prevailing in demonstrating all Asserted Claims of '122 patent unpatentable); Ex. 25 at 18 (same); Ex. 26 at 22-23 (same as to the '393 patent); Ex. 27 at 22 (same as to the '393 patent); Ex. 28 at 26-27 (same as to the '287 patent; Ex. 29 at 18 (same as to the '287 patent). Accordingly, "no reasonable jury could find any intentional conduct" by LG. *See Evolved Wireless, LLC v. Apple Inc.*, No. 15-542-JFB-SRF, 2019 WL 8128550, at *4 (D. Del. Feb. 19, 2019) (finding willfulness claim barred as a matter of law where defendants had raised reasonable defenses to infringement claims). For these reasons, Hafeman fails to demonstrate deliberate infringement by LG, and there is no genuine dispute as to any material fact that LG cannot be liable for willful infringement.[6]

---

[6] Even if Plaintiff could show that LG deliberately infringed the Asserted Patents (she can not), Plaintiff certainly would not be able to show that LG engaged in conduct that could be described

## VI.    PLAINTIFF FAILS TO PROVE INDIRECT INFRINGEMENT

Indirect infringement requires knowledge that a third party's acts constitute direct infringement, not merely the knowledge of the existence of the patent or the actions. *Commil,* 575 U.S. at 639-42. As discussed above, Plaintiff cannot establish that LG had pre-suit knowledge that the Asserted Patents were infringed by its products, much less knowledge of any direct infringement of the Asserted Patents by its users as a result of any of LG's actions. Thus, there is no dispute as to any material fact that LG cannot be liable for indirect infringement of the Asserted Patents.  Furthermore, because Plaintiff does not assert direct infringement as to claim 1 (the method claims) of each of the Asserted Patents, the Court should also enter summary judgment of no direct infringement as to those claims. *See* Ex. 7 at ¶ 15 (noting that Plaintiff's expert has only determined that the method claims are directly infringed by users of the accused LG products, as opposed to Defendant).

## VII.    CONCLUSION

For these reasons, the Court should enter summary judgment of no pre-suit damages, no willful infringement, no indirect infringement of the Asserted Patents and no direct infringement of claim 1 of each Asserted Patent.

---

as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."   *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 579 U.S. at 103 (Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior.").

Dated: February 6, 2023

Respectfully submitted,

*/s/ Celine J. Crowson*

**HOGAN LOVELLS US LLP**
Celine J. Crowson (Admitted *Pro Hac Vice*)
555 Thirteenth St, NW
Washington, DC 20004
Celine.Crowson@hoganlovells.com
(202) 637-5703 (Telephone)
(202) 637-5910 (Facsimile)

Gurtej Singh (CA Bar No. 286547)
(Admitted in this District)
855 Main St Suite 200
Redwood City, CA 94063
Tej.Singh@hoganlovells.com
(650) 463-4000 (Telephone)
(650) 463-4199 (Facsimile)

**FAEGRE DRINKER BIDDLE & REATH, LLP**
Kirstin Stoll-DeBell (Admitted *Pro Hac Vice*)
1144 15th Street, Suite 3400
Denver, CO 280202
Kirstin.StollDeBell@faegredrinker.com
(303) 607-3500 (Telephone)
(303) 607-3600 (Facsimile)

Carrie A. Beyer (Admitted *Pro Hac Vice*)
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Carrie.Beyer@faegredrinker.com
(312) 569-1000 (Telephone)
(312) 569-3000 (Facsimile)

Brianna L. Silverstein (Admitted *Pro Hac Vice*)
1500 K Street NW, Suite 1100
Washington, DC 20005
Brianna.Silverstein@faegredrinker.com
(202) 842-8800 (Telephone)
(202) 842-8465 (Facsimile)

Kirsten L. Elfstrand (Admitted *Pro Hac Vice*)
1144 15th Street, Suite 3400
Denver, CO 280202

14

Kirsten.Elfstrand@faegredrinker.com
(612) 766-7000 (Telephone)
(612) 766-1600 (Facsimile)

**KELLY HART & HALLMAN LLP**
J. Stephen Ravel
Texas State Bar No. 16584975
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

**POTTER MINTON PC**
Michael E. Jones
Shaun William Hassett
110 N College, Suite 500
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 531-3939
Email: mikejones@ptterminton.com
Email: shaunhassett@potterminton.com

*Counsel for Defendant LG Electronics Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has

been served on all counsel of record via electronic mail on February 6, 2023.

*/s/   Celine J. Crowson*
Celine J. Crowson