## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

CAROLYN W. HAFEMAN, an Individual

        Plaintiff,

v.

LG ELECTRONICS INC.,

        Defendant.

**CIVIL ACTION NO.:**
**6:21-cv-00696-ADA-DTG**


**DEMAND FOR JURY TRIAL**


**PUBLIC VERSION**


**DEFENDANT LG ELECTRONICS INC.'S MOTION TO EXCLUDE**
**CERTAIN OPINIONS OF DR. SCOTT SCHAEFER**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................1

III.   LEGAL STANDARDS .........................................................................................2

IV.   ARGUMENT .........................................................................................................3

      A.     Dr. Schaefer's Opinions on Apportionment Should be Excluded. ..........................3

            1.     Apportionment of Front Door Software Product ........................................ 3

            2.     Apportionment for Third-Party Phone Found Application........................ 9

            3.     Dr. Schaefer's Opinions on Apportionment Should Also Be Excluded Because They Will Not Be "Helpful" to the Jury.................................... 11

      B.     Portions of Dr. Schaefer's "Opinions" on Indirect Infringement Should Be Excluded. ...............................................................................................11

      C.     Dr. Schaefer's Opinions on Commercial Success of the Invention Should Also Be Excluded. ...............................................................................................13

V.     CONCLUSION....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Applied Materials, Inc.*,
   692 F.3d 1289 (Fed. Cir. 2012)..................................................................................14

*BMC Software Inc. v. ServiceNow Inc.*,
   No. 2:14-CV-903-JRG, 2016 WL 379602 (E.D. Tex. Feb. 1, 2016) ......................7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 580 (1993).................................................................................................3

*Dickson v. Bosworth Co., Ltd.*,
   No. MO:21-cv-009, 2022 WL 1523490 (W.D. Tex. May 13, 2022)......................12

*Escalante v. Creekside Logistics, LLC*,
   No. 5:18-cv-116, 2019 WL 9135758 (W.D. Tex. Feb. 12, 2019) .........................12

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)...............................................................................................13

*GREE, Inc. v. Supercell Oy*,
   No. 2:19-cv-00070, 2020 WL 4288350 (E.D. Tex. July 27, 2020) ......................12

*In re Huang*,
   100 F.3d 135 (Fed. Cir. 1996)...............................................................................13

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006)............................................................................15

*Paz v. Brush Engineered Materials, Inc.*,
   555 F.3d 383 (5th Cir. 2010) ..................................................................................3

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
   No. 2:15-cv-512, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) .........................12

*Rodriquez v. Transportes de Carga FEMA, S.A. de C.V.*,
   No. 5:18-cv-114, 2020 WL 6938330 (S.D. Tex. July 28, 2020) ..........................12

*Sims v. Kia Motors of Amer, Inc.*,
   839 F.3d 393 (5th Cir. 2016) ...............................................................................3, 8

*Sound View Innovations, LLC v. Hulu, LLC*,
   33 F.4th 1326 (Fed. Cir. 2022) ...............................................................................8

**Rules**

Fed. R. Evid. 702 ...................................................................................................3, 9, 11, 13

**TABLE OF EXHIBITS**

| EXHIBITS | DESCRIPTION |
|---|---|
| Ex. 1 | Excerpts from Expert Report of Dr. Scott Schaefer Regarding Infringement (December 14, 2022) |
| Ex. 2 | Excerpts from Dr. Scott Schaefer Deposition Transcript (January 25-26, 2023) |
| Ex. 3 | Excerpts from Plaintiff's First Supplemental Objections and Responses to Defendant's Second Set of Interrogatories (Nos. 20-28) (December 20, 2022) |
| Ex. 4 | Excerpts from Expert Report of John Black, Ph.D. RE: Non-Infringement (January 20, 2023) |
| Ex. 5 | Excerpts from Rebuttal Expert Report of Dr. Scott Schaeffer Regarding Validity (January 20, 2023) |
| Ex. 6 | Excerpts from the Deposition of Donghwan Lee (November 10-11, 2022) |
| Ex. 7 | Excerpts from the Deposition of Walter Bratic (January 24, 2023) |

