## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| CAROLYN W. HAFEMAN, an Individual<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS INC.,<br><br>Defendant. | **CIVIL ACTION NO.:**<br>**6:21-cv-00696-ADA-DTG**<br><br><br>**DEMAND FOR JURY TRIAL**<br><br>██████████<br><br>**PUBLIC VERSION** |

## LG ELECTRONICS INC.'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF WALTER BRATIC AND JUSTIN R. BLOK

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD......................................................................................... 2

III.    BACKGROUND .................................................................................................. 3

        A.      Summary of Opinions ........................................................................... 3

        B.      FDSC Security Product......................................................................... 4

        C.      "Phone Found" Third Party Application................................................ 4

        D.      Alleged Incremental Value and Deficient Apportionment ..................... 6

        E.      Remaining Factors and Final Incremental Benefit Analysis ................. 7

IV.     ARGUMENT ...................................................................................................... 9

        A.      Mr. Bratic's Reliance on the "Phone Found" Application is Not Based on
                Any Scientifically Valid Methodology and Relies on Flawed Assumptions ........ 9

        B.      Mr. Bratic's Incremental Benefit Analysis Should Be Excluded Because it
                is Based on Dr. Schaefer's Inadmissible Apportionment Opinion ..................... 11

        C.      Mr. Bratic's Incremental Benefit Split is Not Sufficiently Tied to the Facts
                of The Case .......................................................................................... 13

        D.      Mr. Bratic's Reliance on Defendant's Total Profits from the Accused
                Products is Not Sufficiently Tied to the Facts of the Case ................... 14

        E.      Mr. Bratic's Royalty is Inapplicable to a Finding of Infringement Based on
                Use Because the Royalty is Tied to Sales of the Accused Products.................. 15

        F.      Mr. Bratic's Remaining Testimony Should Be Excluded Because it is Not
                Helpful to the Jury ............................................................................... 16

V.      CONCLUSION.................................................................................................. 17

# **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Cioffieta v. Google, Inc.*,
No. 2:13-cv-00103-JRG-RSP, 2017 WL 77395 (E.D. Tex. Jan. 9, 2017) .............................15

*Curtis v. M&S Petroleum, Inc.*,
174 F.3d 661 (5th Cir. 1999) .................................................................................................9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).................................................................................................................2

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
No. C11-5503 BHS, 2015 WL 12670404 (W.D. Wash. Mar. 9, 2015)..................................16

*Knight v. Kirby Inland Marine, Inc.*,
482 F.3d 347 (5th Cir. 2007) ...............................................................................................12

*MV3 Partners, LLC v. Roku, Inc.*,
No. W-18-cv-308, Dkt. 289 (W.D. Tex. June 4, 2020) ........................................................10

*NetFuel, Inc. v. Cisco Sys. Inc.*,
No. 5:18-cv-2352, 2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) ........................................12

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
30 F.4th 1339 (Fed. Cir. 2022) ......................................................................................15, 16

*Paz v. Brush Eng'd Materials, Inc.*,
555 F.3d 383 (5th Cir. 2009) .................................................................................................2

*Ravgen, Inc. v. Lab. Corp. of Amer. Holdings*,
No. 6:20-cv-00969-ADA, Dkt. 226 (W.D. Tex. Oct. 3, 2022)..............................................16

*Sims v. Kia Motors of Am., Inc.*,
839 F.3d 393 (5th Cir. 2016) ..............................................................................................2, 9

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)..........................................................................................2, 15

*Vaporstream, Inc. v. Snap Inc.*,
No. 2:17-cv-00220-MLH, 2020 WL 2543814 (C.D. Cal. Jan. 10, 2020)..............................14

*Virnetx, Inc. v. Cisco Sys. Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)...........................................................................................14

**Statutes, Rules & Regulations**

Fed. R. Evid. 403 .................................................................................................................15

Fed. R. Evid. 702 ................................................................................................... *passim*

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | Expert Report of Walter Bratic and Justin R. Blok (Dec. 14, 2022) |
| B | Rebuttal Expert Report of Lauren R. Kindler (Jan. 20, 2023) |
| C | Expert Report of John Black, PhD. Re: Non-Infringement (Jan. 20, 2023) |
| D | *Ravgen, Inc. v. Lab. Corp. of Amer. Holdings*, No. 6:20-cv-00969-ADA, Dkt. 226 (W.D. Tex. Oct. 3, 2022) |
| E | Excerpts from Deposition of Walter Bratic (Jan. 24, 2023) |
| F | Excerpts from *MV3 Partners, LLC v. Roku, Inc.*, No. W-18-cv-308, Dkt. 289 (June 4, 2020) |
| G | Excerpts from Deposition of Scott Schaefer, Ph.D. (Jan. 25, 2023) |

