# EXHIBIT 5

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

CAROLYN W. HAFEMAN, an Individual

             Plaintiff,

v.

LG ELECTRONICS INC.,

             Defendant.

**CIVIL ACTION NO.:**
**6:21-cv-00696-ADA-DTG**

**DEMAND FOR JURY TRIAL**

## JOINT PROPOSED JURY INSTRUCTIONS TO BE GIVEN AFTER THE CLOSE OF EVIDENCE

In advance of the jury trial, Plaintiff Carolyn W. Hafeman ("Hafeman") and Defendant LG Electronics Inc. ("LG") (collectively "the Parties") have met and conferred to narrow their disputed regarding the jury instructions in this case. The following are the joint proposed jury instructions **to be given after the close of evidence** with remaining disputes noted for the Court. The Parties have indicated their competing proposals for any disputed instruction in red text for plaintiff and blue text for defendant. Pursuant to the Court's usual practice, the parties will submit their respective objections, if any, prior to the jury receiving the Court's Final Instructions.

By providing these proposed jury instructions, the Parties do not waive any claims or defenses.

# Table of Contents

JURY INSTRUCTION NO. 13:  JURY CHARGE ..................................................................................... 1

JURY INSTRUCTION NO. 14:  EVIDENCE.......................................................................................... 2

JURY INSTRUCTION NO. 15:  WITNESSES........................................................................................ 3

JURY INSTRUCTION NO. 16:  DEPOSITION AND REMOTE LIVE TESTIMONY ............................ 4

JURY INSTRUCTION NO. 17:  FOREIGN LANGUAGE TESTIMONY ................................................ 5

JURY INSTRUCTION NO. 18:  EXPERT TESTIMONY ....................................................................... 6

JURY INSTRUCTION NO. 19:  INTERROGATORIES .......................................................................... 7

JURY INSTRUCTION NO. 20:  STIPULATIONS OF FACT .................................................................. 8

JURY INSTRUCTION NO. 21:  LIMITING INSTRUCTION .................................................................. 9

JURY INSTRUCTION NO. 22:  CHARTS AND SUMMARIES............................................................ 10

JURY INSTRUCTION NO. 23:  DEMONSTRATIVE EXHIBITS............................................................ 11

JURY INSTRUCTION NO. 24:  BIAS—CORPORATE PARTY INVOLVED ...................................... 12

JURY INSTRUCTION NO. 25:  BURDEN OF PROOF ........................................................................ 13

JURY INSTRUCTION NO. 26:  PREPONDERANCE OF THE EVIDENCE.......................................... 14

JURY INSTRUCTION NO. 27:  CLEAR AND CONVINCING EVIDENCE.......................................... 15

JURY INSTRUCTION NO. 28:  SUMMARY OF CONTENTIONS ......................................................... 16

JURY INSTRUCTION NO. 29:  PATENT CLAIMS .............................................................................. 17

JURY INSTRUCTION NO. 30:  PATENT LITIGATION ....................................................................... 19

JURY INSTRUCTION NO. 31:  INFRINGEMENT GENERALLY ......................................................... 20

JURY INSTRUCTION NO. 32:  DIRECT INFRINGEMENT GENERALLY ..................................... 22

JURY INSTRUCTION NO. 33:  INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT............ 23

JURY INSTRUCTION NO. 34:  INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT ...................................................................................................................... 25

JURY INSTRUCTION NO. 35:  WILLFUL INFRINGEMENT .......................................................... 27

JURY INSTRUCTION NO. 36:  SALE OR USE OUTSIDE THE UNITED STATES ........................ 29

JURY INSTRUCTION NO. 37:  INVALIDITY GENERALLY ............................................................... 30

JURY INSTRUCTION NO. 38:  PRIOR ART.................................................................................... 32

JURY INSTRUCTION NO. 39:  DATE OF INVENTION – PRIORITY TO PRIOR APPLICATION34

JURY INSTRUCTION NO. 40:  ANTICIPATION .............................................................................. 36

JURY INSTRUCTION NO. 41:  OBVIOUSNESS .............................................................................. 38

JURY INSTRUCTION NO. 42: WRITTEN DESCRIPTION ............................................................... 42

JURY INSTRUCTION NO. 43:  PATENT ELIGIBILITY .................................................................. 43

JURY INSTRUCTION NO. 44:  LEVEL OF ORDINARY SKILL........................................................ 44

JURY INSTRUCTION NO. 45:  DAMAGES GENERALLY................................................................... 45

JURY INSTRUCTION NO. 46:  REASONABLE ROYALTY (DEFINITION) ...................................47

JURY INSTRUCTION NO. 47:  REASONABLE ROYALTY—RELEVANT FACTORS .................48

JURY INSTRUCTION NO. 48:  DAMAGES—APPORTIONMENT ....................................................50

JURY INSTRUCTION NO. 49:  DAMAGES—COMPARABLE AGREEMENTS............................51

JURY INSTRUCTION NO. 50:  DATE OF COMMENCEMENT OF DAMAGES— PRODUCTS....52

JURY INSTRUCTION NO. 51:  DUTY TO DELIBERATE; NOTES........................................................54

JURY INSTRUCTION NO. 52:  SOCIAL MEDIA INSTRUCTION........................................................55

GLOSSARY ..........................................................................................................................................56

**JURY INSTRUCTION NO. 13:  JURY CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case.  The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you know, so there is no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence.  The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments.  You must determine the facts from all the testimony that you have heard and the other evidence submitted.  You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom.  You may not be influenced by passion, prejudice, or sympathy you might have for Ms. Hafeman or LG in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys.  Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it. Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result.  Again, your answers and your verdict must be unanimous.

**JURY INSTRUCTION NO. 14:  EVIDENCE**

The evidence you are to consider consists of the testimony of the witnesses, the documents, and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.  Nothing else is evidence.

Generally speaking, there are two types of evidence.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence.  Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you hear in this case, whether direct, circumstantial, or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial.  That does not mean you have to believe all of the evidence.  It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves.  It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

The statements, arguments, and questions by the attorneys are not evidence. Objections to questions are not evidence. The attorneys in this case may have objected if they thought that documents or testimony that were offered into evidence were improper under the rules of evidence. My legal rulings as to those objections are not evidence. My comments and questions are not evidence. If I sustained an objection, then just pretend the question was never asked.  If there was an answer given, ignore it.  If I overruled the objection, act like the objection was never made.  If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction.  If I gave any limiting instruction during trial, you must follow it.  Any testimony I tell you to exclude or disregard is not evidence and may not be considered.  Do not speculate about what a witness might have said or what an exhibit might have shown.

The fact that Ms. Hafeman filed a lawsuit is not evidence that she is entitled to a judgment. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence. Likewise, the fact that LG has raised arguments against the claims asserted is not evidence that LG is entitled to a judgment. The act of making defensive arguments, by itself, does not in any way tend to establish that such arguments have merit and is not evidence.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here and nothing else.  The notes taken by any juror are not evidence.

**JURY INSTRUCTION NO. 15:  WITNESSES**

You alone are to determine the questions of credibility or truthfulness of the witnesses.  In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances.  For instance, has the witness been contradicted by other credible evidence?  Has he or she made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that contradicted the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that misstatement may depend on whether it has to do with an important fact or with only an unimportant detail. This instruction applies to the testimony of all witnesses.

**JURY INSTRUCTION NO. 16:  DEPOSITION AND REMOTE LIVE TESTIMONY**

Certain testimony has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers have been read or shown to you. This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

[In addition, certain testimony has been presented to you through a remote live video.  These witnesses have been permitted to testify by remote live video due to travel restrictions. This remote live video testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Some of the video recordings and live remote video of witnesses you have seen may have been of lower quality because the witnesses testified from home. You should not hold the quality of the video or the location of the witness against either party.]

Hafeman's Position:
LG's proposed language is unnecessary because neither party expects to call any witnesses for live remote testimony.  If such a need arises, and the Court permits such testimony, the Court can instruct the jury accordingly before the jury hears the testimony.

LG's Position:
Although LG does not currently intend to call any witnesses via remote live video, LG believes the bracketed text should be included in case there are disruptions that would prevent a necessary witness from appearing in-person.  The bracketed text is based on the jury instruction issued in *Freshhub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 8-9 (W.D. Tex. June 22, 2021).

