**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| CAROLYN W. HAFEMAN, an Individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, INC., a Korean Corporation,<br><br>　　　　Defendant. | Civil Action No.: 6:21-cv-00696-ADA-DTG |

**CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER**

Before the Court are the Parties' claim construction briefs: Defendant LG Electronics, Inc.'s, ("Defendant") Opening and Reply briefs (ECF No. 49 and 53, respectively), Plaintiff Carolyn W. Hafeman's ("Plaintiff") Response and Sur-Reply briefs (ECF No. 51 and 55, respectively), and the Parties' Joint Claim Construction Statement (ECF No. 58). This matter was referred to the undersigned on April 19, 2022 (ECF No. 59) for disposition. The Court considered the Parties' briefs and provided preliminary constructions in advance of the *Markman* hearing. A *Markman* hearing was held on April 27, 2022.

## I.　　BACKGROUND

Plaintiff alleges that Defendant infringe claims 1, 4, and 7 from U.S. Patent No. 9,892,287 ("the '287 patent"), claims 1, 4, and 7 from U.S. Patent No. 10,325,122 ("the '122 patent"), and claims 1, 4, and 7 from U.S. Patent No. 10,789,393 ("the '393 patent") (collectively, the "Asserted Claims" and "Asserted Patents"). Among the Asserted Claims, the parties dispute the

constructions of five terms and have agreed to the construction of one term. ECF No. 58 (Joint Claim Construction).

## II.        DESCRIPTION OF THE ASSERTED PATENTS

The Asserted Patents, each titled "Computer Recovery or Return," are from the same patent family and share a common specification. As such, all citations to the specification will refer to the '287 patent, but apply equally to the '122 and the '393 patent. The Asserted Patents are directed to the use of a recovery screen to help in the return of lost or stolen computing devices. *See, e.g.*, '287 patent at 1:22–26.

When the Retriever Program (the recovery screen software) is installed, the owner is "required" to input "recovery information" including phone and email information, as shown in Fig. 8 below (highlighted), which thereafter causes a "Recovery/Return information screen," as shown in Fig. 2 below (highlighted), to be automatically displayed whenever the computer is turned on. *Id.* at 5:60-6:13, 8:39-44, 2:41-47.



FIG.8

```
                    Workstation Locked

[Picture]    The Retriever by Worldsecurity Corp.
Red Stop
Sign w/white The workstation has been locked. This equipment is protected
word STOP    against theft by the World Security Corp. International
             Registration and Recovery System. The Retriever Program has
             been installed to help stop theft, protect information and recover
             lost or stolen equipment.


             To Indentify Rightful Owner & Avoid Prosecution CALL NOW :

             [Recovery Name/(input from database / required)]
             [Organization Name / ABC Corp/ input/ not required]
             [Address 1 / input from database / not required]
             [Address 2 / input from database / not required]
             [City] [State] [Zip / all of these input from database / not required]
             [Phone 1 / input from database / required][Phone 2 / not required]
             [Email / input from database / required][Fax / not required]

             OR VISIT
[Picture]    www.worldsecuritycorp.com/lostandfound.html
Retriever Logo Email : lostandfound@worldsecuritycorp.com
             Phone : 1-800-xxx-xxxx

             Registration # : xxxxxxxxxxxxxx (sequential number unique to each
                                              software license)


                 User  :   [_____]

                 Password :  [_____]


                  [OK]                        [SHUTDOWN]
          (moves user to operating system with  (initiates operating system
                correct password)                    shutdown)

                          FIG.2
```

The Recovery/Return screen must be displayed before the operating system, and the display must remain displayed until the user satisfies a security prompt. *Id*. at 10:32-38. In fact, the Recovery/Return screen is displayed when a computer is turned on by the owner (remotely) or anyone else. *Id*. at 6:49-52; 7:58-59; 10:43-45.

In sum, the present invention automatically initiates during the boot-up process of the computer, in order to display the recovery/return information before a security prompt screen, to protect the owner's confidential information on the hard drive. *Id*. at 2:43-47. Furthermore, the Recovery/Return screen may also be manually initiated by locking the computer or automatically initiated with a screensaver. *Id*. at 16:37-40, 46-55.

In addition, an owner may remotely change the recovery information stored on the computer. Therefore, if the user, who is in physical possession of the computer, is a disgruntled employee who reports the computer as stolen, but is still using it or has sold it, the owner may still remotely update the recovery information. *Id*. at 14:4-12.

## III.      LEGAL STANDARDS

### A.  Claim Construction Generally

The general rule is that claim terms are given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").  The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term."  *Id.*

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.,* 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves

little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). But for claim terms with less-apparent meanings, courts consider "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean[,] [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116).