I.      **INTRODUCTION**

Defendant LG Electronics, Inc. ("LG") respectfully moves the Court to strike the opinions in Dr. Scott Schaefer's expert report regarding damages-related apportionment of allegedly comparable products, portions of his opinions on indirect infringement, and his opinions on alleged commercial success of the invention. Without providing any technical details of the products, the apportionment performed by Dr. Schaefer completely lacks foundation, let alone a reliable one. Furthermore, Dr. Schaefer fails to apply any reliable principle or method to the facts and jumps to conclusions without any articulated explanation. And Dr. Schaefer attributes features to the Asserted Patents without any analysis comparing the features to any patent claims. Because Dr. Schaefer's apportionment opinions are purely subjective and arbitrary, they are also not helpful to the jury. Therefore, this Court should exclude these opinions at trial.

Further, portions of Dr. Schaefer's report on indirect infringement are mere recitations of fact evidence and testimony, and thus outside of his specialized knowledge. He also opines on Defendant's state of mind, which is prohibited by the law. Thus, those opinions should also be excluded. Similarly, Dr. Schaefer's opinions on the alleged commercial success of the invention are unreliable and should be excluded.

II.     **BACKGROUND**

Dr. Schaefer was retained to provide opinions regarding whether the asserted claims of U.S. Patents Nos. 9,892,287 (the "'287 patent"), 10,325,122 (the "'122 patent"), and 10,789,393 (the "'393 patent") (collectively, the "Asserted Patents") are infringed. On December 14, 2022, Plaintiff served Dr. Schaefer's expert report on infringement. Towards the end of the report, Dr. Schaefer opines on the apportionment of features of allegedly comparable products, including

1

the Front Door Software (a product sold by plaintiff's companies) and an application called
Phone Found (a product from a third-party individual on the Apple App Store), to the Asserted
Patents. Ex. 1 at ¶¶ 459-470. This apportionment of features in what are essentially attempted
proxies for the patented subject matter, is relied on by Plaintiff's damages expert Mr. Walter
Bratic in arriving at an alleged reasonable royalty range.  For each proxy product, Dr. Schaefer
relies solely on a list of features on the product website or download page as the basis for
apportionment. *Id.* at ¶¶ 460, 464. Without providing *any* technical details of the products or
explaining the functionality of each feature, Dr. Schaefer opines on an apportionment by
assigning a technical weight to each feature as an indication of its "technical novelty." Aside
from a brief, unsupported explanation as to why some features are given more weight as
compared to others, Dr. Schaefer does not explain what principles and methods he applied to
reach his conclusions. Similarly, Dr. Schaefer assigns a percentage of each feature that is
"attributable to the Asserted Patents" without providing any comparison between the feature and
any claim of the Asserted Patents.

In Dr. Schaefer's expert report on infringement, he also opines on indirect infringement.
Dr. Schaefer simply concluded that based on the evidence he reviewed, "it is my opinion that LG
knew or should have known that users of its Android and Windows products infringed the
Asserted Claims." Ex. 1 at ¶ 455. Additionally, in Dr. Schaefer's rebuttal report on invalidity, he
opined on the commercial success of the invention without providing any evidence to show
"commercial success" or explaining how much of the alleged commercial success is attributable
to the practice of the invention. Ex. 5 at ¶¶ 234-240.

## III.   LEGAL STANDARDS

An expert must be qualified "by knowledge, skill, experience, training, or education," the

testimony itself must "assist the trier of fact to understand the evidence or to determine a fact in issue" and be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 580 (1993). The Rules of Evidence—especially Rule 702 "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.*, 509 U.S. at 597.