## I.   INTRODUCTION

Mr. Bratic's[1] opinions should be excluded because they are unreliable, based upon unfound assumptions, and are not sufficiently tied to the facts of the case. First, Mr. Bratic relies upon a third-party application as an alleged comparable in order to determine the incremental benefit to Defendant for use of the accused functionality. Not only is this not a scientifically viable methodology, but the facts surrounding the third-party application undercut any valuation based on this product as applied to the accused functionality.

Second, Mr. Bratic relies exclusively on the flawed and unreliable apportionment by Plaintiff's technical expert of the accused functionalities in Plaintiff's own product and the third-party application in order to determine the incremental value of the accused functionalities. Because these underlying apportionment opinions are unreliable, so too are Mr. Bratic's opinions that rely upon those opinions.

Third, Mr. Bratic attempts to calculate an incremental benefit split by analyzing overall return on investment capital of Defendant that is completely divorced from the accused functionalities. Thus, these opinions are not sufficiently tied to the facts of the case and should be excluded.

Fourth, Mr. Bratic improperly relies upon the overall profit percentage and amount attributed to the Accused Products without providing any apportionment for the accused functionalities. This is not sufficiently tied to the facts of the case and extremely prejudicial, and should be excluded.

---

[1] While Mr. Bratic and Mr. Blok both signed the expert report (Ex. A), Plaintiff's counsel has stated that Mr. Bratic will be the testifying expert in this case so Defendant will refer to the opinions throughout this Motion as those of Mr. Bratic. However, the bases for excluding the damages opinion apply equally to Mr. Bratic and Mr. Blok. Thus, if the Court grants this Motion, it should apply equally to Mr. Bratic and Mr. Blok.

Fifth, Mr. Bratic's reasonable royalty calculation based upon sales of Defendant's products as applied to the method claims is contrary to law, and should be excluded as such.

Finally, because the entirety of Mr. Bratic's damages opinion is based on the unreliable opinions discussed above, the remainder of his opinions would be unhelpful to the jury and therefore should be excluded.

## II.   LEGAL STANDARD

An expert must be qualified "by knowledge, skill, experience, training, or education," the testimony itself must "help the trier of fact to understand the evidence or to determine a fact in issue" and be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Factors relevant to whether Rule 702 is satisfied "include whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 & n.17 (5th Cir. 2016). The party proffering the expert has the burden of satisfying this standard. *Paz v. Brush Eng'd Materials, Inc.*, 555 F.3d 383, 387 (5th Cir. 2009).

To carry the burden of proving damages, the patentee must sufficiently tie the expert testimony to the facts of the case. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (citing *Daubert*, 509 U.S. at 591).

## III.    BACKGROUND

### A.  Summary of Opinions

Plaintiff retained Mr. Bratic to determine the amount of damages owed to Plaintiff as a result of the alleged infringement of the Patents-in-Suit by LG Electronics Inc.'s ("LG" or "Defendant") manufacturing and selling the Accused Products. Ex. A ¶¶ 7-8. Specifically, Plaintiff asserts that the "Find My Device" application in the Accused Products practices the Patents-in-Suit through the ability "to remotely lock and display a message with return information on the device" "without a third-party logging into the device to retrieve the return information." *Id.* ¶¶ 27-28. Mr. Bratic asserts that the hypothetical negotiation date is the date of issuance of the '287 patent, February 2018, though he notes that if it is found that the date of first infringement is the date of issuance of either of the two other patents (June 18, 2019 or September 29, 2020), this would have no effect on his underlying opinions. *Id.* ¶ 41 & n.60.

Mr. Bratic arrived at a reasonable royalty rate "of no less than $1.00 per Accused Product sold by LG." *Id.* ¶ 13. Using this royalty rate, he calculated total damages owed to Plaintiff for the time frame of February 13, 2018 through September 2022 to be ███████. *Id.* ¶ 14. The damages period ended on November 25, 2022, the date the Patents-in-Suit expired. *Id.* ¶ 14 n.10.[2]

To arrive at his royalty rate, Mr. Bratic "estimated the value of the features and functionalities of the asserted claims of the Patents-in-Suit based on: (1) sales of the [Front Door Security Corporation ('FDSC')] Security Product [sold by or approved for sale by Plaintiff]; and (2) a third-party application that encompasses similar functionality taught by the Patents-in-Suit." *Id.* ¶ 87.