**JURY INSTRUCTION NO. 17:  FOREIGN LANGUAGE TESTIMONY**

You are about to hear testimony of a witness who will be testifying in the Korean language. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter.  Although some of you may know the Korean language, it is important that all jurors consider the same evidence.  Therefore, you must accept the interpreter's translation of the witness's testimony.  You must disregard any different meaning.

You must not make any assumptions about a witness or party based solely on the use of an interpreter to assist that witness or party.

**JURY INSTRUCTION NO. 18:  EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

**JURY INSTRUCTION NO. 19:  INTERROGATORIES**

Evidence has been presented to you in the form of answers of one or the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**JURY INSTRUCTION NO. 20:  STIPULATIONS OF FACT**

A "stipulation" is an agreement.  When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**JURY INSTRUCTION NO. 21:  LIMITING INSTRUCTION**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**JURY INSTRUCTION NO. 22:  CHARTS AND SUMMARIES**

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence.  These charts and summaries are not evidence or proof of any facts.  You should determine the facts from the evidence.

**JURY INSTRUCTION NO. 23:  DEMONSTRATIVE EXHIBITS**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence.  Such exhibits are demonstrative exhibits. A demonstrative exhibit is a party's description, picture, or model used to describe something involved in this trial.  If your recollection of the evidence differs from a demonstrative exhibit, rely on your recollection.

**JURY INSTRUCTION NO. 24:  BIAS—CORPORATE PARTY INVOLVED**

Do not let bias, prejudice, or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**JURY INSTRUCTION NO. 25:  BURDEN OF PROOF**

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." This case involves two different burdens of proof, "preponderance of the evidence" and "clear and convincing evidence." The burden of proof in this case is on Ms. Hafeman for some issues and on LG for other issues.

**JURY INSTRUCTION NO. 26:  PREPONDERANCE OF THE EVIDENCE**

The burden of proof applicable to Ms. Hafeman in this case is known as the preponderance of evidence. Ms. Hafeman has the burden of proving patent infringement and damages by a preponderance of the evidence.

A preponderance of the evidence means to prove something is more likely than not – i.e., evidence that persuades you that a claim is more likely true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony. You may think of this preponderance of the evidence standard as slightly greater than 50%. If you find that Ms. Hafeman has failed to prove any element of her claim of patent infringement or damages by a preponderance of the evidence, then she may not recover on that claim.

In addition, Ms. Hafeman claims that LG's patent infringement was willful.  Ms. Hafeman also has the burden of proving willfulness by a preponderance of the evidence.

LG does not have any burden of proof on the issues of patent infringement, willful infringement, or damages.

Hafeman's Position:
Plaintiff's proposal is consistent with the Court's standard instruction on the preponderance of the evidence standard. *See, e.g.*, *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, ECF No. 172, at 14 (W.D. Tex. Apr. 9, 2021); *Sunstone Information Defense, Inc. v. Int'l Bus. Mach. Corp.*, No. 6:20-cv-01033-ADA-DTG, ECF No. 150, at 11 (W.D. Tex. Aug. 12, 2022). The Court should follow that standard instruction here and reject LG's attempt to artificially inflate the preponderance standard.

LG's Position:
LG's additions in red are confusing, argumentative, and biased in favor of Hafeman.  LG's proposed version is based on *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 9-10 (W.D. Tex. Oct. 14, 2020) and Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.2.

**JURY INSTRUCTION NO. 27:  CLEAR AND CONVINCING EVIDENCE**

Patents issued by the United States Patent and Trademark Office are presumed valid. LG has the burden of proving patent invalidity by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established.  It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

The "clear and convincing evidence" standard is different from what you have heard about in criminal proceedings, where a fact must be proven beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from preponderance of the evidence, where proof need be only sufficient to tip the scales in favor of the party proving the fact, to at the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you can think of clear and convincing evidence as being between these two standards.

Hafeman's Position:
The Court routinely instructs the jury on the presumption of validity and should follow the same course here.  *See, e.g.*, *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA, ECF No. 209, at 24 (W.D. Tex. Feb. 10, 2022); *Sunstone Information Defense, Inc. v. Int'l Bus. Mach. Corp.*, No. 6:20-cv-01033-ADA-DTG, ECF No. 150, at 22 (W.D. Tex. Aug. 12, 2022).

LG's Position:
Hafeman's addition, which does not appear in Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) § A.5, upon which this instruction is based, and is unnecessary and prejudicial.  Further, this language is prejudicial and unduly argumentative because Hafeman repeats the language of the presumption of validity at least 3 times in various instructions.  That repetition is an improper attempt to insert Hafeman's legal and factual theories into the jury instruction, and therefore is prejudicial and unduly argumentative.  *See, e.g., United States v. Mata*, 491 F.3d 237 (5th Cir. 2007) ("A trial judge is under no obligation to give a requested jury instruction that misstates the law, is argumentative, or has been covered adequately by other instructions.") (quoting *United States v. Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997).

15

**JURY INSTRUCTION NO. 28:  SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Ms. Hafeman seeks money damages from LG for allegedly infringing the '287, '122, and '393 patents by making, using, importing, selling, and offering for sale products in the United States that are preinstalled with the Android operating system (in the case of LG's smartphones and tablets) and the Windows 10/11 operating systems (in the case of LG's laptops).  The Android and Windows 10/11 operating systems include software known as "Find My Device."  Ms. Hafeman contends that aspects of the "Find My Device" software infringe claims 1 and 4 of the '287 patent, claims 1, 4, and 7 of the '122 patent, and claims 1, 4, and 7 of the '393 patent.  These are known as the Asserted Claims.  Ms. Hafeman also contends that LG's infringement was willful, and that LG has contributed to and induced the end-users of its products to infringe the Asserted Claims.

LG denies that it has infringed the Asserted Claims of the '287, '122, or '393 Patents, and denies that it contributes to or induced infringement of others. LG further denies that any infringement was willful. LG also argues that the Asserted Claims are invalid. Ms. Hafeman denies that the Asserted Claims are invalid.

Your job is to decide whether LG has infringed the Asserted Claims of the '287, '122, or '393 Patents and whether any of the Asserted Claims are invalid. If you decide that any claim of the '287, '122, or '393 Patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Ms. Hafeman to compensate her for the infringement.

You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

**JURY INSTRUCTION NO. 29:  PATENT CLAIMS**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Therefore, what a patent covers depends, in turn, on what each of its claims covers. In this case, Ms. Hafeman alleges that LG has infringed claims 1 and 4 of the '287 Patent, claims 1, 4, and 7 of the '122 Patent, and claims 1, 4, and 7 of the '393 Patent. You may hear these claims referred to as the "Asserted Claims."

To know what a claim covers, a claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  The requirements of a claim are often referred to as "claim elements" or "claim limitations."  The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to."  When "comprising" is used in the preamble of a claim, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements. For example, a claim to "a table comprising a tabletop, legs, and glue" would cover a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

The use of the terms "a" or "an" in a claim is a term of art, which has a special meaning in the context of a patent claim. When used in a claim, the terms "a" or "an" mean "one or more."

For any words in the claim for which I have not provided you with a definition, you should apply

17

the plain and ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

My claim constructions are as follows:[1]

| Claim Term | Construction |
|---|---|
| "owner" (all Asserted Claims) | "the person or entity that owns, rents, or licenses the recovery application or program, and/or the person or entity who controls the recovery service." |
| "computer recovery information" / "recovery information" / "return information" (all Asserted Claims) | "information provided by the owner so that the device can be returned to the owner" |
| "user" (all Asserted Claims) | "person who has physical possession of the device" |

---

[1] For the purposes of the proposed final jury instruction exchange, LG has included the Court's preliminary claim constructions. LG still asserts that the constructions that it offered are correct and reserves all rights to object and/or appeal to any of these constructions.

**JURY INSTRUCTION NO. 30:  PATENT LITIGATION**

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the claimed invention, as defined by the claims, within the United States, before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid. A party accused of infringing a patent may deny infringement and/or prove that the asserted claims of the patent are invalid. If a party challenges the validity of the patent, you must decide, based on the instructions I will give you, whether the challenger has overcome the presumption of validity with proof that the asserted claims of the patent are invalid.