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "Distinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

"Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally

be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988).  "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).  Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent.  *Id.* at 1318.  Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not.  *Id.*

### B.  Indefiniteness

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "A patent must be precise enough to afford clear notice of what is claimed," but that consideration must be made while accounting for the inherent limitations of language. *Id.* at 908–09. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

### IV.        LEGAL ANALYSIS

The parties dispute the constructions of five terms in the Asserted Patents and have agreed to the construction of one term. The parties have agreed to the following construction for the term "owner," which the Court now adopts.

| Claim Term | Agreed Construction | Court's Construction |
|---|---|---|
| #1: "owner"<br><br>(all asserted claims) | "the person or entity that owns, rents, or licenses the recovery application or program, and/or the person or entity who controls the recovery service." | "the person or entity that owns, rents, or licenses the recovery application or program, and/or the person or entity who controls the recovery service." |

The parties continue to dispute the construction of the remaining five terms, which the Court addresses in turn below:

**A. Disputed Term #1: The displaying recovery/return information limitations (all asserted claims)**

| Plaintiff's<br>Proposed Construction | Defendant's<br>Proposed Construction |
|---|---|
| Plain and ordinary meaning | "automatically displaying return/recovery information during or after every bootup" |

**The Parties' Positions:**

The Asserted Claims all require the display of recovery/return information, albeit with slightly different language, referred to as the "RR Display" limitations. Defendant argues that the RR Display limitations should be construed as "automatically displaying return/recovery information during or after every boot-up," reasoning that Plaintiff disavowed any broader scope of RR Display limitations for three reasons. ECF No. 49 at 16-17.

First, Defendant argues Plaintiff disavowed a broader term scope through clear and unequivocal statements in the specifications, which define the present invention as requiring automatic display of return/recovery information during or after every boot-up in the Abstract as well as thirteen separate times through the specification and relating to both embodiments. ECF No. 49 at 16-17.

Second, Defendant argues Plaintiff disavowed a broader term scope by distinguishing or disparaging prior art based on the absence of that broader scope. ECF No. 49 at 19 (citing Poly-Am., 839 F.3d at 1136). For example, in the Background of the Invention, the specification distinguishes the "present invention" from physical labels that attach to the outside of the computer equipment by stating, "the present invention also helps protect the important, confidential owner information on the hard drive, by the positioning of the program layer in the equipment boot-up process." ECF No. 49 at 19 (citing '287 patent at 1:58-65).

Third, Defendant argues Plaintiff disavowed a broader term scope through clear and unequivocal statements in the prosecution history, as well as Plaintiff's public statements, regarding her alleged invention. ECF No. 49 at 16. For example, during prosecution of a parent application, Plaintiff submitted six declarations purporting to detail the commercial success of her Retriever program, which is the same program discussed in detail in the specification, in an attempt to show that her claims were unique and novel. ECF No. 49 at 21. In each of these declarations, Plaintiff unequivocally states, "The [Retriever] product displays before or during boot-up," and that the product's success is based on this unique way of solving a problem. ECF No. 49 at 21. Thus, Defendant argues given the clear disavowal of the broader plain and ordinary meaning in both the specification and the prosecution history, the Court should construe the "RR Display" phrases as "automatically displaying return/recovery information during or after every boot-up."

The Plaintiff argues that Defendant's construction is unnecessary, because although the specification describes embodiments in which the screen that contains the displayed return/recovery information appears "automatically" after the device's power is turned on and the operating [system] is activated (but before the user logs-in), the claim language in which these

phrases appear already dictate how and when the recited screen containing the claimed return or recovery information appears on the device. ECF No. 51 at 10.

Plaintiff also argues Defendant's construction is problematic for three reasons. First, the "during or after every boot-up" requirement directly conflicts with the specification embodiment in which return/recovery information is initiated using a "screen saver timer feature." ECF No. 51 at 10-11 (quoting '287 patent at 16:46–55). Plaintiff claims this embodiment has nothing to do with the boot-up process; rather, the return/recovery information is initiated after the computer has been sitting idle for a certain period of time. ECF No. 51 at 12 (citing ECF No. 49 at 19). Furthermore, though Defendant actually describes this embodiment in its description of the patents, ECF No. 49 at 9, Defendant does not explain how its proposed construction squares with it. Rather, Defendant points to specification statements in which Plaintiff describes her invention's improvement over existing art, contending that these rise to the level of a "disavowal." *Id.* at 17-20. "To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.' In general, statements about the difficulties and failures in the prior art, without more, do not act to disclaim claim scope." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (quoting *Epistar Corp. v. Int'l Trade Comm'n*, 566, F.3d 1321, 1335 (Fed. Cir. 2009)). Thus, Plaintiff's statements do not meet the "exacting" standard required for disavowal. *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

Second, Plaintiff argues Defendant's construction conflicts with the invention's description in the prosecution history. ECF No. 51 at 11. Defendant argues that prosecution statements in Plaintiff's declarations regarding her inventions' commercial success and unique design constitute

a "disclaimer," ECF No. 49 at 21; but Defendant fails to explain how these statements support its position.

"[I]n order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013). "Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' [the Federal Circuit has] declined to find prosecution disclaimer." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (quoting *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003). "The party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a 'clear and unmistakable' disclaimer." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016).