Factors that bear on the inquiry into the reliability of expert testimony "include whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Sims v. Kia Motors of Amer, Inc.*, 839 F.3d 393, 400 & n.17 (5th Cir. 2016)*.* The party proffering the expert bears the burden of establishing the admissibility of the expert's testimony and of persuading the court to allow the expert to testify. *Daubert*, 509 U.S. at 592 n.10; *see also Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 387 (5th Cir. 2010).

## IV.   ARGUMENT

### A.   Dr. Schaefer's Opinions on Apportionment Should be Excluded.

Dr. Schaefer's apportionment opinions are not the product of reliable principles and methods. Instead, they are based on speculation, assumptions, and arbitrary methodology, and therefore must be excluded.

#### 1.   Apportionment of Front Door Software Product

In his opening report, Dr. Schaefer purported to perform an apportionment for the Front Door Software product by determining the "technical contribution of each of the features" and the "percentage of that feature attributed to the Patents."

3

| Feature | Technical Novelty | Amount Attributable to Patents | Total Percentage |
|---|---|---|---|
| Ownership Info on Lock Screen | 10% | 100% | 10% |
| Good Samaritan/Security Alert | 10% | 100% | 10% |
| Stolen Alert Display | 10% | 100% | 10% |
| Remote Lockdown | 10% | 0% | 0% |
| Start-Up Audible Prevention Alert | 5% | 0% | 0% |
| Yell at Thief! Add Audio to Stolen Message | 5% | 0% | 0% |
| GeoLocation Tracking | 10% | 0% | 0% |
| Message & Alert Large Groups | 20% | 100% | 20% |
| Discourage crime on campus | 0% | 0% | 0% |
| One-to-Many Management of Devices | 20% | 100% | 20% |
| Free iPhone/Android App | 0% | 0% | 0% |
|  | 100% |  | 70% |

Ex. 1 at ¶ 461. Dr. Schaefer's analysis, however, is fatally flawed from start to finish and must be excluded.

As an initial matter, Dr. Schaefer determined the functionality of the Front Door Software product based entirely on marketing materials from the Front Door Software website.



4

Ex. 1 at ¶ 460; Ex. 2 at 108:12- 17 ("**Q.** What documents did you look at to determine what features were provided in Front Door Software products? **A.** . . . I looked at the Front Door Software website and the descriptions thereof."), 110:8-14 (" **Q.** Other than these pages that you didn't list, is there anything else that you didn't list that you relied on for your apportionment opinion? . . . **A.** Not that I can think of.").

Dr. Schaefer admitted that his understanding of the Front Door Software product (which is still on the market) was not based on his actual operation of the product:

> **Q.** Did you actually use that feature of the software?
> **A.** No.
> **Q.** Were you provided with a working copy of the Front Door Software product?
> **A.** No.
> **Q.** Did you ask to be provided with a copy, a working copy of the Front Door Software product?
> **A.** No.

Ex. 2 at 124:5-15; *see also id.* at 128:23-129:10. Instead, Dr. Schaefer appears to have largely speculated on the functionality of each feature based on its name. *See, e.g., id.* at 123:19-124:1 ("[**Q.**]. . . Let's start with the Ownership Info on Lock Screen . . . What does this feature do? **A.** I think it does exactly what it says. It displays the ownership information on the lock screen."), 131:6-14 ("**Q.** Okay. Stolen Alert Display, what is that? **A.** . . .my impression was that it was an alert that the device is stolen. . . . it's almost self-explanatory from the title that's in there. It's a stolen alert display."). Indeed, for one of the listed features – the Free iPhone/Android App – Dr. Schaefer simply assumed, without any basis, that it did not include any additional functionality:

> **Q.** In your report you state: The Free iPhone/Android App is more marketing than technical contribution as the remaining features describe the operation of the application. . . . Did you analyze or study Front Door Software's iPhone/Android app?
> **A.** No.

**Q.** How did you determine that the app has no additional features beyond those listed in the table at paragraph 460?
**A.** I assumed it was talking about the features that are listed below.