---

[2] LG has since provided the remaining sales information for October and November 2022.

## B. FDSC Security Product

In 2007, Plaintiff began selling an FDSC Security Product that incorporated features and functionalities of the Patents-in-Suit. *Id.* ¶ 88. Around 2016, Mr. Bratic states that Plaintiff transferred the FDSC website and customer base to Andrew Eiss for $0, who decreased the price of the personal license package to $14.95 per year. *Id.* ¶ 90; Ex. B ¶ 71(d). Mr. Bratic reviewed sales and license information related to FDSC's custom plans from September 2017 through December 2022, which show that FDSC "sold approximately 28,125 licenses for an annual contract amount totaling $44,677 (or an average license fee of $1.59 per download or seat)." Ex. A ¶ 91. Mr. Bratic admitted that he is unaware of whether FDSC ever made a profit selling its software, he has not "seen any financial statements for the current Front Door Software company from 2017 forward," and  despite the fact that Plaintiff continues to be a majority shareholder in FDSC, he could have requested that information but chose not to. Ex. E at 44:10-45:10, 126:12-127:25.

## C. "Phone Found" Third Party Application

Mr. Bratic states that based on his own independent research and interviews of [Plaintiff's technical expert] Dr. Schaefer, he identified "an application available in the market that provides functionality similar to the teachings of the Patents-in-Suit," which "provides an indication of value for the features and functionalities taught by the Patents-in-Suit." Ex. A ¶ 94. He identifies a third-party application called "Phone Found" that was available on the Apple app store for $0.99 in October 2017. *Id.* ¶ 95. Mr. Bratic states that the "Phone Found" application offers several features, such as save phone number and email address; call, send email, send SMS; predefined email text can be changed; send GPS coordinates (email, SMS); and "Today widget with phone number and email," but notably it "does not include a feature involving remotely

4

initiating/changing return/recovery information, which according to Dr. Schaefer, is important and taught by the asserted claims of the Patents-in-Suit." *Id.* ¶¶ 96-98.

Mr. Bratic's analysis of the "Phone Found" application does not consider many relevant facts. As an initial matter, Mr. Bratic fails to provide any details as to how the "Phone Found" application was identified. In fact, Mr. Bratic admitted that he does not know how the "Phone Found" application was selected . Ex. E at 23:6-13, 26:23-28:3. Specifically, Mr. Bratic is unsure of whether his staff member who found the application reviewed any websites other than the Apple app store or whether his staff reviewed and discarded any other potentially comparable apps, such as the widely-used free apps that Defendant's expert was able to identify via a simple Internet search. *Id.* 26:14-27:5; Ex. B ¶ 146.

Additionally, Mr. Bratic fails to provide any information regarding the number of users who have downloaded the "Phone Found" application, and he admits that he has no idea whether anyone ever actually downloaded the "Phone Found" application or ever actually paid $0.99 for the "Phone Found" application, which has only a single review with a rating of one-star. Ex. E at 144:21-145:4, 156:5-11; Ex. B ¶ 144. Mr. Bratic also fails to acknowledge in his report Apple's pricing policy, commission policy, or the other costs borne by the "Phone Found" application developer. Mr. Bratic admitted at his deposition that at the time the "Phone Found" application was released, Apple had a policy that set $0.99 as the lowest amount that could be charged for an application, that he "would imagine" that there is a commission but that he is unaware of the amount of the commission, and that he does not have any information about the costs associated with development of the "Phone Found" application. Ex. E at 146:4-147:19; *see also* Ex. B ¶¶ 145, 152 (noting from publicly-available article that Apple had a 30% commission fee).

**D. Alleged Incremental Value and Deficient Apportionment**

Mr. Bratic concludes based on his review of FDSC's sales and the listed price for the "Phone Found" application that "the value of between \$0.99 and \$1.59 per download provides an estimate of the incremental benefit realized by LG for incorporating features and functionalities similar to those provided by the Patents-in-Suit in the Accused Products," and, without any support, states, "LG would be reluctant to forgo the ability to integrate the benefits provided by teachings of the Patents-in-Suit in its Accused Products." Ex. A ¶ 102.