Hafeman's Position:
Ms. Hafeman's proposed instruction is taken verbatim from the American Intellectual Property Law Association's Model Patent Jury Instruction § II.A.ii.  The Court should issue the instruction here because it is necessary to provide an overview of patent litigation to the jury, explain that Ms. Hafeman is exercising her statutory rights by bringing this lawsuit, and fully explain the presumption of validity and its relationship to the clear and convincing evidence standard.

LG's Position:
LG objects to this proposed instruction as duplicative of other proposed instructions, such as the prior instructions already instructing the jury on United States Patents and Patent Claims (subject to LG's objections to those instructions), and prejudicial and biased in favor of Hafeman.

LG further objects to the sentences starting with "A patent is presumed" and "But that presumption of validity" as prejudicial and unduly argumentative because Hafeman repeats the language of the presumption of validity at least 3 times in various instructions.  That repetition is an improper attempt to insert Hafeman's legal and factual theories into the jury instruction, and therefore is prejudicial and unduly argumentative.  *See, e.g., United States v. Mata*, 491 F.3d 237 (5th Cir. 2007) ("A trial judge is under no obligation to give a requested jury instruction that misstates the law, is argumentative, or has been covered adequately by other instructions.") (quoting *United States v. Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997).

**JURY INSTRUCTION NO. 31:  INFRINGEMENT GENERALLY**

I will now instruct you as to the rules you must follow when deciding whether Ms. Hafeman has proven that LG infringed any of the claims of the '287, '122, or '393 Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another. If, as here, a patent owner asserts multiple patent claims against the same product or method, then you must compare each claim separately against the product or method to determine whether the product or method infringes that individual patent claim. You may also find that none of the claims are infringed.

Here, Ms. Hafeman alleges that LG's accused smartphones, tablets, and laptops infringe claims 1 and 4 of the '287 Patent; claims 1, 4, and 7 of the '122 Patent; and claims 1, 4, and 7 of the '393 Patent.

In this case, there are two possible ways that a claim may be infringed. The two types of infringement are called: (1) direct infringement; and (2) indirect infringement. Contributory infringement and inducement of infringement are forms of indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.

In this case, Hafeman has alleged that LG directly infringes the Asserted Claims of the '287 patent, the '122 patent, and the '393 patent. In addition, Hafeman has also alleged that LG indirectly infringes the Asserted Claims of the '287 patent, the '122 patent, and the '393 patent. LG denies that it infringes, either directly or indirectly, any of the Asserted Claims of the '287 patent, the '122 patent, and the '393 patent.

In order to prove infringement, Hafeman must prove that the requirements for one or both of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

You have heard evidence about both the Front Door Software product and the Accused Products that include Find My Device functionality.  However, in deciding the issue of infringement you may not compare the Accused Products to the Front Door Software product. Rather, you must compare the Accused Products to the claims of the '287, '122, or '393 Patents when making your decision regarding infringement.

<span style="color:blue">A claim of a patent may be infringed directly or indirectly. As explained further in the following Instructions, direct infringement results if the accused LG smartphones, tablets, and/or laptops are covered by at least one non-method claim of the patent. Indirect infringement results if the defendant induces another to infringe a claim of a patent or contributes to the infringement of a claim of a patent by another.</span>

<span style="color:red"><u>Hafeman's Position</u>:
Defendant's proposal is unnecessary and repetitive because the parties' agreed instruction already distinguishes between the two different types of infringement.</span>

<u>LG's Position</u>:

LG has included the final paragraph in order to provide a simple overview of the types of infringement that are asserted in this case.

**JURY INSTRUCTION NO. 32:  DIRECT INFRINGEMENT GENERALLY**

A person or business entity that imports into the United States, or makes, uses, sells, or offers to sell in the United States a product claimed in a patent infringes that patent or performs the steps of a patented method in the United States.  Infringement is assessed on a claim-by-claim basis by comparing LG's accused products to the elements of each claim.  There may be infringement as to one claim but no infringement as to another claim.

In order to show infringement by use or performing a method, Ms. Hafeman must show that someone who was not authorized by her used the product or performed the method in a way that meets each element of each claim. Any such use or performance by LG's attorneys or experts during the course of this case is not enough to show actual use.

In order to prove direct infringement of a claim by LG, Ms. Hafeman must prove infringement by a preponderance of the evidence, that is, that it is more likely than not that LG made, used, sold, or offered for sale within the United States, or imported into the United States, a product that meets all of the requirements of a claim and did so without the permission of Ms. Hafeman during the time the Asserted Patent was in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

A claim element is present if it exists in an Accused Product or was performed by an Accused Product as it is described in the claim language. For a method claim to be infringed, Ms. Hafeman must prove by a preponderance of the evidence that the direct infringer performed each and every step of the claimed method in the United States. If an Accused Product omits any requirement recited in one of the Asserted Claims, then that product does not infringe that claim.

You must determine, separately for each asserted claim, whether or not there is infringement.


Hafeman's Position:
As explained in Ms. Hafeman's opposition to Defendant's motions *in limine*, evidence of use by attorneys or experts is sufficient circumstantial evidence to support a jury verdict of infringement through use.  *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 508 F.3d 1301, 1317–21 (Fed. Cir. 2009).  Accordingly, Defendant's first proposed paragraph is contrary to law.  Defendant's remaining proposals in this instruction are unnecessary, repetitive, and prejudicial, as the parties' agreed language already instructs the jury that infringement of a method claim requires "perform[ing] the steps of a patented method in the United States."

LG's Position:
The paragraph regarding use by attorneys or experts is an accurate recitation of the law and necessary to combat any suggestion by Ms. Hafeman otherwise. *See* Dkt. 153 at 4-6; *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). The sentence regarding infringement by a method claim is an accurate recitation of the law that would be helpful for the jury.

**JURY INSTRUCTION NO. 33:  INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT**

In addition to direct infringement, Ms. Hafeman alleges that LG is liable for infringement by actively inducing end-users of the Accused Products to directly infringe the '287, '122, and '393 Patents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

LG is liable for active inducement of a claim of a patent only if Ms. Hafeman proves by a preponderance of the evidence:

> (1) that the acts actually carried out by end-users of LG's Accused Products directly infringe that claim;

> (2) LG took action during the time the patent was in force that was intended to cause and led to the infringing acts by end-users of LG's Accused Products; and

> (3) LG was aware of the patent and knew that the acts, if taken, would constitute infringement of the patent, or that LG believed there was a high probability that the acts by end-users of LG's Accused Products would infringe the patent and LG took deliberate steps to avoid learning of that infringement.

A party induces patent infringement if it purposefully causes or encourages another to infringe a patent.  If nobody has directly infringed the patent, there can be no induced infringement.  That means that Ms. Hafeman must prove specific acts of direct infringement by others that were induced by LG.  Inducing infringement cannot occur unintentionally.

Ms. Hafeman must prove that LG knew and intended that the induced act would occur and would infringe, not merely that the induced act would occur.  If you find that LG was aware of the patent, but believed that the acts it encouraged did not infringe that patent, LG cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that end-users of the Accused Products themselves directly infringe the claim. Nor is it sufficient that LG was aware of the act(s) by end-users of the Accused Products that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that LG specifically intended end-users of the Accused Products to infringe the patent or that LG believed there was a high probability that end-users of the Accused Products would infringe the patent, and took deliberate actions to avoid learning the infringing nature of LG's end-users' acts. The mere fact, if true, that LG knew or should have known that there was a substantial risk that LG's end-users' acts would infringe the patent would not be sufficient to support a finding of active inducement of infringement.

Hafeman's Position:
Defendant's proposal is unnecessary, repetitive, and prejudicial because the parties' agreed

language already lays out all of the requirements in Defendant's proposed additions.  For example, the parties' agreed language already instructs the jury that end-users of the Accused Products must "directly infringe [a] claim," that LG must have taken actions that were "intended to cause and led to the infringing acts," and that LG's actions cannot have been unintentional.