Defendant does not come close to carrying its burden. The very first statement on which Defendant relies directly contradicts its proposed construction. The quoted language states: "The [Retriever] product displays before or during boot-up." ECF No. 49 at 21. LG's proposed construction, however, requires that return/recovery information be "display[ed] . . . during or after every boot-up." Thus, Defendant construction does not allow for display to occur "before" boot-up, only "during or after."

The other statements Defendant cites regarding the invention's commercial success and "unique design" do not rise to the level of prosecution disclaimer because they describe some, but not all, aspects of the invention. *See Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1375 (Fed. Cir. 2004) ("[The patentee's] statements in the prosecution history do not indicate a disavowal or disclaimer of claim scope, but merely provide an example to illustrate differences between the invention and the prior art.")

Third, Defendant claims the construction creates ambiguity where none exists by adding words, including "automatically" and "during or after every boot-up," that may require further construction to know when the construction is satisfied. ECF No. 51 at 11. Plaintiff argues there are two reasons this construction is unnecessary. First, LG's construction requires that the return/recovery information be displayed "during or after every boot-up." Yet, Defendant then contends "the automatic display of return/recovery information before or during every boot-up is a defining feature of the alleged invention." ECF No. 49 at 17. Adding to the inconsistency, Defendant points to a statement made during prosecution in which Plaintiff stated: "The [Retriever] product displays before or during boot-up." *Id.* at 21 (citing, *e.g.,* ECF No. 49-A at 5-6). Defendant does not explain this obvious contradiction in its positions. *See Chamberlain Grp., Inc. v. Lear Corp.*, 516 F.3d 1331, 1339 (Fed. Cir. 2008) (rejecting district court construction that was "internally inconsistent and contradictory to the rest of the patent"). Second, as discussed, LG's construction is inconsistent with the screen saver time feature embodiment described in the specification. '287 patent at 16:37–55. While the functionality described in this embodiment arguably occurs "after" boot-up since the computer is necessarily powered on, it could occur long after it has been turned on. Defendant does not explain how long "after" would be enough to satisfy its construction. *See KEYnetik, Inc. v. Samsung Elecs. Co.*, 837 F. App'x 786, 792 (Fed. Cir. 2020) (rejecting the Board's "unreasonably broad" and "openended" construction of "after" that would allow a sleep command to be "sent days, hours, months, or even years after the executed command").

**The Court's Analysis:**

The court finds Defendant's arguments to be unpersuasive. Defendant identifies no ambiguity, nor does Defendant establish that the inventor gave these plainly-worded phrases some

special meaning or disavowed claim scope in the intrinsic patent documents. Thus, this Court finds the plain and ordinary meaning should apply. Furthermore, Defendant has no answer for the screensaver embodiment, and it shifts to a new position in reply. In its opening brief, Defendant contended that Hafeman's invention "requires automatically displaying [RR] information during or after every boot-up of the computer." ECF No. 49 at 16. In its reply, Defendant says that its construction "does not require that [RR] information be displayed only during or after boot-up," and that RR information can be displayed "at other times as well." ECF No. 53 at 6. This is reason enough to reject Defendant's construction. *See Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1355 (Fed. Cir. 2011) ("[A]sserting contradictory claim construction arguments . . . undermine[s the] claim construction argument."). Defendant's shifted position also contradicts its construction. The construction states "automatically displaying [RR] information during or after every boot-up." It does not allow for such information to be displayed "at other times." *See Chamberlain Grp., Inc. v. Lear Corp.*, 516 F.3d 1331, 1339 (Fed. Cir. 2008) (rejecting a construction that was "internally inconsistent"). For at least the foregoing reasons, the Court rejects Defendant's construction and sees no reason to deviate from giving this term its plain and ordinary meaning.

## B. Disputed Term #2: "computer recovery information" / "recovery information" / "return information" (all asserted claims)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, or alternatively | This limitation is not entitled to any patentable weight pursuant to the printed matter doctrine |
| "information provided by the owner so that the device can be returned to the owner" | "information that includes at least one of a physical address of an owner/user, a telephone number of an owner/user, an email address of an owner/user, or an international recovery web site" |

The parties dispute two aspects of this limitation. First, they dispute whether it is entitled to patentable weight pursuant to the printed matter doctrine. Second, they dispute whether it must include at least one of a physical address of an owner or user, a telephone number of an owner or user, an email address of an owner or user, or an international recovery website.

First, the Court holds that the claimed recovery information be accorded patentable weight as the printed matter doctrine is inapplicable. Second, the Court construes "computer recovery information" to mean "information provided by the owner so that the device can be returned to the owner.

### 1. *Whether the limitation is entitled to patentable weight pursuant to the printed matter doctrine*

Regarding the first disputed aspect of this limitation, the printed matter doctrine decrees that "if a limitation claims (a) printed matter that (b) is not functionally or structurally related to the physical substrate holding the printed matter, it does not lend any patentable weight to the patentability analysis." *In re Distefano*, 808 F.3d 845, 848 (Fed. Cir. 2015). The parties agree that the recovery/return information is printed matter but disagree as to whether the information is functionally or structurally related to the physical substrate holding the printed matter.