*Id.* at 136:12-25.

Dr. Schaefer does not provide any explanation for not reviewing other available evidence. He does not explain why he was not able to get a working copy of this product despite the fact that it is currently being licensed by a company of which Plaintiff is the majority shareholder. Ex.3 at No. 23. Nor does Dr. Schaefer explain why he failed to consider any of the number of documents produced by Plaintiff and Front Door Software describing the various features of the product. *See* Ex. 4 at ¶¶ 278 n.296, 286 n.302-304, 287 n.305, 288 n.306, 291 n.308. Dr. Schaefer's reliance on materials currently available on the Front Door website is even more unreliable in light of his failure to consider documents that could have and were provided by his client. In short, Dr. Schaefer's apportionment analysis was fatally flawed from the start.

Second, Dr. Schaefer's determination for the "Technical Novelty"[1] of each feature lacks any reasonable methodology whatsoever, and is based solely on his personal "experience" with "modern APIs." Ex. 2 at 111:6-9 ("**A.** For the technical novelty, what I did is I tried to look at sort of how difficult from a technical standpoint it would be to implement that particular feature."), 113:5-7 ("**A.** So for each of these different categories, what I did is I relied on my own experience in terms of implementing these things."), 119:3-5 ("**Q.** . . . [H]ow did you transform that into a numerical value? **A.** Well, it has to add up to 100%."), 116:15-23 ("**Q.** Have you published any papers using this methodology of determining technical novelty for a product? . . .

---

[1] Aside from its name, Dr. Schaefer's "Technical Novelty" rating has nothing to do with a feature's novelty. Ex. 2 at 112:10-13 ("**Q.** And it -- is it correct that [technical novelty] does not relate to whether someone else had built them before the priority date of the asserted claims? **A.** No, it's not related to that.).

**A.** No."). Dr. Schaefer further admitted that, while other objective methodologies existed for determining technical difficulty, he did not undertake such analysis. *Id.* at 121:13-16 ("**Q.** Did you review any materials regarding what it cost to develop the Front Door Software product? **A.** No, I did not."), 122:2-6 ("**Q.** Did you review any materials regarding the actual time it took to develop any of these features for the Front Door Software product? **A.** . . . No."). Merely relying on one's own experience as an expert is not an acceptable methodology. *See BMC Software Inc. v. ServiceNow Inc.*, No. 2:14-CV-903-JRG, 2016 WL 379602, at *2 (E.D. Tex. Feb. 1, 2016) (striking opinions "based on [expert's] personal experiences" and "not based on reliable principles and methods that can be accurately reproduced, examined, and challenged").

Dr. Schaefer's "Technical Novelty" rating is also deficient because it focuses myopically on implementation difficulty and fails to take into account the usefulness or desirability of a feature:

> **Q.** Are you aware that Front Door Software provided a free version of its product that included all of the features in your chart except for the Geolocation Tracking feature?
> **A.** I didn't see a free version of Front Door Software.
> . . .
> **Q.** And are you aware that they charged $30 for a three-year subscription for the geolocation feature?
> **A.** I -- I don't know. I looked at the Front Door website as it exists today. I don't know what you're describing.

Ex. 2 at 134:17-135:5; *see also id.* at 121:6-10 ("**Q.** Is it -- is it your opinion that the value of a feature lies purely in how difficult it is to implement from a technical standpoint? **A.** I don't make any comments about value of features here.")

In short, Dr. Schaefer's conclusory opinions on "technical novelty" are barely supported by any analysis and are certainly not based on any theory or technique that "(1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential

rate of error or standards controlling its operation; [or] (4) is generally accepted in the relevant scientific community." *See Sims*, 839 F.3d at 400 n.17.