Mr. Bratic acknowledges that both the FDSC Security Product and the "Phone Found" application include features that are not covered by the Patents-in-Suit, and then attempts to apportion for the value of the features that are covered by the Patents-in-Suit. *Id.* ¶ 115. For the FDSC Security Product, Mr. Bratic relies exclusively on Dr. Schaefer's review of the product to determine that "approximately 70% of the functionality and benefits provided [by] the FDSC Security Product are covered by the asserted claims of the Patents-in-Suit," and, thus, determined that "the incremental benefit realized by LG . . . to be at least \$1.11 per Accused Product sold."[3] *Id.* ¶¶ 117-118.

For the "Phone Found" application, Mr. Bratic also relies exclusively upon Dr. Schaefer's determination that "approximately 78.0% of the functionality and benefits provided in this application are similar and comparable to those provided by the asserted claims of the Patents-in-Suit," and, thus, determined that "the Phone Found application provides an indication of value for the features and functionalities provided by the asserted claims of the Patents-in-Suit of \$0.77 per

---

[3] \$1.59 x 70% = \$1.11.

download." *Id.* ¶¶ 120-121.[4] The "Phone Found" application does not include, however, the key element of Plaintiff's alleged invention – remotely initiating or changing recovery information. Using Dr. Schaefer's value from the FDSC Security Product, Mr. Bratic assumes without making any connection at all between the FDSC Security Product and the "Phone Found" application, that the value of that missing feature in the "Phone Found" application is $0.63. *Id.* ¶ 122. Instead of the lack of a key element reducing the value, Mr. Bratic opines that a $0.99 incremental benefit to LG based on the "Phone Found" application would be "conservative." *Id.*

Mr. Bratic admitted that he blindly relied upon Dr. Schaefer's apportionment analysis and he did not know the methodology used by Dr. Schaefer in determining the apportionment of either the FDSC Security Product or the "Phone Found" application. Ex. E at 31:11-23; 153:17-22. Notably, Dr. Schaefer testified that he never actually used either the FDSC Security Product or the "Phone Found" application. Ex. G at 124:5-15, 139:25-140:12.

Mr. Bratic concludes, "our analysis of the FDSC Security Product and the Phone Found application indicate that the incremental benefit LG realized from incorporating the features and functionalities provided by the asserted claims of the Patents-in-Suit in the Accused Product was no less than between $0.99 and $1.11 per Accused Product." Ex. A ¶ 123.

**E. Remaining Factors and Final Incremental Benefit Analysis**

Mr. Bratic determines that during the hypothetical negotiation the parties would have agreed to a per-unit royalty and that the parties would have considered a number of factors in addition to the value indicators discussed above, including that the Accused Products "generated an average gross profit of approximately ███ as of September 2022" and that "LG generated

---

[4] $.99 x 78% = $.77

gross profits of approximately ▮▮▮▮▮ on sales of the Accused Products during the damages period." *Id.* ¶¶ 125, 128-129. He then states, without any support, "It is our opinion that during negotiations, Ms. Hafeman and LG would have placed more weight on the FDSC Security Product as an indication of the incremental benefit LG realized from offering the features and functionalities of the asserted claims of the Patents-in-Suit in the Accused Products." *Id.* ¶ 132.

In an attempt to "determine the amount of the incremental benefit that Ms. Hafeman would have expected to receive as a royalty, and LG would be willing to forego, in exchange for a license to the Patents-in-Suit," Mr. Bratic uses a third-party resource to calculate LG's overall return on invested capital ("ROIC"), "which is a profitability ratio that measures the percentage return that a company earns on invested capital," finding that the weighted ROIC percentage from 2018 through 2021 was 4.6% and the ROIC in 2017, the year prior to the hypothetical negotiation, was 8.6%. *Id.* ¶¶ 135, 137, Ex. 9. He settles on using a "conservative" estimate of 10% ROIC for his analysis. *Id*. ¶ 137. Mr. Bratic uses this estimate despite admitting that the ROIC is the return on ***all*** of Defendant's investment capital, regardless of whether that capital has any connection to either the Accused Products (and the accused functionalities contained therein) or Defendant's intellectual property investments. Ex. E at 159:21-160:5, 160:15-20.

He then splits the incremental benefit 90%/10% between Plaintiff and Defendant, and ultimately determines that the reasonable royalty rate would be $1.00 per unit (90% of $1.11). Ex. A ¶¶ 138-140. Applying that rate to the units sold from February 2013 through September 2022, he concludes that Plaintiff is owed ▮▮▮▮▮▮. *Id.* ¶¶ 142-143.