In addition, Defendant's proposed language that LG must have known and intended that the induced act would occur is contrary to law.  As explained in Plaintiff's opposition to Defendant's motion for summary judgment, ECF No. 123, specific intent for inducement requires showing that the defendant "knew *or should have known* [its] actions would induce actual infringements." *Sanofi v. Watson Lab'ys Inc.*, 875 F.3d 636, 644 (Fed Cir. 2017) (emphasis added).

<u>LG's Position</u>:

The paragraphs regarding purposeful encouragement, knowledge, and intent are accurate reflections of the law that will assist the jury.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331-1332 (Fed. Cir. 2016); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1927 (2015).

**JURY INSTRUCTION NO. 34:  INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT**

Hafeman also argues that LG is liable for contributory infringement by contributing to the direct infringement of the '287 Patent, the '122 Patent, and the '393 Patent by the end users of the Accused Products. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Contributory infringement occurs only if someone sells or offers to sell something within the United States, or imports into the United States, that is used to infringe a patent claim.  A party cannot commit contributory infringement by merely making or distributing a product that is used to infringe a patent claim.

LG can be liable for contributory infringement only if Ms. Hafeman establishes that it is more likely than not that someone other than LG directly infringed a claim of the '287, '122, or '393 Patents.  If there is no direct infringement by anyone, there can be no contributory infringement.

LG is liable for contributory infringement of a claim of a patent if Hafeman proves by a preponderance of the evidence that all of the following apply[2]:

    (1)    LG sold, offered to sell, or imported within the United States a component of a product, material, or apparatus for use in a process, during the time that the patent was in force;

    (2)    The component, material, or apparatus was not a staple article or commodity of commerce suitable for substantial noninfringing use;

    (3)    The component, material, or apparatus constitutes a material part of the invention;

    (4)    LG was aware of the patent and knew that the component, material, or apparatus was especially made or adapted for use as an infringement of the claim; and

    (5)    End users of LG's Accused Products used the component, material, or apparatus to directly infringe a claim of the patent.

If you find that someone has directly infringed the '287, '122, or '393 Patents, contributory infringement can exist only if Ms. Hafeman proves that all of the following apply:

    1.    LG sold or offered for sale a product that is important to the infringing process;

    2.    the product sold or offered for sale by LG is not suitable for non-infringing use;

    3.    LG  knew of the patent when it sold or offered the product for sale; and

    4.    LG knew that the product was especially made or adapted for use in a way that would

---

[2] Defendant requests its version of the contributory infringement factors be adopted.  However, to the extent the Court adopts Plaintiff's version, Defendant requests the edits in blue be made.

infringe the '287, '122, or '393 Patents.

For each of the above requirements, Ms. Hafeman must prove that it is more likely than not that the requirement is met.

There can be no contributory infringement if LG reasonably believed that the use of the Accused Products did not infringe.

Hafeman's Position:
Ms. Hafeman's proposed instruction is taken directly from the Federal Circuit Bar Association's Model Patent Jury Instruction § 3.3, and the Court should reject Defendant's dramatic attempt to rewrite the law.  Defendant's proposed language is also unnecessary, repetitive, and prejudicial, as the factors proposed by Ms. Hafeman already make clear that contributory infringement cannot occur without direct infringement and that Ms. Hafeman must prove all of the requirements of contributory infringement by a preponderance of the evidence.

LG's Position:
LG's proposed version of this instruction is a more complete description and accurate reflections of the law that will assist the jury.  *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964); *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 523 (Fed. Cir. 2016) (citing *Commil*, 135 S. Ct. at 1928); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1363 (Fed. Cir. 2017); Northern District of California Model Patent Jury Instructions § 3.6 (Oct. 2019). See also 35 U.S.C. § 271(c); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011); *Enercon GmbH v. ITC*, 151 F.3d 1376, 1381–82 (Fed. Cir. 1998).

**JURY INSTRUCTION NO. 35:  WILLFUL INFRINGEMENT**

If you decide that LG infringed any of the Asserted Claims, you must go on and address the additional issue of whether or not the infringement was willful. Willfulness requires you to determine whether Ms. Hafeman has proven by a preponderance of the evidence that LG knew of the patent and that the infringement by LG was deliberate or intentional. You may not determine that the infringement was willful just because LG was aware of the patent and infringed it. Instead, you must also find that LG deliberately or intentionally infringed the asserted claim of that patent.

You must base your decision on LG's knowledge and actions at the time of infringement.

If you find that LG knew of the Asserted Patents at the time of infringement, that alone is not sufficient to show willfulness.  Ms. Hafeman must also prove that it is more likely than not that LG knowingly and intentionally infringed the patent.

To determine whether LG acted willfully, consider all facts and assess LG's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

1.      Whether or not LG acted consistently with the standards of behavior for its industry;

2.      Whether or not LG reasonably believed it did not infringe or that the patent was invalid;

3.      Whether or not LG made a good-faith effort to avoid infringing the '287 patent, the '122 patent, or the '393 patent, for example, whether LG attempted to design around the '287 patent, the '122 patent, or the '393 patent; and

4.      Whether or not LG tried to cover up its infringement.

If you decide the infringement was willful, that decision should not affect any damages award you give.  I will take willfulness into account later.

Hafeman's Position:
Defendant's proposed language is unnecessary, repetitive, and prejudicial.  The parties' agreed language already makes clear that willfulness requires evidence that "LG knew of the patent and that the infringement by LG was deliberate or intentional."  The parties' agreed language likewise makes clear that the jury "may not determine that the infringement was willful just because LG was aware of the patent and infringement," but rather must "also find that LG deliberately or intentionally infringed."

LG's Position:
The additions requested by LG are accurate representations of the law and would be helpful to the jury. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1932-34 (2016); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.,* 946 F.3d 1367, 1378 (Fed. Cir. 2020); *SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295, 1309-10 (Fed. Cir. 2019); *WBIP, LLC v. Kohler Co.,* 829 F.3d

1317, 1341 (Fed. Cir. 2016); Polara Eng'g Inc v. Campbell Co., 894 F.3d 1339, 1353–55 (Fed. Cir. 2018); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.,* 876 F.3d 1350, 1371 (Fed. Cir. 2017); *Georgetown Rail Equip. Co. v. Holland L.P.,* 867 F.3d 1229, 1245 (Fed. Cir. 2017).

**JURY INSTRUCTION NO. 36:  SALE OR USE OUTSIDE THE UNITED STATES**

Activity performed outside the country is not infringement under United States patent laws.  You may not find LG liable for, or award damages based on, any making, using, selling, or offering to sell the accused product in other countries.

Hafeman's Position:

Defendant's proposed instruction is incomplete, misleading, unnecessary, prejudicial, and unsupported by a single previous jury instruction.  The parties' agreed instructions already instruct the jury on the various ways in which a patent can and cannot be infringed, including the required nexus to the United States.  This proposed instruction misleadingly implies that infringement cannot be based on LG's importation of products into the United States.  Although LG offered to add the language "as I previously instructed you, the importation of a product into the United States may be infringement under United States patent laws," that proposed addition would have done nothing to cure the misleading and prejudicial nature of this instruction.  The parties' proposed instructions do *not* include a separate instruction on importation, but rather instruct the jury that LG must have "made, used, sold, or offered for sale within the United States, or imported into the United States, a product that meets all of the requirements of a claim."  LG's attempt to include a separate instruction on all of the things that LG did *not* do, while omitting a separate instruction on what LG *did* do, is misleading and prejudicial.  Moreover, it is clear that the prejudicial effect of this instruction is LG's goal, as it only proposed the additional language on importation contingent on Ms. Hafeman accepting the rest of LG's proposal.

LG's Position:

Given LG's status as a foreign company and the fact that LG's activities take place outside the United States, this is a necessary instruction to help the jury focus on activities that comport with the territorial limitations of U.S. patent law.  *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007); *Deepsouth Packing Co., Inc. v. Laitram Corp.*, 406 U.S. 518, 525 n.7, 527, 531 (1972), *superseded in part on other grounds*, 35 U.S.C. § 271(f)*; Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 650 (1915); *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 195–96 (1856); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1358, 1362–65 (Fed. Cir. 2009) (en banc).