Thus, the controlling and dispositive test is "whether the printed matter merely informs people of the claimed information, or whether it instead interacts with the other elements of the claim to create a new functionality in a claimed device or to cause a specific action in a claimed process." *C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1381 (Fed. Cir. 2020).

a.   Defendant's position

LG asks the Court to hold that the term "computer recovery information" is not entitled to any patentable weight pursuant to the printed matter doctrine. LG argues that the claimed recovery information, other than simply being displayed on the computer screen, is merely descriptive and

plays no role in the functionality of the claimed device. ECF No. 49 at 5. "The initiation, changing, storage, and display do not depend on the content of the computer recovery/recovery/return information." *Id.* at 6 (internal quotations omitted).

LG contends in its Reply Brief that although the purpose of Plaintiff's invention is to increase the chance of recovering a lost computer, the claims do not present a novel way in which the displayed recovery information interacts with the underlying software. ECF No. 53 at 5. To that end, LG differentiates Plaintiff's invention from the numbers displayed on a circular band in *In re Gulack*, 703 F.2d 1381 (Fed. Cir. 1983), and from the indicia and legend conveying the volume of a measuring vessel in *In re Miller*, 418 F.2d 1392 (C.C.P.A. 1969). *Id.* at 5-6.

LG explains that in *Gulack*, the displayed numbers each reside in a unique position with respect to every other digit in an endless loop, and exploit the endless nature of the band for educational and recreational mathematical purposes. *Id.* at 6 (internal citation omitted). As such, LG points out that in *Gulack*, the underlying structure ("at least one band") interacted with the printed matter ("plurality of individual digits") to produce a unique functionality, which was to present digits in an endless sequence with no discrete beginning or end due to the nature of the band. *Id.* (internal quotations omitted).

LG further explains that in *Miller*, the underlying structure (measuring vessel) interacted with the printed matter (volumetric indicia and legend) to produce a unique functionality, which was to convey the volume of the liquid in the vessel in a ratio indicated by the legend. *Id.*

Conversely to *Gulack* and *Miller*, LG argues, the printed matter in the present case (the recovery information) does not interact with the underlying structure (the computer software) to produce new functionality (the display of recovery information when turning on the computer so that if the computer is lost, it may be returned to its owner). *Id.* Defendant emphasizes that, like in

*AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042 (Fed. Cir. 2010), removing the claimed printed matter from the claimed computer software does not change the ability of the computer to initiate or alter the display. *Id*.

In sum, the crux of Defendant's argument is that the underlying computer software which causes the display screen with the recovery information to pop up is functionally independent from the recovery information itself, instead being merely descriptive. LG thus argues that the printed matter doctrine applies in full force and asks the Court to hold that the displayed recovery information not be accorded patentable weight.

      b.  <u>Plaintiff Hafeman's position</u>

Hafeman asks this Court to hold that the term "computer recovery information" is entitled to patentable weight because LG's argued printed matter doctrine is inapplicable. Hafeman argues that the recovery information is clearly related to the computer software and is thus afforded patentable weight. ECF No. 51 at 11.

To that end, Hafeman contends in her Responsive Brief that "the return information and novel way of displaying it (before or with a security prompt) affects the functioning of the invention and makes it useful." *Id*. at 12. Hafeman also points out that "the Asserted Patents claim recovery information for returning the computer to an owner that is not just displayed, but specifically displayed before or with a security prompt." *Id*. (internal quotation omitted).

Like LG, Hafeman brings up *Gulack* and *Miller*, but unlike LG, Hafeman sees those two cases as bolstering her argument that the computer recovery information is functionally related to the underlying computer software. *Id*. at 11-13. "Like the numbers on the circular band in *Gulack* and the markings on the measuring cup in *Miller*, the recovery information on a screen before or with a security prompt has a functional relationship to the substrate." *Id*. at 13 (internal quotation

omitted). In her Sub-Reply Brief, Hafeman also distinguishes the present case from *In re Ngai*, 367 F.3d 1336 (Fed. Cir. 2004), where the Federal Circuit "denied patentable weight to printed matter because all the inventor did was 'add a new instruction sheet to the product.'" ECF No. 55 at 5.

The upshot of Hafeman's argument is that the invention functionally *depends* on the recovery information being displayed on the screen. ECF No. 51 at 13. "[W]ithout the recovery information that appears before or with a security prompt, the claimed method, apparatus, and program of displaying recovery information before or with a security prompt would not function." *Id.* (comparing *AstraZeneca*, 633 F.3d at 1065).