Finally, Dr. Schaefer used the wrong legal standard to determine his "Amount Attributable to Patents" percentages. The Federal Circuit has held that in an apportionment analysis, "the invention to be valued is only the practicing of the entirety of [the asserted claims], including all limitations." *Sound View Innovations, LLC v. Hulu, LLC*, 33 F.4th 1326, 1338 (Fed. Cir. 2022). However, during deposition, Dr. Schaefer admitted that he concluded that a feature was "covered" by the patent if it met a single claim limitation. Ex. 2 at 123:15-17 ("**A.** I mean if it was part of the claims, I would say that it would be attributable to the patent."); 127:22-128:2 ("**Q.** At paragraph 463 you say: This feature, is, quote, covered by the patents. What do you mean by that? **A.** In this case, I mapped it onto the display of return/recovery information on or before the lock screen."). Dr. Schaefer's standard is grossly misguided, since prior art products that do not practice the entirety any of the claims in a patent would be 100% "Attributable to Patents," as long as it met a single limitation, as Dr. Schaefer concedes:

> **Q.** Is it your opinion that this feature, the Ownership Info on Lock Screen by itself practices the patents-in-suit?
> **A.** I don't see how just this feature could practice the patents-in-suit because there's multiple limitations.

Ex. 2 at 128:3-8.

Indeed, Dr. Schaefer's incorrect standard leads to the absurd result that four different features map to the same claim limitation, thereby grossly inflating its "value":

- **Ownership Info on Lock Screen**: "**A.** In this case, I mapped it onto the display of return/recovery information on or before the lock screen." *Id.* at 127:25-128:2.

- **Good Samaritan/Security Alert**: "**A.** . . . [I]t could be the display of the return/recovery information or it could also be a warning message." *Id.* at 130:24-25.

- **Stolen Alert Display**: "**A**. . . . The stolen alert I mapped on to the warning message that was there before. We talked about how the previous could actually be part of the display of return/recovery information as well." *Id.* at 132:4-7.

- **Message and alert large groups**: "**A**. So I was mapping that to the display of the ownership information or potentially even the warning message in this case." *Id.* at 142:5-7.

For the reasons set forth above, Dr. Schaefer's apportionment analysis for the Front Door Software product is deficient in every respect and must be excluded.

## 2. Apportionment for Third-Party Phone Found Application

In his opening report, Dr. Schaefer purported to perform an apportionment for the third-party Phone Found app,[2] again by determining the "technical contribution of each of the features" and the "percentage of that feature attributed to the Patents."

| | Technical Apportionment | Amount Attributed to Patents |
|---|---|---|
| Save phone number and email address | 15% | 100% |
| Call, send email, send SMS | 20% | 90% |
| Predefined email text, can be changed | 5% | 100% |
| Send GPS coordinates (eMail, SMS) | 20% | 0% |
| Today Widget with Phone number and eMail | 40% | 100% |

---

[2] Dr. Schaefer admitted that Plaintiff's damages expert, Walter Bratic, asked him to analyze the Phone Found app, and that he did not look at any other third-party app. Ex. 2 at 137:21-138:1 ("**Q.** Who asked you to give an opinion on Phone Found? **A.** I -- I think the request actually came from Walter's team."), 138:11-13 ("**Q.** Were you asked to look at any other third-party applications? **A.** No."). In its concurrently filed motion regarding Dr. Bratic's testimony, Defendant challenges use of this app as an indicator of the value of the Asserted Patents. To the extent that the Court excludes Mr. Bratic's use of the Phone Found app, Dr. Schaefer should also be excluded from testifying about it as it would not be helpful to the jury. Fed. R. Evid. 702.

Ex. 1 at ¶ 465. Dr. Schaefer's apportionment analysis for the Phone Found app suffers from the same fatal flaws as his apportionment analysis for the Front Door Software product.

First, instead of downloading and testing the features of the app, which is still available on the Apple App Store, Dr. Schaefer based his understanding of the Phone Found app's functionality entirely on website marketing materials:

> **Q.** What documents did you look at to determine what the features were of the Phone Found app?
> **A.** For the Phone Found app, I looked at the website where it described the list of features. It had screenshots of the program itself. Yeah.
> . . .
> **Q.** Did you actually download a copy of that app and use it?
> **A.** I didn't download a copy of the app . . . .