## IV.    ARGUMENT

### A. Mr. Bratic's Reliance on the "Phone Found" Application is Not Based on Any Scientifically Valid Methodology and Relies on Flawed Assumptions

Mr. Bratic's reliance on the "Phone Found" application is unreasonable, has no nexus to the facts of the case, and should be excluded. Reliance on the "Phone Found" application – a third-party application that was not disclosed during fact discovery about which the parties have limited, if any, information – fails to meet the requirements under Rule 702 because the methodology is not based on any established or proven scientific approach. Further, reliance on this application is based on flawed assumptions, rendering the resulting opinion completely unreliable.

Mr. Bratic provides no citation or reference to any materials supporting his approach for relying on an unrelated third-party application arguably directed to similar technology as a proxy for a customary royalty rate for an analogous invention. *See* Ex. B ¶ 151. In fact, Mr. Bratic admitted that he does not know how the "Phone Found" application was identified as it was one of his staff members who found the application, and that he is unsure of whether any other potentially comparable apps were identified by this staff member or whether the staff member reviewed any websites other than the Apple app store in order to identify any potentially comparable apps. Ex. E at 23:6-15, 24:23-28:3. It therefore appears that Mr. Bratic's staff simply cherry-picked this app from among other apps, including free ones. *See* Ex. B ¶ 146 (identifying other widely-used free apps with similar functionality); Ex. C ¶ 291. Using this type of novel methodology calls into question the fairness and reliability of this approach as a whole, warranting exclusion. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) ("[D]etermin[ing] whether the proffered testimony is reliable, require[s] an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid."); *see also Sims*, 839 F.3d at 400

9

n.17 (relevant factor under Rule 702 is whether the methodology is generally accepted in the relevant scientific community); Ex. F 105:23-107:16, 110:1-113:1, 114:10-14 (this Court finding a similar third-party app approach as "not being based on scientifically valid methodology" in *MV3 Partners, LLC v. Roku, Inc.*, No. W-18-cv-308).

Not only is this approach unsupported by any scientifically valid basis, but it is also based on numerous flawed assumptions that render the approach unreliable. First, Mr. Bratic admits that the "Phone Found" application does not include an "important" feature of the asserted claims of the Patents-in-Suit – the ability to remotely initiate and change return/recovery information. Ex. A ¶ 98; Ex. B ¶ 149; Ex. E at 144:11-20, 157:21-158:11. His use of a third-party application that does not include this important feature is even more troubling given that a brief Internet search shows other phone applications that were available at the time of the hypothetical negotiation that did perform this vital functionality. Ex. C ¶ 291; *see also* Ex. B ¶ 146 (noting similar third-party applications that were offered for free). Mr. Bratic's failure to provide any reasoning for why he chose this app and not one of the other, free apps counsels for exclusion of this testimony. *See* Ex. F at 111:15-112:1, 114:10-14.

Further, despite the fact that Mr. Bratic stated that the "Phone Found" application is a "relevant data point" "[to] try[] to find out what consumers were willing to pay and what Apple was seeking as a price to make the found phone functionality available to customers," he has not made any showing that anyone ever actually downloaded the "Phone Found" application or ever actually paid $0.99 for the "Phone Found" application, which contains only a single review with a one-star rating. Ex. E at 144:21-145:6, 148:18-22, 156:3-11; Ex. B ¶ 144. He also failed to acknowledge that at the time the "Phone Found" application was released, Apple had a policy that set $0.99 as the lowest amount that could be charged for an application or that Apple recovered a

30% commission on downloads of the application. Ex. E at 146:4-147:19; Ex. B ¶¶ 145, 152 (noting from publicly-available article that Apple had a 30% commission fee). Mr. Bratic admitted at his deposition that he "would imagine" that there is a commission, but that he is unaware of the amount of the commission, and that he does not have any information about the costs associated with development of the "Phone Found" application. Ex. E at 146:4-147:19. Additionally, Mr. Bratic does not explain how the rate an end-user may have paid to download an application is correlated with the amount that a licensee, such as Defendant, would have paid for a bare license to the accused functionality. Ex. B ¶ 151. These flawed assumptions combined with the complete lack of nexus to this case and the lack of a scientifically valid methodology show that Mr. Bratic's use of the "Phone Found" application as a basis for the incremental value violates Rule 702 and should be excluded.