## JURY INSTRUCTION NO. 37:  INVALIDITY GENERALLY

I will now instruct you on the rules you must follow in determining whether LG has proven the affirmative defense of patent invalidity.

A patent is presumed to be valid.  In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.  As with infringement, invalidity is assessed on a claim-by-claim basis.

LG contends that the Asserted Claims are invalid based on anticipation, obviousness, patent ineligibility, and the written description requirement.

Patent invalidity is a defense to patent infringement.  The issuance of a patent by the Patent Office provides a presumption that the patent is valid.

But the Patent Office sometimes issues invalid patent claims, and issued claims can be found invalid in court.  In this case, you have the ultimate responsibility for deciding whether the Asserted Claims of the '287, '122, and '393 Patents are valid or invalid.  In making your determination, you must consider the Asserted Claims individually, as you did when you considered whether each claim was infringed or not.  If clear and convincing evidence demonstrates that an Asserted Claim fails to meet any requirement of the patent laws, then that claim is invalid.

During the course of this trial, LG has presented you with several prior art references.  In general, prior art includes patents, publications, or items, such as products or systems, that were publicly used, offered for sale, or publicly known, that disclosed the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have been on sale, used, published, patented, or otherwise made available to the public before the effective filing date of the Asserted Patents.

The fact that any particular reference was or was not considered by the Patent Office does not change LG's burden of proof.  However, in making your decision whether LG has demonstrated that a claim is invalid by clear and convincing evidence, you may consider whether LG has presented any materially new prior art references that the Patent Office had no opportunity to evaluate.  LG's  burden may be easier to meet if all material facts were not before the Patent Office when it issued a patent.

I will now instruct you on the invalidity issues you should consider.

Hafeman's Position:
Ms. Hafeman's proposed articulation of the presumption of validity is taken directly from the American Intellectual Property Law Association's Model Patent Jury Instruction § II.A.ii.  LG's articulation of the presumption, by contrast, is argumentative and prejudicial.  LG's proposed language that the PTO "sometimes issues invalid patent claims" and that the jury has "the ultimate responsibility" for deciding validity are clearly designed to undermine the presumption

of validity and should be rejected.

In addition, LG proposed this instruction as a general background instruction to the more detailed invalidity instructions that follow.  Yet LG has loaded this proposed instruction with unnecessary and repetitive language that already appears below, such as LG's proposed paragraph on the "several prior art references" that LG intends to present to the jury.

Finally, LG's paragraph on the art considered by the PTO is unnecessary, prejudicial, contrary to law, and unsupported by any jury instruction.  For example, while LG initially acknowledges that the art considered by the PTO "does not change LG's burden of proof," it immediately reverses course and urges the Court to tell the jury that "LG's burden may be easier to meet" based on the art that the PTO considered.

<u>LG's Position</u>:
LG's additions are well-supported by the law and helpful to the jury.  Specifically, to the extent the presumption of validity is discussed, it is equally necessary to include the law on references that were not before the Patent Office.  35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1563-64 (Fed. Cir. 1993); *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628 (2019); *see also Axcess Int'l, Inc. v. Savi Techs., Inc.*, No. 3:10-CV-1033-F, 2013 WL 12384347, at *1 (N.D. Tex. Jan. 25, 2013); *Amarin Pharma, Inc. v. W.-Ward Pharms. Int'l Ltd.*, No. 2:16-CV-02525-MMD-NJK, 2020 WL 32549, at *3 (D. Nev. Jan. 2, 2020); *In re Biogen '755 Pat. Litig.*, No. 10-2734 (CCC)(JBC), 2018 WL 3613162, at *4 (D.N.J. July 26, 2018); Dkt. 168 at 8.

**JURY INSTRUCTION NO. 38:  PRIOR ART**

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art." In this case, the prior art includes references, such as systems, publications, or patents, that LG contends disclose the claimed invention or elements of the claimed invention.

LG contends that the following is prior art to the Asserted Patents:

- Research in Motion's The BlackBerry System
- Microsoft's Windows 2000
- IBM's EPO Publication No. EP0687968A2 ("Cohen")
- Research in Motion's U.S. Patent Application Publication No. 2003/0088633A1 ("Chiu")
- Nokia's U.S. Patent No. 6,662,023 ("Helle")
- Kokusai's U.S. Patent No. 6,771,954 ("Yoneyama")
- Motorola's U.S. Patent No. 6,782,251 ("Kagay")
- Front Door Security's The Retriever Security Solution Software
- Apple's Find My iPhone

You must determine whether each of the above is prior art that can be considered in determining whether the Asserted Claims of the Asserted Patents are invalid.  There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

LG contends that the Blackberry System, Windows 2000 System, Cohen, Chiu, Helle, Yoneyama, and Kagay are prior art because they were known to or used by others, or on sale or offered for sale, in the United States or patented or described in a printed publication anywhere in the world before September 20, 2004, which is the date Hafeman filed U.S. Patent Application No. 10/945,332. The parties refer to this application as the '332 application.

LG also contends that the Retriever Security Solution System and Find My iPhone System are prior art because they were known to or used by others, or on sale or offered for sale, anywhere in the world before November 22, 2013, which is the date Hafeman filed U.S. Patent Application No. 14/087,866, and because the Asserted Patents are not entitled to a priority date before November 22, 2013. However, Retriever Security Solution Software and Find My iPhone are not prior art if you determine that the Asserted Patents are entitled to a priority date of September 20, 2004, as Ms. Hafeman contends.

In this case, the parties dispute the priority date of the Asserted Patents.

Specifically, Ms. Hafeman contends that the Asserted Patents are entitled to the priority date of her September 20, 2004 patent application and the priority date therefore is September 20, 2004. LG contends that the priority date of the Asserted Patents is November 22, 2013 because the September 20, 2004 patent application does not fully support the claims of the Asserted Patents.

LG must prove by clear and convincing evidence that the Blackberry System, Windows 2000

System, Cohen, Chiu, Helle, Yoneyama, and Kagay, the Retriever Security Solution System, and the Apple Find My iPhone System are prior art.

Hafeman's Position:
Ms. Hafeman's proposal reflects the language that LG initially proposed to describe the prior art in these instructions.  Following the parties' meet and confer, LG changed course and requested to add the entities of the names affiliated with the prior art systems and patents.  The names of these entities are irrelevant, and they can serve only to prejudice Ms. Hafeman by suggesting that her claims must be invalid because the prior art proffered by LG comes from large, well-recognized corporations like IBM, Motorola, and Nokia.

LG's Position:
LG's additions to the list of prior art will be helpful to the jury to the extent the references are referred to by the assignee.

**JURY INSTRUCTION NO. 39: DATE OF INVENTION – PRIORITY TO PRIOR APPLICATION**

In this case, the parties dispute the priority date of the Patents-in-suit. Specifically, Ms. Hafeman contends that the Asserted Patents are entitled to a priority date of September 20, 2004 (the filing date of U.S. Patent Application No. 10/945,332 ("the '332 Application")). LG contends that the priority date to which the Asserted Patents are entitled is November 22, 2013 (the filing date of U.S. Patent Application No. 14/087,866).

For the Asserted Patents to be entitled to the priority date of the '332 Application, Hafeman has the burden of providing evidence that the '332 Application satisfies both the written description and enablement requirements. If Hafeman does so, LG has the burden of showing by clear and convincing evidence that the '332 Application does not meet those two requirements. I will now talk a little about each of these two requirements.

*(1) Written Description*

To determine whether a claim is entitled to the priority date of a parent application, you should consider whether the specification and originally filed claims of that application provide written description for the entire claim.

The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's priority date. In deciding whether an application with the Patent Office satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The application must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the application discloses. It is not sufficient that the application discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention. However, a mere wish or plan for obtaining the claimed invention is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

The written description requirement ensures that the issued claims are not broader than the written description that was provided in the original application. The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would have recognized that the inventor had invented each and every limitation of what is now claimed by the time of filing of the earlier patent application, even though the description might not use the exact words found in the claim.

34

All elements of the claim, including both alternative or disjunctive limitations, must be supported to meet the written description requirement.

But merely showing invention is not sufficient; the ultimate question is whether the originally filed specification (including the original claims) describes in full, clear, and exact terms the nature and extent of the claimed invention.