In sum, Plaintiff Hafeman's argument is that the invention as a whole functionally depends on the recovery information being displayed, precluding the 'computer recovery information' from the printed matter doctrine. Therefore, Hafeman asks the Court to maintain its presumption of validity because the printed matter doctrine is inapplicable.

c.   <u>Court's ruling</u>

The Court holds that "computer recovery information" / "recovery information" / "return information" be accorded patentable weight because the printed matter doctrine does not apply. The point of the invention is to require the computer to display the return information so that the computer, if lost, may be returned to its owner. Hafeman did not patent the text on the screen, nor did she patent the concept of simply viewing recovery information on a computer screen. Rather, she patented recovery information popping up on the display of a computer screen via the software she created. The Court finds the displayed recovery information to be an indispensable part of the invention and functionally related to the software.  As Plaintiff points out, the computer screen can

only function as a "display screen" if it contains the "recovery information." ECF 51 at 13.  As such, the Court finds this term to be outside the scope of the printed matter doctrine.

### 2. Construction of "computer recovery information" / "recovery information" / "return information."

#### a. Defendant's position

LG asks the Court to hold that "computer recovery information" be construed as to necessarily include at least one of (1) a physical address of an owner or user, (2) a telephone number of an owner or user, (3) an email address of an owner or user, and (4) an international recovery website. ECF No. 49 at 6.

To reach that conclusion, LG first argues that "computer recovery information" does not have an accepted meaning in the art, and therefore requires a construction no broader than the disclosure in the specification. *Id*. (citing *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1357 (Fed. Cir. 2016) (a term with "no plain or established meaning to one of ordinary skill in the art" "ordinarily cannot be construed broader than the disclosure in the specification").

LG then looks to the specification: the "recovery/return information would not only allow the display 18 of physical address return information, and owner contact telephone information, but would also provide for international internet-based recovery through the added display of owner email information, as well as the ability to display an international recovery center web site." '287 patent at 6:19-24. LG adds that Fig. 8, "which is a return administration screen of the present invention" states that "Owner Contact," "Owner Phone," "Owner Email" are "required" for "Owner Display Recovery Info." '287 patent at Fig. 8; Col. 4:37-38. LG emphasizes the importance that claims have objective boundaries, arguing that any construction that goes beyond

the information provided in the specification becomes so vague as to discourage innovation. ECF No. 49 at 7-8.

In sum, LG asks this Court for a narrow reading of "computer recovery information." To that end, LG first argues that the term does not have an ordinary and accepted meaning. Therefore, LG explains, the Court should look to the specifications which, in LG's view, limit the construction of "computer recovery information" to include at least one of (1) a physical address of the owner or user, (2) a telephone number of an owner or user, (3) an email address of an owner or user, and (4) an international recovery website.

### b.  Plaintiff Hafeman's position

Hafeman asks the Court to hold that "computer recovery information" be given its plain and ordinary meaning, and that alternatively, be construed to mean "information provided by the owner so that the device can be returned to the owner." ECF No. 51 at 13-14.

Hafeman first contends that a POSITA would understand the meaning of "computer recovery information" without needing to examine the patent specifications. *Id*. at 14. Hafeman then attempts to refute LG's proposed reading of "computer recovery information" by explaining that LG's "cobbled-together list" is based on a line in the specification that would "allow" for the display of information as required—not that the recovery information must include one of the four listed items. *Id.*

Hafeman suggests construing the term as "information provided by the owner so that the device can be returned to the owner." She points to another line in the specification: return information is information "for returning the computer to the owner from the data stored in the memory." '287 patent at 3:37-43, 3:46-53, 3:56-61.

The specification further explains that "[d]uring the installation process, the owner will be prompted to provide some recovery/return information that the owner would like displayed; for example, contact name, phone and email information." *Id.* at 8:39-43. Hafeman then points out that separately, the specification provides an expressly non-exclusive list of examples of such information: "The information screen can include any of the following items […] including but not limited to: contact name, organization name, owner address [etc.]" ECF No. 51 at 14-15.

Lastly, Hafeman argues that LG's construction "does not even accurately reflect the disclosed embodiment." *Id.* at 15. Hafeman accuses LG of using an embodiment as a substitute for the actual claim language. "Figure 6 is a representation of a return screen of the present invention." *Id.* at 16 (internal citation omitted). Hafeman argues that whether to make any of LG's purportedly required information is in fact optional, as is illustrated by Figures 6, 9, 10, and 11. *Id.*

The thrust of Hafeman's argument is that, as explained in the specification, Hafeman intended for the recovery/return information to be flexible and customizable. *Id.* at 15. Hafeman sees more means than the four means listed by LG to get in touch with the owner of the lost computer, such as social media account or an organization name. *Id.* at 16, 17.

In sum, Hafeman asks the Court to hold that computer recovery information be accorded its plain and ordinary meaning, and alternatively, be construed to mean "information provided by the owner so that the device can be returned to the owner."

c.   Court's ruling

The Court holds that "computer recovery information" / "recovery information" / "return information" means "information provided by the owner so that the device can be returned to the owner." First, "computer recovery information" is a not necessarily a common enough phrase that would require no construction. Second, Hafeman's construction captures the full scope of the plain

and ordinary meaning of the invention (as understood by a person of skill in the art) without importing additional limitations, which is exactly what Defendants' proposal would do. Finally, the Court agrees with Hafeman that whether the recovery information would actually allow recovery of the computer is an objective measure and does not invite ambiguity.