Ex. 2 at 139:25-140:11. As a result, Dr. Schafer simply made unfounded assumptions about each feature's functionality. *Id.* at 141:2-8 ("**Q.** . . . For any -- any and all of the features for Phone Found, you didn't actually test the product, right? . . . **A.** I did not but the descriptions are pretty self-explanatory here.").

Second, despite differences in the column heading names, Dr. Schaefer used the same deficient methodology to determine the "technical contribution" and "attributable to patent" values for each Phone Found feature as he did to determine the values for the Front Door Software product:

> **Q.** Okay. So I'm looking at the table on whatever, paragraph 461 versus the table in paragraph 465. You have different – different columns and different names. Why did you do that?
> **A.** I guess it was an oversight. . . .
> **Q.** Did you use the same methodology to arrive at the numbers in these tables?
> **A.** Yes.

Ex. 2 at 139:13-24. The flaws in Dr. Schaefer's "attributable to the patent" standard is even more evident when applied to the Phone Found app, ***which he admits does not even practice the asserted patents***:

10

**Q.** Did you determine that the Phone Found application practices the asserted claims?

**A.** I think I looked at the different features that it had and the features that would be attributable to the asserted claims. I didn't say that it necessarily had all of the different features.

**Q.** Does it?

**A.** It's missing one.

**Q.** And that one that's missing I believe is it does not allow an owner to remotely change contact information; is that correct?

**A.** Does not allow the owner to remotely initiate or change return or recovery information.

Ex. 2 at 138:14-139:2.

Accordingly, Dr. Schaefer's apportionment analysis for the Phone Found app is also deficient in every respect and must be excluded.

### 3. Dr. Schaefer's Opinions on Apportionment Should Also Be Excluded Because They Will Not Be "Helpful" to the Jury.

Because Dr. Schaefer's opinions on apportionment are without foundation, they will not help the trier of fact to understand the evidence or determine a fact in issue. As discussed, no technical details are provided about the comparable products, and there is no explanation as to why they are comparable. Moreover, Dr. Schaefer fails to explain why the features listed on the product website and download page for marketing purpose are appropriate as the basis for the apportionment, especially in light of other, more detailed evidence being available for review. Because the whole analysis is completely subjective and arbitrary, it will not help the jurors to understand any issue or determine any facts, but only cause confusion.

### B. Portions of Dr. Schaefer's "Opinions" on Indirect Infringement Should Be Excluded.

To be qualified as an expert, one must have "specialized knowledge" in the area of testimony. Fed. R. Evid. 702. Expert witnesses are not permitted to testify regarding intent, motive, or state of mind "because issues of motive or intent must be assessed by the jury."

11

*Dickson v. Bosworth Co., Ltd.*, No. MO:21-cv-009, 2022 WL 1523490, at *4 (W.D. Tex. May 13, 2022). Thus, expert opinions as to a defendant's subjective intent as it relates to indirect infringement are improper as "the question of intent is a classic jury question and not one for the experts." *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00070, 2020 WL 4288350, at *2 (E.D. Tex. July 27, 2020) (internal quotations omitted). Additionally, a party cannot use an expert as a mouthpiece to improperly lend credence to fact evidence and testimony that the jury independently has the ability to understand. *See Rodriquez v. Transportes de Carga FEMA, S.A. de C.V.*, No. 5:18-cv-114, 2020 WL 6938330, at *6 (S.D. Tex. July 28, 2020); *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-cv-512, 2017 WL 1319553, at *9-10 (E.D. Tex. Apr. 10, 2017). "Thus, expert testimony is of little value, and should not be admitted, to the extent it merely synthesizes fact evidence into a narrative form." *Escalante v. Creekside Logistics, LLC*, No. 5:18-cv-116, 2019 WL 9135758, at *8 (W.D. Tex. Feb. 12, 2019). The portions of Dr. Schaefer's testimony on indirect infringement cited below are outside of his specialized knowledge, opine on Defendant's state of mind, and are mere recitations of fact evidence and testimony. Thus, they should be excluded.