**B. Mr. Bratic's Incremental Benefit Analysis Should Be Excluded Because it is Based on Dr. Schaefer's Inadmissible Apportionment Opinion**

Mr. Bratic's incremental benefit analysis relies exclusively upon Dr. Schaefer's unreliable apportionment opinions. Specifically, Mr. Bratic's opinion that "the incremental benefit realized by LG, as measured by our analysis of the FDSC Security Product, from incorporating the features and functionalities taught by the asserted claims of the Patents-in-Suit in the Accused Products [is] at least $1.11 per Accused Product sold" is based solely on Dr. Schaefer's opinions regarding the apportionment of the features of the FDSC Security Product. Ex. A ¶¶ 117-118; Ex. E at 30:18-31:7, 31:11-18, 57:21-22, 59:5-8, 133:1-15. Similarly, Mr. Bratic's apportionment opinions that "the Phone Found application provides an indication of value of the features and functionalities provided by the asserted claims of the Patents-in-Suit of $0.77 per download," and "the value of

11

$0.99[5] likely provides a conservative estimate of the incremental benefit LG realizes, as measured by the Phone Found application, from incorporating the features and functionalities taught by the asserted claims of the Patents-in-Suit in the Accused Products" are based solely on Dr. Schaefer's opinions regarding the apportionment of the features of the "Phone Found" application. Ex. A ¶¶ 119-122; Ex. E at 31:8-10, 31:19-25, 142:21-143:13. Mr. Bratic admitted multiple times that he blindly followed Dr. Schaefer's apportionment without understanding Dr. Schaefer's methodology. Ex. E at 31:11-23; 153:17-22.

As discussed in detail in Defendant's concurrently-filed motion to exclude Dr. Schaefer's opinions, Dr. Schaefer's apportionment analyses regarding the FDSC Security Product and the "Phone Found" application are unreliable and should be excluded. Thus, Mr. Bratic's incremental benefit analysis based on Dr. Schaefer's unreliable opinions must similarly be excluded. *See Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) ("The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."); *see also NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-cv-2352, 2020 WL 1274985, at *6-10 & n.5 (N.D. Cal. Mar. 17, 2020) (excluding Mr. Bratic's apportionment opinions that were based on technical expert's unreliable opinions).

---

[5] Mr. Bratic's improper reliance on Dr. Schaefer's unreliable apportionment opinion is highlighted by the fact that Mr. Bratic uses the value Dr. Schaefer calculated as to the FDSC Security Product for the features that allegedly practice remote initiating and changing of return/recovery information in order to assign a value for these limitations in the "Phone Found" application, which Mr. Bratic admits does not include any features that practice these limitations. Ex. A ¶ 122.

12

### C. Mr. Bratic's Incremental Benefit Split is Not Sufficiently Tied to the Facts of The Case

Mr. Bratic's hypothetical negotiation incremental benefit split of 90% to Plaintiff and 10% to Defendants is not sufficiently tied to the facts of the case and should be excluded. As discussed above, Mr. Bratic bases the 90/10 split on Defendant's purported return on invested capital ("ROIC") from 2017 through 2021, which he obtained from a third-party database. Ex. A ¶¶ 135-138, Ex. 9. However, this ROIC calculation has absolutely no nexus to this case as it is the return on *all* of Defendant's investment capital, regardless of whether that capital has any connection to either the Accused Products (and the accused functionalities contained therein) or Defendant's intellectual property investments. Ex. E at 159:21-160:5, 160:15-20; Ex. B ¶ 164. As such, there is no connection between this third-party obtained number and the return that Defendant would have expected when it negotiated with Plaintiff for a bare patent license to the Patents-in-Suit.

Mr. Bratic's incremental benefit split is analogous to the incremental value analysis that another court in this District excluded for being insufficiently tied to the facts of the case. In *CliniComp International, Inc. v. Athenahealth, Inc.*, the damages expert performed an incremental-value analysis using an analyst report from Defendant that stated that the company averaged a 10% improvement in collections. No. 1:18-cv-00425-LY, 2020 WL 13111151, at *4 (W.D. Tex. Dec. 14, 2020). The damages expert then assumed this entire 10% increase was due to the allegedly infringing data analytics and determined that the incremental value was 10% of Defendant's entire revenues. *Id.* The court excluded this incremental value analysis as not being sufficiently tied to the facts of the case because the damages expert failed to show that the 10% figure was related at all to the accused functionality in the case. *Id.*

Mr. Bratic's incremental benefit split here should be excluded for the same reason. He has not explained how the purported ROIC for Defendant's business as a whole has any connection to the accused functionalities or how the purported ROIC would have been used by Defendant in negotiating a bare patent license. Thus, Mr. Bratic's incremental benefit split is not sufficiently tied to the facts of the case.