An inventor's designation of an application as a continuation is given no weight.  No matter what term is used to describe a continuing application, that application is entitled to the benefit of the filing date of an earlier application only as to common subject matter.

If you find that one or more of the claims is supported by adequate written description in the '332 Application, then the effective filing date for those claims is September 20, 2004.  If you find that one or more claims is not supported by adequate written description in the '332 Application, then the effective filing date for those claims is no earlier than November 22, 2013.

> (2) Enablement

A patent application must also disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed, to make and use the claimed invention. This requirement is known as the enablement requirement. Each claim must be analyzed for compliance with the enablement requirement.

Hafeman's Position:
Ms. Hafeman's proposed articulation of the written description requirement comes directly from the Federal Circuit Bar Association's Model Patent Jury Instruction § 4.2a.  The Court routinely issues this instruction and should do so here.  *See, e.g.*, *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00511-ADA, ECF No. 247, at 21 (W.D. Tex. June 22, 2021); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, ECF No. 189, at 26 (W.D. Tex. Oct. 5, 2021).

LG's Position:
LG's proposal is a fair and accurate recitation of the law that focuses the jury on the written description for the priority issue.  *See Anascape, Ltd. v. Nintendo of Amer. Inc.*, 601 F.3d 1333, 1337 (Fed. Cir. 2010); *Transco Prod. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 (Fed. Cir. 1994); *see also Akeva L.L.C. v. Nike, Inc.*, 817 F. App'x 1005, 1012-13 (Fed. Cir. July 16, 2020).

JURY INSTRUCTION NO. 40:  ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new." LG contends that the Asserted Claims are not new and are invalid as anticipated because the claimed invention was already publicly known or publicly used by others or offered for sale or sold in the United States through the Windows 2000 System, the Blackberry System, the Retriever Security Solution System, and/or the Apple Find My iPhone System. LG must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid. Invalidity is determined on a claim-by-claim basis. Therefore, there may be invalidity as to one claim but not as to another.

In general, an invention is new when the identical invention as claimed has not been used or disclosed before. If the claim is not new, we say that it was "anticipated" by prior art. Prior art is the general body of knowledge in the public domain, such as articles or other patents before the claim was made. A claim that is "anticipated" by the prior art is not entitled to patent protection. Anticipation must be proved on a claim-by-claim basis.

LG contends that the asserted claims of the patents-in-suit are invalid for anticipation. LG must convince you of this by clear and convincing evidence.

To anticipate a claim, each and every element in the claim must be present in a single item or system of prior art, and arranged or combined in the same way as recited in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied— such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention. You may not combine two or more items or systems of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular item.

Where LG is relying on prior art that was not considered by the Patent Office during examination of the Asserted Patents, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Office did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

Hafeman's Position:
LG's proposed language is unnecessary, repetitive, and prejudicial. LG's first proposed addition, for example, is unnecessary, repetitive, and prejudicial because the parties' agreed language already instructs the jury that each and every element must be present in a single prior art reference or system. With respect to LG's second proposed paragraph, Ms. Hafeman incorporates her position on the similar language that LG proposes for Instruction 37. Ms. Hafeman's simpler and more neutral proposal accords with instructions that this Court has given. *See, e.g.*, *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, ECF No. 172, at 30 (W.D. Tex. Apr. 9, 2021).

LG's Position:

LG's addition to the fourth paragraph originate from Federal Circuit Bar Association Model Jury Instructions § 4.3b-1 (2020) and accurately reflects the law.  It would be prejudicial to LG to omit an explanation that the requirements can be met inherently.

LG's proposal for the fifth paragraph also originates from Federal Circuit Bar Association Model Jury Instructions § 4.3b-1 (2020) and accurately reflects the law.  It would be prejudicial to LG to omit an explanation regarding the impact of whether art was not considered by the PTO.

**JURY INSTRUCTION NO. 41:  OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described in a single prior art reference or system before the priority date of the claimed invention, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the priority date of the claimed invention.

LG may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.  Specifically, LG contends that the following combinations render obvious the Asserted Claims:

- Research in Motion's BlackBerry System

- Microsoft's Windows 2000 System

- Microsoft's Windows 2000 System + Research in Motion's Blackberry System

- Microsoft's Windows 2000 System + IBM's EPO Publication No. EP0687968A2 ("Cohen")

- Microsoft's Windows 2000 System + Motorola's U.S. Patent No. 6,782,251 ("Kagay")

- Microsoft's Windows 2000 System + Research in Motion's U.S. Patent Application Publication No. 2003/0088633A1 ("Chiu")

- Microsoft's Windows 2000 System + Nokia's U.S. Patent No. 6,662,023 ("Helle")

- Microsoft's Windows 2000 System + Kokusai's U.S. Patent No. 6,771,954 ("Yoneyama")

In determining whether a claimed invention is obvious, you must consider (1) the level of ordinary skill in the field of the Asserted Patents that someone would have had at the time of the priority date of the claimed invention, (2) the scope and content of the prior art, (3) any differences between the prior art and the claimed invention, and, (4) any if present, so-called objective evidence or secondary considerations of non-obviousness, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you should may consider whether, at the time as of the priority date of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:

> (1)    whether the claimed invention was merely the predictable result of using prior art

elements according to their known function(s);

(2)    whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3)    whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4)    whether the prior art teaches away from combining elements in the claimed invention; and

(5)    whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a.    Whether products incorporating the claimed invention were commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities). If so, whether they were successful because of the claimed invention or for other reasons, like other product features or marketing efforts;

b.    Whether the claimed invention satisfied a long-felt need the problem facing the inventor had been without a solution for a long time;

c.    Whether others had tried and failed to make solve the problem that the claimed invention addresses;

e.    Whether others copied the claimed invention;

f.    Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g.    Whether the claimed invention achieved unexpected get results that were better than the closest prior art to an unexpected degree;

h.    Whether others in the field praised the claimed invention;

i.    Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

ii.      Whether others in the field or LG praised the claimed invention or expressed surprise that it had been made; and

j.      Whether others sought or obtained rights to the patent from the patent holder licensed the claimed invention because of its merits, and not just to avoid the costs of litigation; and

k.      Whether the inventor proceeded contrary to accepted wisdom in the field.

Answering some or all of these questions 'yes' may suggest that the claimed invention would not have been obvious.  Answering some or all of them 'no' may suggest that the claimed invention would have been obvious.

Another factor to consider is whether others independently came up with the claimed invention before or at about the same time as the named inventor.  That factor is evidence that the claim would have been obvious.

You should consider these factors along with all the other evidence in the case in deciding whether LG has proven shown that the Asserted Claims would have been obvious.

In determining whether the claimed invention was obvious, consider each claim separately.

Hafeman's Position:
With respect to LG's additions of the entities responsible for the prior art systems or patents, Ms. Hafeman incorporates her position on Instruction 38.

With respect to Ms. Hafeman's proposed addition on page 38, the Court regularly instructs juries that "obvious to try is not sufficient is not sufficient in unpredictable technologies" and should do so again here.  *See, e.g.*, *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, ECF No. 189, at 29 (W.D. Tex. Oct. 5, 2021).

With respect to the factors relevant to secondary considerations of non-obviousness, Ms. Hafeman's proposed language is taken directly from the Federal Circuit Bar Association's Model Patent Jury Instruction § 4.3c.  The Court regularly issues this instruction and should do so again here.  *See, e.g.*, *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, ECF No. 189, at 29 (W.D. Tex. Oct. 5, 2021).

LG's proposed additional paragraphs following the factors relevant to secondary considerations are unnecessary, repetitive, and prejudicial.

LG's Position:
LG's additions to the list of prior art will be helpful to the jury to the extent the references are referred to by the assignee.

LG's proposed use of "incentive" instead of "need" is supported by FCBA Model Instruction 4.3(c).  LG's further proposals accurately reflect the law and are helpful to the jury. *See* 35 U.S.C. § 103; *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2253 (2011) (Breyer, J., concurring); *Addington v. Texas*, 441 U.S. 418, 423 (1979); *SSIH Equip. S.A. v. ITC*, 718 F.2d 365, 375 (Fed. Cir. 1983); *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 767 (Fed. Cir. 1989); Federal Circuit Bar Association Model Patent Jury Instructions § 4.3c (May 2020); AIPLA Model Patent Jury Instructions § 7.4 (2019); National Jury Instruction Project, Model Patent Jury Instructions § 5.9.