### C. Disputed Term #3: "without assistance by [a/the] user" (all asserted claims)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "without any input or action by the user" | Plain and ordinary meaning (except for construction of "user") |

**The Parties' Positions:**

LG argues for adopting the plain and ordinary meaning of "without assistance by [a/the] user" (except for the construction of "user" below), while Hafeman argues for construing this term to mean "without any input or action by the user." The Court holds that "without assistance by [a/the] user" be accorded its plain and ordinary meaning.

a.   Defendant's position

LG asks the Court to adopt the plain and ordinary meaning of "without assistance by [a/the] user."

First, LG argues that Hafeman neither acted as her own lexicographer nor disavowed the full scope of the term in the specification or during prosecution. ECF No. 49 at 21. LG points out that "the specification does not use the word 'assistance', much less define the phrase 'without assistance by [a/the] user." *Id*. Thus, LG argues, the term should be given its plain and ordinary meaning.

Second, LG contends that Hafeman's proposed construction ("without any input or action by the user") would exclude a preferred embodiment of the specification where a user must perform an action (press CTR+ALT+DEL on a computer with a Windows operating system) before the screen with the recovery/return information is displayed. *Id*. (citing '287 patent at 7:37-44).

In sum, LG argues for the plain and ordinary meaning of "without assistance by [a/the] user" because Hafeman has neither acted as her own lexicographer, nor has she disavowed the full scope of the term in the specification or during prosecution. Further, LG adds, Hafeman's proposed construction "without any input or action by the user" is inconsistent with a preferred embodiment that would require the user to press CTR+ALT+DEL before the recovery/return information is displayed.

b.    Plaintiff Hafeman's position

Hafeman asks the Court to hold "without assistance by [a/the] user" to mean "without any input or action by the user." ECF No. 51 at 17.

Hafeman argues that LG's suggested "plain and ordinary meaning" construction is "nonsensical" because "no computing device can display a screen unless it is powered on, and its processor activates the operating system." *Id*. at 18.

Hafeman also argues that the claim language in which the term appears recites "initiating or changing return information which appears on the display through remote communications without assistance by a user with the computer." *Id*. (citing '287 patent at 17:22-24). The idea being: once the computer is powered on, and the operating system is activated, the display screen showing the return information can be initiated or changed remotely without any input or action by the user, including any user input to log in or otherwise access the computer. *Id*.

Hafeman further bolsters the reasoning behind her proposed construction by citing the specification which discusses multiple embodiments in which there is no input or action by the user to initiate or change return/recovery information. *Id*. For example, Hafeman claims, the specification repeatedly emphasizes that this is an "important" or "critical" aspect of the invention because if such information was only displayed after the password screen, and the user did not know the password (a likely occurrence), then the return/recovery information would never be visible. *Id*. at 19 (citing '287 patent at 5:10-12, 5:33-39, 6:30-40, 7:20-31, 8:30-33, 10:32-34).

The upshot of Hafeman's argument is that no screen can be displayed on any computing device unless the device is first powered on and the operating system is activated. The specification itself describes how the user must still turn on the device and activate the operating system before the recovery information can be displayed, so surely, Hafeman argues, "without assistance by [a/the] user" means "without any input or action by the user."

**The Court's Analysis:**

The Court construes "without assistance by [a/the] user" to have its plain and ordinary meaning. Hafeman did not satisfy either of the two exceptions to the general rule that a term be given its plain and ordinary meaning. The expression is not defined anywhere in the patent, was neither fully disavowed anywhere in the specification nor during prosecution. The plain and ordinary meaning of "without assistance by [a/the] user" does not add any limitations, while Hafeman's proposed construction simply substitutes "any input or action" for the word "assistance."

**D.  Disputed Term #4: "user" (all asserted claims)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "person who has physical possession of the device" | "person, other than the owner, who has physical possession of the device" |

The parties agree that a user is a person who has physical possession of the device. The primary dispute is whether the claimed "user" with the computer can be the same person as the owner. Defendant argues Plaintiff should be estopped from arguing that the user and owner could be the same person for two reasons. ECF No. 49 at 24. First, Defendant contends Plaintiff disclaimed the owner and user were the same person during the prosecution of a parent application, ECF No. 49 at 23, and second, Plaintiff's proposed constructions would result in facially nonsensical claim. ECF No. 49 at 24.

### i.  Whether Plaintiff Disclaimed the owner and the user were the same person

First, Defendant contends Plaintiff, during the prosecution of a parent application to all the Asserted Patents, disclaimed the owner and user were the same person, ECF No. 49 at 23, by distinguishing their invention from a prior art reference that required a "user" to press a key on the computer to allow the "owner" to remotely change the ownership information. ECF No. 49 at 25. In doing so, Defendant argues Plaintiff secured allowance of the claims by disclaiming the scenario where the owner could be the same as the user. ECF No. 49 at 25.