Dr. Schaefer opines that he has "reviewed evidence showing that LG had knowledge of the Asserted Patents," identifying emails from Tangible IP to LG employees and merely noting information that will be clear to the jury from review of those documents. Ex. 1 at ¶ 450. Dr. Schaefer then opines that "LG took affirmative actions to induce the infringement" and generically lists various actions taken by LG that will be presented to the jury for the jury's determination regarding whether such actions are sufficient to show inducement. *Id.* at ¶ 451. Dr. Schaefer also identifies instructions that LG allegedly provided to customers regarding how to use Android Find My Device by simply reproducing the evidence that will be provided to the

jury. *Id.* at ¶¶ 452-454. Notably, Dr. Schaefer does *not* provide an opinion that the information provided in these instructions demonstrated to a user how to infringe the Asserted Patents. Finally, Dr. Schaefer provides opinions as to ultimate conclusions that are to be made by the jury – that the Accused Products indirectly infringe the Asserted Claims, that LG knew or should have known[3] that users of its products infringed the Asserted Claims, and that LG had knowledge of both the Asserted Patents and infringement of the Asserted Claims. *Id.* at ¶¶ 448, 455, 456.

None of this testimony is within Dr. Schaefer's "specialized knowledge" as required under Rule 702. Instead, in these passages, Dr. Schaefer does nothing more than opine on LG's alleged intent and knowledge, which are both squarely within the province of the jury, and use his position as an expert to improperly summarize facts that the jury can glean on its own from a review of documents and testimony without connecting those facts to any opinion that is based upon his "specialized knowledge." Thus, these opinions should be excluded.

**C.    Dr. Schaefer's Opinions on Commercial Success of the Invention Should Also Be Excluded.**

In his rebuttal report, Dr. Schaefer opined on the commercial success of the invention by determining the commercial success of the allegedly infringing LG products. Ex. 5 at ¶¶ 234-240. However, these opinions are completely baseless and should be excluded. To begin with, Dr. Schaefer's analysis flies in the face of the Federal Circuit's long-held precedent that "evidence related solely to the number of units sold provides a very weak showing of commercial success, if any." *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996). Dr. Schaefer

---

[3] Dr. Schaefer also applied the wrong legal standard for induced infringement as the law requires a showing of "actual knowledge." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Dr. Schaefer's use of the wrong legal standard is an independent reason for exclusion of this testimony.

simply relies on the total number of the accused products sold during the relevant time period, total revenue and a gross profit margin as evidence that "devices implementing the invention have been commercially successful" without providing any further analysis. *Id*. at ¶ 237. Dr. Schaefer does not differentiate these numbers between the accused laptops, smartphones, or tablets. He does not compare these numbers with that of other comparable products on the market during the same period, nor does he compare these numbers with LG's own numbers during previous years. *See In re Applied Materials, Inc.*, 692 F.3d 1289, 1300 (Fed. Cir. 2012) ("[T]he more probative evidence of commercial success relates to whether the sales represent a substantial quantity in the market.") (internal quotations and citations omitted). Strikingly, he does not know the actual profit margin of these accused products. Ex. 2 at 393:2-5 ("**Q.** Do you know the profit margins for LG's smartphone business? **A.** I don't know that I have the smartphone business."). Notably, Dr. Schaefer completely ignores LG's testimony that it "decided to exit the smartphone market in July 2021" because it ███████████████████ ████████████████████████████████████████████████████ Ex. 6 at 157:1-6. Dr. Schaefer cannot explain how this testimony squares with his determination that the LG products were sufficiently commercially successful to support a finding of secondary considerations of nonobviousness. Clearly, Dr. Schaefer did not apply the correct standard in determining whether the accused LG products are "commercially successful," and his opinion should be struck on that basis.