Mr. Bratic's determination that Plaintiff would have had bargaining power because of the lack of non-infringing alternatives,[6] Ex. A ¶ 134, does not salvage the arbitrary 90/10 incremental benefit split. As another court found when Mr. Bratic tried to support an arbitrary 50/50 split with the lack of non-infringing alternatives, "Mr. Bratic does not explain why [plaintiff's] purported bargaining leverage based on the fact that there were no non-infringing alternatives necessarily leads to the conclusion that the parties would have agreed to a 50/50 split, and why a 40/60, 30/70, 20/80 or any other split would not have been appropriate." *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220-MLH, 2020 WL 2543814, at *5 (C.D. Cal. Jan. 10, 2020). That court concluded, "There is 'simply too great an analytical gap' between Mr. Bratic's 50/50 conclusion and the facts he attempts to rely on." *Id.* (quoting *Virnetx, Inc. v. Cisco Sys. Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014)). The same is true here, and Mr. Bratic's incremental benefit split must be excluded.

### D. Mr. Bratic's Reliance on Defendant's Total Profits from the Accused Products is Not Sufficiently Tied to the Facts of the Case

Mr. Bratic's reliance on the percentage and amount of gross profits from the Accused Products without any apportionment for the accused functionalities in this case is not sufficiently tied to the facts of the case and therefore unreliable. Mr. Bratic notes at multiple points in his analysis that the Accused Products generated an average gross profit of ███ and ███████

---

[6] Defendant disputes that there are no non-infringing alternatives. Ex. B ¶¶ 109-110.

14

of total gross profits during the damages period. Ex. A ¶¶ 108 (discussing *Georgia-Pacific* Factor 11), 125 (discussing parties' consideration at the time of the hypothetical negotiation). However, this revenue percentage and amount is for the entirety of the Accused Products without any apportionment for the accused functionalities of the Accused Products. *See id.*; Ex. E at 15:1-4, 160:3-5. Thus, it is not sufficiently tied to the facts of the case. At the very least, such testimony would be more prejudicial than probative and violates Rule 403. Thus, it should be excluded. *See Uniloc*, 632 F.3d at 1320 ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."); *Cioffieta v. Google, Inc.*, No. 2:13-cv-00103-JRG-RSP, 2017 WL 77395, at *3 (E.D. Tex. Jan. 9, 2017) (excluding Mr. Bratic from testifying as to the total revenue or profit from the accused products).

### E.  Mr. Bratic's Royalty is Inapplicable to a Finding of Infringement Based on Use Because the Royalty is Tied to Sales of the Accused Products

Mr. Bratic's royalty calculation based on sales of products should be excluded because it is legally improper to the extent that the finding of infringement is based on use of the Accused Products, such as infringement of the method claims. Mr. Bratic asserts that his proposed royalty "of no less than $1.00 per Accused Product sold by LG" applies to the extent that LG is found to infringe any of the asserted claims of the Patents-in-Suit. Ex. A ¶ 13 & n.9. However, given that claim 1 of each of the Patents-in-Suit is a method claim, Mr. Bratic's royalty cannot be applied to infringement of the method claims. The Federal Circuit has held, "Damages should be apportioned to separate out noninfringing uses, and patentees cannot recover damages based on sales of products with the mere capability to practice the claimed method." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022). Thus, where the finding of infringement

15

is based on use, a damages base, such as the one proposed by Mr. Bratic, "should be limited to products that were actually used to perform the claimed method," and any opinion that does not conform to this requirement should be excluded as unreliable. *Id.* at 1356-58; *see also Ravgen, Inc. v. Lab. Corp. of Amer. Holdings*, No. 6:20-cv-00969-ADA, Dkt. 226 (W.D. Tex. Oct. 3, 2022) (Ex. D) (excluding expert opinion that sales or offer for sales of the accused product infringes the method claims as contrary to law); *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, No. C11-5503 BHS, 2015 WL 12670404, at *2 (W.D. Wash. Mar. 9, 2015) (excluding damages conclusion based on sales of products where asserted claims were method claims).