## JURY INSTRUCTION NO. 42: WRITTEN DESCRIPTION

LG contends that the Asserted Claims of the Asserted Patents are invalid for failure of the patent to provide an adequate written description of the claimed invention.

A patent's specification must describe in full, clear, and exact terms the nature and extent of the claimed invention. In the patent application process, the applicant may keep the originally filed claims, amend the claims, or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims are not broader than the written description that was provided in the original application. The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would have recognized that the inventor had invented each and every limitation of what is now claimed by the time of filing, even though the description might not use the exact words found in the claim.

But merely showing invention is not sufficient; the ultimate question is whether the specification describes in full, clear, and exact terms the nature and extent of the claimed invention.

If you find by clear and convincing evidence that one or more of the Asserted Claims lacked an adequate written description, you must find each such claim invalid.

Hafeman's Position:
Ms. Hafeman submits that the jury should only be instructed once on the written description requirement, in Instruction 39.  LG's proposed instruction is unnecessary, repetitive, argumentative, and prejudicial.  If the Court decides to instruct the jury twice on the written description requirement, Ms. Hafeman respectfully submits that the language she proposes in Instruction 39 should be used, rather than the language proposed by LG, which is unsupported by any jury instruction.

LG's Position:
Because LG has a separate and distinct claim for invalidity based upon the lack of written description, a separate and distinct instruction is warranted.  LG's instruction accurately reflects the law and is helpful to the jury. *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc).

**JURY INSTRUCTION NO. 43:  PATENT ELIGIBILITY**

To succeed on its claim for invalidity for failure to claim patent-eligible subject matter, LG must show by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the date of invention.

Whether a particular technology was well-understood, routine, and conventional goes beyond what was known in the prior art.  The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional.  At the same time, the specification of the Asserted Patents may be such evidence, if you find that the specification shows that the elements of the Asserted Claims involve only technology which a person of ordinary skill in the art would have considered as well-understood, routine, and conventional.[3]

---

[3] This proposed instruction presumes that the Court will decide step one of the patent-eligibility test.

**JURY INSTRUCTION NO. 44:  LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

Ms. Hafeman contends that the level of ordinary skill is a Bachelor's Degree in Computer Science or a related field, and two years of experience working in the field of software development.  More education could be substituted for experience, and vice versa.

LG contends that the level of ordinary skill is a Bachelor's Degree in computer science, computer engineering, electrical engineering, or the equivalent and at least two years of experience in the relevant field, e.g., electronic communications systems.

Because the parties disagree on the definition of a person of ordinary skill in the art for each of the patents-in-suit, you must consider each party's proposed definition, as presented at trial, for each patent and adopt one of the party's definitions.

Hafeman's Position:
The inclusion of "the inventor" in the factors relevant to the determination of a POSITA is prejudicial and should not be included in the Court's charge.

Although LG believes that the differences in the parties' definitions are minimal, the parties have still proffered different definitions of a POSITA and the jury should be instructed as to its obligation to adopt one of the proffered definitions in its deliberations.

LG's Position:
LG's inclusion of "the inventor and other" is from the Federal Circuit Bar Association Model Jury Instructions § 4.3(c)(i) (2020), upon which this instruction is based.

Hafeman's addition of the final paragraph does not appear in the Federal Circuit Bar Association Model Jury Instructions § 4.3(c)(i) (2020), upon which this instruction is based.

**JURY INSTRUCTION NO. 45:  DAMAGES GENERALLY**

If you find that LG infringed an Asserted Claim of the Asserted Patents, and that the claim is not invalid, you must determine the amount of damages to be awarded to Ms. Hafeman for the infringement. On the other hand, if you find that each of the Asserted Claims is invalid, not infringed, or both, then you should stop and not reach any damages issues.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that LG has not infringed any valid claim of the patent, then Ms. Hafeman is not entitled to any damages.

If you find that Ms. Hafeman is entitled to damages, the amount of damages must be adequate to compensate Ms. Hafeman for the infringement.  Damages are not meant to punish an infringer. Your damages award, if you reach this issue, should put Ms. Hafeman in approximately the same financial position that it would have been in had the infringement not occurred.

Hafeman has the burden to establish the amount of her damages by a preponderance of the evidence. In other words, you should award only those damages that Hafeman establishes that she more likely than not has suffered. While Hafeman is not required to prove the amount of her damages with mathematical precision, she must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Hafeman seeks a reasonable royalty. A reasonable royalty is defined as the money amount Hafeman and LG would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. You must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that Hafeman is entitled to recover no less than a reasonable royalty for each infringing sale.


Hafeman's Position:
LG's proposed language is unnecessary, repetitive, and prejudicial.  The parties' agreed language already makes clear that if the jury "find[s] that LG has not infringed any valid claim of the patent, then Ms. Hafeman is not entitled to any damages."  The Court has repeatedly instructed the jury with this language without additions or modifications and should do so again here.  *See, e.g.*, *Sunstone Information Defense, Inc. v. Int'l Bus. Mach. Corp.*, No. 6:20-cv-01033-ADA-DTG, ECF No. 150, at 26 (W.D. Tex. Aug. 12, 2022); *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, ECF No. 379, at 23 (W.D. Tex. Oct. 14, 2020).

LG's Position:
LG's addition is an accurate reflection of the law and would be helpful to the jury.  *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324, 1335 (Fed. Cir. 2009); Federal Circuit Bar Association Model Patent Jury Instructions § 5.1 (May 2020); AIPLA Model Patent Jury Instructions § 10.0 (2019).

It is consistent with both parties' verdict forms, which instruct the jury not to reach damages if claims are invalid or not infringed.

**JURY INSTRUCTION NO. 46:  REASONABLE ROYALTY (DEFINITION)**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time before the infringement first began.  Ms. Hafeman bears the burden of proving the amount of a reasonable royalty by a preponderance of the evidence.

In considering this hypothetical negotiation to determine a reasonable royalty in this case, you should focus on what the expectations of Ms. Hafeman and LG would have been had they acted reasonably in their negotiations and had they entered into an agreement just before any infringement began.  In determining this, you must assume that both parties believed the claims that you found valid and infringed were valid and would be infringed and that Ms. Hafeman and LG were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**JURY INSTRUCTION NO. 47:  REASONABLE ROYALTY—RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

    (1)    The value that the claimed invention contributes to the accused products.

    (2)    The value that factors other than the claimed invention contribute to the accused products.

    (3)    Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

    (4)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

    (5)    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

    (6)    The duration of the patent and the term of the license.

    (7)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

    (8)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty LG would have been willing to pay, and the patent holder Hafeman would have been willing to accept, acting as normally prudent business people.

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes for or alternatives to the patented invention.  A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result without infringing the patent.  A non-infringing alternative need not have been actually used to be relevant to the hypothetical negotiation.  You may also consider the utility and advantages of the patented technology over any non-infringing alternatives that could be used for achieving similar results.

Hafeman's Position:

The additional factors proposed by LG are not included in the Federal Circuit Bar Association's Model Patent Jury Instruction § 5.8 and should not be included here.  LG's proposed additional language on non-infringing alternatives is unnecessary and inconsistent with instructions issued by this Court.  *See, e.g.*, *Sunstone Information Defense, Inc. v. Int'l Bus. Mach. Corp.*, No. 6:20-cv-01033-ADA-DTG, ECF No. 150, at 29 (W.D. Tex. Aug. 12, 2022) (instructing the jury only that "[i]n determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes for or alternatives to the patented invention").

LG's Position:

LG's inclusion of the additional *Georgia-Pacific* factors is warranted in this case because these factors are particularly relevant to the issues in this case.  *See* Federal Circuit Bar Association Model Patent Jury Instructions § 5.8, Committee Comments and Authorities (May 2020). LG's addition to the last paragraph is an accurate reflection of the law that will be helpful to the jury.