Plaintiff responds that the prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's reasonably clear and deliberate disavowal of claim coverage. ECF No. 51 at 30 (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003)). In support, Plaintiff argues that the distinction drawn for the patent examiner during prosecution merely distinguished the present invention by identifying that it required no user input to allow a remote owner to alter the recovery information, ECF No. 51 at

31, making no reasonably clear or deliberate disclaimer that the owner and user could be the same person.

The Court finds no clear and deliberate assertion was made that Plaintiff surrendered the relevant subject matter, because Plaintiff made no explicit statement that the persons occupying each role must be separate people.

### ii. Whether Plaintiff's proposed constructions would result in facially nonsensical claim

Second, Plaintiff's proposed constructions would also result in facially nonsensical claim, because the claims of the '287 patent require that the person accomplishing the remote communication (the "owner") must be different from the "user with the computer." ECF No. 49 at 24. Defendant notes the specification teaches that the "owner" and "assigned to user" of the equipment may or may not be the same people, but argues the claims do not recite an "assigned to user," only a "user with the computer" other than the owner who has physical possession of the device. ECF No. 49 at 26.

Plaintiff argues no part of the claim language suggests that an owner cannot be a user. ECF No. 51 at 28-29. Plaintiff also argues the function of the invention is that "a user with the computer" does not assist in initiating or changing the recovery information, not that the invention enables, or requires, the person(s) occupying the owner role and the user role to be distinct. ECF No. 51 at 29.

The Court does not find the proposed construction nonsensical. Though the claims delineate the "owner" and "user," there is no express statement given that these terms need be anything more than functional roles used to define the invention. Furthermore, the Court finds Defendant's attempt to strictly equate the "assigned to user" of the specification and the "user with the computer" of the claims, in all possible situations, unsupported. One does not have to go

beyond the Field of the Invention to encounter a situation where the "assigned to user" of the specification and the "user with the computer" of the claims are different people. Thus, the "user with the computer" may be an "owner", an "assigned to user", or another (perhaps "unauthorized" or "finder") user.

Indeed, the purpose of the displayed recovery information may be moot when the "user with the computer" is anyone but a finder user, perhaps eliminating the purpose of displaying the recovery information. But let us not confuse the purpose with protected function. The function of displaying the owner's recovery information, that may be remotely altered, to any user is what is patented. Defendant attempts to read an exception to the invention purpose into the patented function. Furthermore, the claims expressly state the "return information is visible to anyone viewing the display screen;" then, in the very next clause, state the return information may be altered on the display to "without assistance by a user." '287 Patent, 17:18-24. This implies that the current user viewing the return information may be anyone. Thus, the "user" of the claims "may or may not be the owner;" therefore, the Court holds that the correct construction is "person who has physical possession of the device," which may be the owner.

### E.  Disputed Term #5: "the additional information" (claim 7 of the '287 patent)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

**The Parties' Positions:**

     b.  <u>Defendant's Position</u>

Defendant argues the term "the additional information" is indefinite because in the view of the intrinsic record, a POSITA would not know with reasonable certainty to what information the term refers. ECF No. 49 at 28. According to Defendant, the intrinsic record suggests that "additional information" could refer to "recovery information," "advertisements, logos, pictures, or designs," or any information other than recovery information. ECF No. 49 at 29. In support, Defendant provides four examples.

First, Defendant points out the claim recites both "initiating or changing the recovery information," and "initiating or changing of the additional information," which might lead a POSITA to believe "additional information" is at least part of the "recovery information. ECF No. 49 at 29 (quoting '287 patent at 18:41-45).

Second, Defendant notes the specification teaches that an important feature of the security program is that it can display other information in the form of logos, pictures, and designs. ECF No. 49 at 29.

Third, Defendant notes the specification teaches that the Retriever program allows the owner to assign values to "extra data fields." ECF No. 49 at 29 (citing '287 patent at 16:61-64).

Fourth, Defendant notes other intrinsic evidence further adds to the uncertainty as the term "additional information" appears in claims of related patents. ECF No. 49 at 30.

Defendant also notes that aside from the intrinsic record, during the meet and confer process, Plaintiff suggested that "the additional information" was a typographical error and should refer to "recovery information" instead. ECF No. 49 at 31. Defendant argues a district court can correct an error in a patent by interpretation of the patent "only if (1) the correction is not subject to reasonable debate based on considerations of the claim language and the specification and (2)

the prosecution history does not suggest a different interpretation of the claims." ECF No. 49 at 31 (citing *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003)).

Regarding the first element, Defendant argues there is reasonable debate, based on the claim language and the specification, that the use of "additional information" is a typographical error. ECF No. 49 at 31. As support, Defendant references the previous discussion regarding the specification's teaching of other types of information to be displayed with the recovery/return information. ECF No. 49 at 31. Furthermore, Defendant adds that the parent patents confirm that the patentee previously claimed, "displaying recovery/return information" and "initiating and changing additional information," consistent with the current claim, noting that related patents with identical claim terms are treated as intrinsic evidence. ECF No. 49 at 31.