Setting aside whether the sales number alone is sufficient to show "commercial success," Dr. Schaefer also fails to show how much of the alleged commercial success is attributable to the practice of the invention, which is an important independent basis for excluding this opinion. He simply "believe[s that] there is a nexus between the Accused Products' commercial success and

their practice of the Asserted Patents[]" without providing any evidence to support this conclusion. Ex. 5 at ¶ 240. Indeed, at his deposition, Dr. Schaefer acknowledges that the accused LG devices "can do a lot of different things," and "[l]ots of things in Windows contribute to its success." Ex. 2 at 392:3, 398:25-399:1. Yet, he does not know how much that revenue is attributable to the claimed invention versus those other features, stating that would be the province of the damages expert. *Id*. at 251:9-13 ("**Q.** You do not know how much of that revenue is attributable to the claimed invention versus those other features, correct? **A.** Oh, that's not really my thing. That's a damages question."). However, Plaintiff's damages expert definitively stated that he does not hold the opinion that the allegedly infringing Find My Device application features drive demand for the accused LG devices. Ex. 7 at 101:2-21. Thus, Dr. Schaefer has not provided *any* basis for his "belief" that there is a nexus between the accused LG devices and the alleged commercial success of those products, and his opinion should be excluded on that basis as well. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) ("[I]f the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant.").

## V.     CONCLUSION

For all these reasons, the Court should exclude Dr. Schaefer's opinions on apportionment of infringing and non-infringing functionalities of comparable products.

Dated: February 6, 2023

Respectfully submitted,

*/s/ Celine J. Crowson*

**HOGAN LOVELLS US LLP**
Celine J. Crowson (Admitted *Pro Hac Vice*)
555 Thirteenth St, NW
Washington, DC 20004
Celine.Crowson@hoganlovells.com
(202) 637-5703 (Telephone)
(202) 637-5910 (Facsimile)

Gurtej Singh (CA Bar No. 286547)
(Admitted in this District)
855 Main St Suite 200
Redwood City, CA 94063
Tej.Singh@hoganlovells.com
(650) 463-4000 (Telephone)
(650) 463-4199 (Facsimile)

**FAEGRE DRINKER BIDDLE & REATH, LLP**
Kirstin Stoll-DeBell (Admitted *Pro Hac Vice*)
1144 15th Street, Suite 3400
Kirstin.StollDeBell@faegredrinker.com
(303) 607-3500 (Telephone)
(303) 607-3600 (Facsimile)

Carrie A. Beyer (Admitted *Pro Hac Vice*)
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Carrie.Beyer@faegredrinker.com
(312) 569-1000 (Telephone)
(312) 569-3000 (Facsimile)

Brianna L. Silverstein (Admitted *Pro Hac Vice*)
1500 K Street NW, Suite 1100
Washington, DC 20005
Brianna.Silverstein@faegredrinker.com
(202) 842-8800 (Telephone)
(202) 842-8465 (Facsimile)

Kirsten L. Elfstrand (Admitted *Pro Hac Vice*)
1144 15th Street, Suite 3400
Denver, CO 280202
Kirsten.Elfstrand@faegredrinker.com

16

(612) 766-7000 (Telephone)
(612) 766-1600 (Facsimile)

**KELLY HART & HALLMAN LLP**
J. Stephen Ravel
Texas State Bar No. 16584975
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

**POTTER MINTON PC**
Michael E. Jones
Shaun William Hassett
110 N College, Suite 500
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 531-3939
Email: mikejones@ptterminton.com
Email: shaunhassett@potterminton.com

*Counsel for Defendant LG Electronics Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record via electronic mail on February 6, 2023.

*/s/   Celine J. Crowson*
Celine J. Crowson