Here, Mr. Bratic does not provide any evidence of actual use. In fact, he ignores evidence that a miniscule percentage of end users even attempt to remotely lock their LG devices (which is admittedly non-infringing), and there is no evidence that these end users have ever practiced the accused functionality or sent a custom message with return/recovery information. Ex. B ¶¶ 26-33; Ex. E at 104:23-105:5. Instead, Mr. Bratic inappropriately opines that the royalty rate for all of the claims should be multiplied by the number of products sold by LG. Ex. A ¶ 143. Because Mr. Bratic's reasonable royalty opinion is based on sales of the Accused Products instead of actual use, he should be excluded from offering an opinion as to the royalty rate to which Plaintiff is entitled if the fact finder bases its infringement finding on actual use of the Accused Products, such as a finding of infringement of claim 1 of the Patents-in-Suit.

### F. Mr. Bratic's Remaining Testimony Should Be Excluded Because it is Not Helpful to the Jury

Mr. Bratic's $1.00 per unit royalty rate is based solely on (1) the incremental value that Mr. Bratic determined using Dr. Schaefer's unreliable apportionment of the accused functionalities from the FDSC Security Product and the "Phone Found" application; and (2) the incremental

benefit split that is completely divorced from the facts of this case. Ex. E at 133:1-134:15, 141:24-142:5. Thus, to the extent that any portion of those opinions are excluded, Mr. Bratic should be excluded from providing any opinions at trial because his remaining opinions (i) are not helpful to the jury; and (ii) they do not provide an ultimate opinion regarding the appropriate royalty in this case. Fed. R. Evid. 702.

## V.    CONCLUSION

For the foregoing reasons, this Motion should be granted, and the Court should exclude the opinions and testimony of Walter Bratic and Justin R. Blok.

17

Dated: February 6, 2023                    Respectfully submitted,

_/s/ Kirstin Stoll-DeBell_

**HOGAN LOVELLS US LLP**
Celine J. Crowson (Admitted _Pro Hac Vice_)
555 Thirteenth St, NW
Washington, DC 20004
Celine.Crowson@hoganlovells.com
(202) 637-5703 (Telephone)
(202) 637-5910 (Facsimile)

Gurtej Singh (CA Bar No. 286547)
(Admitted in this District)
855 Main St Suite 200
Redwood City, CA
94063Tej.Singh@hoganlovells.com
(650) 463-4000 (Telephone)
(650) 463-4199 (Facsimile)

**FAEGRE DRINKER BIDDLE & REATH, LLP**
Kirstin Stoll-DeBell (Admitted _Pro Hac Vice_)
1144 15th Street, Suite 3400
Denver, CO 80202
Kirstin.StollDeBell@faegredrinker.com
(303) 607-3500 (Telephone)
(303) 607-3600 (Facsimile)

Carrie A. Beyer (Admitted _Pro Hac Vice_)
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Carrie.Beyer@faegredrinker.com
(312) 569-1000 (Telephone)
(312) 569-3000 (Facsimile)

Lora A. Brzezynski (Admitted _Pro Hac Vice_)
Brianna L. Silverstein (Admitted _Pro Hac Vice_)
1500 K Street NW, Suite 1100
Washington, DC 20005
Lora.Brzezynski@faegredrinker.com
Brianna.Silverstein@faegredrinker.com
(202) 842-8800 (Telephone)
(202) 842-8465 (Facsimile)

18

Kirsten L. Elfstrand (Admitted *Pro Hac Vice*)
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, MN 55402
Kirsten.Elfstrand@faegredrinker.com
(612) 766-7000 (Telephone)
(612) 766-1600 (Facsimile)

**KELLY HART & HALLMAN LLP**
J. Stephen Ravel
Texas State Bar No. 16584975
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

**POTTER MINTON PC**
Michael E. Jones
Shaun William Hassett
110 N College, Suite 500
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 531-3939
Email: mikejones@ptterminton.com
Email: shaunhassett@potterminton.com

*Counsel for Defendant LG Electronics Inc.*

19

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via electronic mail on February 6, 2023.

*/s/ Kirstin Stoll-DeBell*
Kirstin Stoll-DeBell

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this filing via the Court's CM/ECF system per Local Rule CV-5(a) on February 14, 2023.

*/s/ Kirstin Stoll-DeBell*
Kirstin Stoll-DeBell