49

**JURY INSTRUCTION NO. 48:  DAMAGES—APPORTIONMENT**

Any amount of damages must be based on the value attributable to the patented invention, as distinct from the unpatented features of the Accused Products or other factors such as marketing or advertising, or LG's size or market position.  A royalty compensating Hafeman for damages must reflect only the value attributable to the infringing features of the Accused Product or its performance of the method, and no more.  As a result, the plaintiff cannot obtain compensation based on the whole infringing product when the patented technology makes up only a part of that product.  In other words, any damages award must apportion (separate out) the value of the Android and Windows Find My Device programs that is attributable to the patented technology.

In this case, that rule means that when you determine a reasonable royalty, you may not award damages based on LG's entire revenue from the Accused Products.  Instead, you may award damages based only on the revenue that is attributable to the use of the patented technology in infringing features of the Android and Windows Find My Device programs, and you must separate and exclude value attributable to non-infringing components and non-infringing functions of those products.  In addition, you may not award damages based on LG's revenue from products that you do not find to have infringed.

Ms. Hafeman bears the burden to establish the amounts attributable to the patented feature and not to other technologies, features, or aspects of the accused Find My Device programs or the Accused Products in general.  Ms. Hafeman's evidence must be reliable and tangible: it cannot be speculative.  Any evidence of a reasonable royalty must carefully tie proof of damages to the claimed invention's role in the marketplace.

Hafeman's Position:
The parties agree that apportionment in this case is necessary.  The parties' agreed language is sufficient to convey this fact, and the additional language proposed by LG is unnecessary, repetitive, and prejudicial.  LG's final proposed paragraph is also misleading and prejudicial.  As explained in Ms. Hafeman's opposition to LG's motion to exclude certain opinions of Dr. Scott Schaefer, "absolute precision" is not required in an apportionment, and "it is well-understood that this process may involve some degree of approximation and uncertainty."  *Virnext, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014).

LG's Position:
LG's proposals are an accurate reflection of the law and would be helpful to the jury.  *See Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 646-47 (1915); *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349-50 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310-11 (Fed. Cir. 2018); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-28 (Fed. Cir. 2014); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337-38 (Fed. Cir. 2009); Federal Circuit Bar Association Model Patent Jury Instructions § 5.12 (May 2020).  Ms. Hafeman bears the burden on apportionment, which is a disputed issue in this case.

**JURY INSTRUCTION NO. 49:  DAMAGES—COMPARABLE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form (i.e., as a running royalty or a lump sum payment) of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

**JURY INSTRUCTION NO. 50:  DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS**

In determining the amount of damages, you must consider when any alleged damages began. Damages commence on the date that LG has both infringed a valid patent claim and been notified of the alleged infringement of the '287, '122 and '393 Patents.

If you find that a product has been sold or licensed, by Ms. Hafeman or a third party authorized by Ms. Hafeman, that includes the claimed invention, you must determine whether that product has been "marked" with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the number of the patent or a related patent patent's number (i.e., 9,892,287; 10,325,122; or 10,789,393) on substantially all of the products that include the patented invention. The marking requirement may also be satisfied by including with the product the word "patent" or the abbreviation "pat." together with an internet address to a posting that associates the patented articles with the number of the applicable patents.  For software that is downloaded from a website, the webpage on the home page or download page of the website through which customers download the patented product is the item that should be marked. Ms. Hafeman has the burden of establishing that she substantially complied with the marking requirement. This means Ms. Hafeman must show that substantially all of the products made, offered for sale, or sold under the '287, '122 and '393 Patents have been marked and that reasonable efforts were made to ensure that licensees who made, offered for sale, or sold products under the '287, '122 and '393 Patents marked the products.

If Ms. Hafeman or her licensees have not marked practicing products with the patent number, you must determine the date that LG received actual notice of each of the '287, '122 and '393 Patents and of the specific product alleged to infringe. Actual notice means that Ms. Hafeman communicated to LG a specific charge of infringement of the '287, '122 and '393 Patents by a specific accused product or device.

The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed (July 2, 2021). However, Ms. Hafeman claims to have provided actual notice prior to filing of the complaint, on March 29, 2018, when Tangible IP sent an email to LG.  Ms. Hafeman has the burden of establishing that it is more probable than not LG received notice of infringement on March 29, 2018.

If you find that products sold under the '287 Patent, '122 Patent, or '393 Patent have been properly marked, then the marking and notice requirements do not affect the damages period. If you find that the '287 Patent, '122 Patent, or '393 Patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began. If you find that the '287 Patent, '122 Patent, or '393 Patent was granted after the infringing activity began, damages should be calculated as of the date that the '287 Patent, '122 Patent, or '393 Patent issued.

If you find that any of the Asserted Claims of the '393 Patent are valid and infringed and that products sold under the '393 Patent have been properly marked with the patent number, then the marking and notice requirements do not affect the damages period, and damages period should begin no later than September 29, 2020 (the date the '393 Patent issued).

If you find that any of the Asserted Claims of the '122 Patent are valid and infringed and that products sold under the '122 Patent have been properly marked with the patent number, then the marking and notice requirements do not affect the damages period, and damages period should begin no later than June 18, 2019 (the date the '122 Patent issued).

If you find that any of the Asserted Claims of the '287 Patent are valid and infringed and that products sold under the '287 Patent have been properly marked with the patent number, then the marking and notice requirements do not affect the damages period, and damages period should begin as of February 13, 2018 (the date the '287 Patent issued).

If you find that any of the Asserted Claims of the '287, '122, or '393 Patents are valid and infringed and that products sold under the patents were not properly marked with the patent number prior to the filing of this lawsuit (July 2, 2021), then the damages period should begin as of July 2, 2021.

Hafeman's Position:
As explained in Ms. Hafeman's opposition to LG's motion for summary judgment regarding pre-suit damages, ECF No. 123, marking products with a parent patent number as Ms. Hafeman did is sufficient to provide constructive notice and satisfy the marking requirement.

LG's Position:
LG's inclusion of the statements in the second paragraph accurately reflect the law and are helpful to the jury. *See* Federal Circuit Bar Association Model Patent Jury Instructions § 5.10 (May 2020); *Northbrook Digit. Corp. v. Browster, Inc.*, No. 06-4206, 2008 WL 4104695, at *4 (De. Minn. Aug. 26, 2008). They make it clear the patent numbers that need to have appeared for marking and where those patent numbers must appear. LG's last three paragraphs more accurately reflect the law as opposed to Plaintiff's proposal because marking is assessed on a patent-by-patent basis.

LG objects to Hafeman's proposal for the fifth paragraph because it groups the patents together, and improperly suggests that marking with one patent is sufficient under 35 U.S.C. § 287(a) for other patents. Hafeman has the burden to prove marking for each patent. Similarly, LG objects to Hafeman's inclusion of "or a related patent" in the second paragraph as contrary to law. The rule is clear—"the plain language of the marking statute provides that the patented article be marked with 'the number of the patent'." *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1278 n.5 (Fed. Cir. 2016) (quoting 35 U.S.C. § 287(a)); *see also Malico, Inc. v. Cooler Master USA, Inc.*, No. C 11-4537-RS, 2013 WL 4482503, at *8-9 (N.D. Cal. Aug. 20, 2013) (granting summary judgment of no pre-suit damages for failure to properly mark the specifically asserted patent and further ruling that marking with a different, unasserted patent number did not suffice (citations omitted)).

**JURY INSTRUCTION NO. 51:  DUTY TO DELIBERATE; NOTES**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during the trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

**JURY INSTRUCTION NO. 52:  SOCIAL MEDIA INSTRUCTION**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, a smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

**GLOSSARY**

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations. definitions.

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a claimed invention is described in a single prior art reference or system and, therefore, is not considered new and is not entitled to be patented.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

**Enablement:** A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention without undue experimentation. The specification of the patent must contain such an enabling description.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, or sells a patented

invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing, urging or encouraging another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer, one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for noninfringing uses.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the words "requirement" and "element."

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the invention.

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed. When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Evidence that the claimed invention was already known or would have been obvious. This evidence includes items that were publicly known or that have been used or offered for sale, or references such as publications or patents.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Requirement:** A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement)

of the claim is found in the device or method.

**Royalty**: A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification**: The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.