Regarding the second element, Defendant argues that the record shows multiple reasonable interpretations for the claim, including (1) "advertisements, logos, pictures, or designs" or (2) recovery information. ECF No. 49 at 31-32. As support, Defendant cites *Ocean Semiconductor* out of the Eastern District of Texas, where the parties disputed whether "said process chamber," which undisputedly lacked antecedent basis, could be corrected to mean "said process tool." ECF No. 49 at 32 (citing *Ocean Semiconductor LLC v. Huawei Device USA, Inc.*, Case No. 4:20-CV-00991-ALM, 2022 WL 389916, at *13-14 (E.D. Tex. Feb. 8, 2022)). The court found the intended scope of the claim subject to reasonable debate because "said process chamber" could mean either "a process chamber" or "a process tool," as confirmed by other claims which recited both "process chambers" and "process tools." ECF No. 49 at 32 (citing *Ocean Semiconductor*, 2022 WL 389916 at *13-14). As a result, the court found the claim indefinite. ECF No. 49 at 32 (citing *Ocean Semiconductor*, 2022 WL 389916 at *13-14). Here, Defendant argues, both "recovery information" and "additional information" are claimed in other claims, so "the additional

information" could mean either "recovery information" or "advertisements, logos, pictures, or designs," and therefore, is indefinite. ECF No. 49 at 32.

      c.  <u>Plaintiff Hafeman's Position</u>

Plaintiff argues the plain and ordinary meaning should be used because the lack of an antecedent basis does not render a claim indefinite as long as the claim apprises one of ordinary skill in the art of its scope. ECF No. 51 at 32.

First, Plaintiff argues after considering the '287 patent's claim language, a POSITA would ascertain with reasonable certainty that "the additional information" refers to "the recovery information." ECF No. 51 at 33. As support Plaintiff cites the sentence structure of claim 7, which talks about "initiating or changing the recovery information" and then again references "initiating or changing" immediately thereafter with respect to "the additional information." ECF No. 51 at 33.

Second, Plaintiff states that "additional information" is not used anywhere in the specification such that a POSITA would question the obvious reading of "the additional information" as "the recovery information." ECF No. 51 at 33. Furthermore, Plaintiff notes Defendant's argument surrounding phrases of "ads, logos, and pictures," ECF No. 49 at 31-32, occur in the specification only once. ECF No. 51 at 34. Therein, Plaintiff explains that such items can be displayed onto the recovery screens of protected equipment, clearing using them as examples recovery screen content. ECF No. 51 at 34.

Third, Plaintiff notes Defendant relies on three patents with dissimilar claim language instead of the other two Asserted Patents in this case to introduce confusion. ECF No. 51 at 34. In support, Plaintiff asserts, when compared with claim 7 of the other two Asserted Patents, which include the exact same language (with the exception of "the additional information"), again it is

clear that this term refers to "the recovery information." ECF No. 51 at 35. Fourth, Plaintiff argues the examiner did not reject any claims for indefiniteness, which supports the conclusion that "the additional information" is not indefinite. ECF No. 51 at 36.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Defendant that the term is indefinite.

As an initial matter, the Court agrees with the parties that the term lacks antecedent basis. But "the lack of an antecedent basis does not render a claim indefinite as long as the claim apprises one of ordinary skill in the art of its scope, and therefore, serves the notice function required by § 112 ¶ 2." *In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018). Rather, whether a claim, "despite lack of explicit antecedent basis … nonetheless has a reasonably ascertainable meaning must be decided in context." *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006).

The Court does not find Plaintiff's arguments persuasive for at least the following reasons. First, the consistency of the claim language across a number of patents within the same patent family appears to show that the use of the term "the additional information" to be a conscious decision. Second, when the usage of "additional information" is paired with the examples such as advertisements, logos, recovery information, etc., *as well as* "recovery information," the term does not provide sufficient bounds.

While plaintiff argues that the usage of "the additional information" is a typographical error, it is apparent that this term was deliberately used in other patents and was likely improperly inserted here. It is not the Court's job to rewrite (or proofread) claim language. As such, the Court finds the term is indefinite.

V.        CONCLUSION

The Court hereby ADOPTS the following Claim Constructions.

| Claim Term | Court's Construction |
|---|---|
| The display recovery/return information limitations<br><br>(all asserted claims) | Plain and ordinary meaning |
| "computer recovery information" / "recovery information" / "return information"<br><br>(all asserted claims) | "information provided by the owner so that the device can be returned to the owner" |
| "without assistance by [a/the] user"<br><br>(all asserted claims) | Plain and ordinary meaning |
| "user"<br><br>(all asserted claims) | "person who has physical possession of the device" |
| "the additional information"<br><br>(claim 7 of the '287 patent) | Indefinite |

The Court further ORDERS each party not to refer, directly or indirectly, to its own or any other party's claim construction positions in the presence of the jury. Likewise, the Court ORDERS the parties to refrain from mentioning any part of this opinion, other than the actual positions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the positions adopted by the Court.

**SO ORDERED,** this 17th day of April, 2023.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE