**FILED**

April 28, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ Jennifer Clark

DEPUTY

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| CAROLYN W. HAFEMAN, an Individual | |
| Plaintiff, | **CIVIL ACTION NO.:** |
| | **6:21-cv-00696-ADA-DTG** |
| v. | |
| LG ELECTRONICS INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

**FINAL JURY INSTRUCTIONS**



# Table of Contents

JURY INSTRUCTION NO. 13: JURY CHARGE .................................................................................1

JURY INSTRUCTION NO. 14: EVIDENCE.....................................................................................2

JURY INSTRUCTION NO. 15: WITNESSES...................................................................................3

JURY INSTRUCTION NO. 16: DEPOSITION TESTIMONY .............................................................4

JURY INSTRUCTION NO. 17: FOREIGN LANGUAGE TESTIMONY ................................................5

JURY INSTRUCTION NO. 18: EXPERT TESTIMONY.....................................................................6

JURY INSTRUCTION NO. 19: INTERROGATORIES........................................................................7

JURY INSTRUCTION NO. 20: LIMITING INSTRUCTION ...............................................................8

JURY INSTRUCTION NO. 21: DEMONSTRATIVE EXHIBITS.........................................................9

JURY INSTRUCTION NO. 22: BIAS—CORPORATE PARTY INVOLVED ......................................10

JURY INSTRUCTION NO. 23: BURDEN OF PROOF ....................................................................11

JURY INSTRUCTION NO. 24: PREPONDERANCE OF THE EVIDENCE ..........................................12

JURY INSTRUCTION NO. 25: CLEAR AND CONVINCING EVIDENCE ..........................................13

JURY INSTRUCTION NO. 26: SUMMARY OF CONTENTIONS ......................................................14

JURY INSTRUCTION NO. 27: PATENT CLAIMS ........................................................................15

JURY INSTRUCTION NO. 28: INFRINGEMENT GENERALLY ......................................................17

  JURY INSTRUCTION NO. 29: DIRECT INFRINGEMENT GENERALLY.....................................18

  JURY INSTRUCTION NO. 30: INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT ...........19

  JURY INSTRUCTION NO. 31: INDIRECT INFRINGEMENT—CONTRIBUTORY
  INFRINGEMENT .........................................................................................................20

  JURY INSTRUCTION NO. 32: WILLFUL INFRINGEMENT..........................................................21

JURY INSTRUCTION NO. 33: INVALIDITY GENERALLY ...........................................................22

  JURY INSTRUCTION NO. 3434: PRIOR ART ......................................................................23

  JURY INSTRUCTION NO. 35: ANTICIPATION.......................................................................24

  JURY INSTRUCTION NO. 36: OBVIOUSNESS ......................................................................25

JURY INSTRUCTION NO. 37: LEVEL OF ORDINARY SKILL.......................................................27

JURY INSTRUCTION NO. 38: DAMAGES GENERALLY ..............................................................28

  JURY INSTRUCTION NO. 39: REASONABLE ROYALTY (DEFINITION) ..................................29

  JURY INSTRUCTION NO. 40: REASONABLE ROYALTY—RELEVANT FACTORS.................30

  JURY INSTRUCTION NO. 41: DAMAGES—APPORTIONMENT..................................................32

  JURY INSTRUCTION NO. 42: DATE OF COMMENCEMENT OF DAMAGES— PRODUCTS....33

JURY INSTRUCTION NO. 43: DUTY TO DELIBERATE; NOTES .......................................................34

JURY INSTRUCTION NO. 44: SOCIAL MEDIA INSTRUCTION ........................................................35

GLOSSARY...................................................................................................................................36

**JURY INSTRUCTION NO. 13:  JURY CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case.  The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you know, so there is no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments.  You must determine the facts from all the testimony that you have heard and the other evidence submitted.  You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom.  You may not be influenced by passion, prejudice, or sympathy you might have for Ms. Hafeman or LG in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it. Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

**JURY INSTRUCTION NO. 14:  EVIDENCE**

The evidence you are to consider consists of the testimony of the witnesses, the documents, and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. Nothing else is evidence.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you hear in this case, whether direct, circumstantial, or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

The statements, arguments, and questions by the attorneys are not evidence. Objections to questions are not evidence. The attorneys in this case may have objected if they thought that documents or testimony that were offered into evidence were improper under the rules of evidence. My legal rulings as to those objections are not evidence. My comments and questions are not evidence. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered. Do not speculate about what a witness might have said or what an exhibit might have shown.

The fact that Ms. Hafeman filed a lawsuit is not evidence that she is entitled to a judgment. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence. Likewise, the fact that LG has raised arguments against the claims asserted is not evidence that LG is entitled to a judgment. The act of making defensive arguments, by itself, does not in any way tend to establish that such arguments have merit and is not evidence.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here and nothing else. The notes taken by any juror are not evidence.

**JURY INSTRUCTION NO. 15: WITNESSES**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. For instance, has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that contradicted the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that misstatement may depend on whether it has to do with an important fact or with only an unimportant detail. This instruction applies to the testimony of all witnesses.

**JURY INSTRUCTION NO. 16: DEPOSITION TESTIMONY**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read or shown to you. This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**JURY INSTRUCTION NO. 17:  FOREIGN LANGUAGE TESTIMONY**

You heard testimony of a witness who testified in the Korean language.  Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter.  Although some of you may know the Korean language, it is important that all jurors consider the same evidence.   Therefore, you must accept the interpreter's translation of the witness's testimony.  You must disregard any different meaning.

You must not make any assumptions about a witness or party based solely on the use of an interpreter to assist that witness or party.

**JURY INSTRUCTION NO. 18:  EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

**JURY INSTRUCTION NO. 19:  INTERROGATORIES**

Evidence has been presented to you in the form of answers of one or the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**JURY INSTRUCTION NO. 20:  LIMITING INSTRUCTION**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**JURY INSTRUCTION NO. 21:  DEMONSTRATIVE EXHIBITS**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence.  Such exhibits are demonstrative exhibits. A demonstrative exhibit is a party's description, picture, or model used to describe something involved in this trial.  If your recollection of the evidence differs from a demonstrative exhibit, rely on your recollection.

**JURY INSTRUCTION NO. 22:  BIAS—CORPORATE PARTY INVOLVED**

Do not let bias, prejudice, or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**JURY INSTRUCTION NO. 23:  BURDEN OF PROOF**

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." This case involves two different burdens of proof, "preponderance of the evidence" and "clear and convincing evidence." The burden of proof in this case is on Ms. Hafeman for some issues and on LG for other issues.

**JURY INSTRUCTION NO. 24:  PREPONDERANCE OF THE EVIDENCE**

The burden of proof applicable to Ms. Hafeman in this case is known as the preponderance of evidence. Ms. Hafeman has the burden of proving patent infringement and damages by a preponderance of the evidence.

A preponderance of the evidence means to prove something is more likely than not – i.e., evidence that persuades you that a claim is more likely true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony. You may think of this preponderance of the evidence standard as slightly greater than 50%. If you find that Ms. Hafeman has failed to prove any element of her claim of patent infringement or damages by a preponderance of the evidence, then she may not recover on that claim.

In addition, Ms. Hafeman claims that LG's patent infringement was willful.  Ms. Hafeman also has the burden of proving willfulness by a preponderance of the evidence.

LG does not have any burden of proof on the issues of patent infringement, willful infringement, or damages.

**JURY INSTRUCTION NO. 25:  CLEAR AND CONVINCING EVIDENCE**

Patents issued by the United States Patent and Trademark Office are presumed valid. LG has the burden of proving patent invalidity by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established.  It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

The "clear and convincing evidence" standard is different from what you have heard about in criminal proceedings, where a fact must be proven beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from preponderance of the evidence, where proof need be only sufficient to tip the scales in favor of the party proving the fact, to at the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you can think of clear and convincing evidence as being between these two standards.

**JURY INSTRUCTION NO. 26:  SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Ms. Hafeman seeks money damages from LG for allegedly infringing the '287, '122, and '393 patents by making, using, importing, selling, and offering for sale products in the United States that are preinstalled with the Android operating system (in the case of LG's smartphones and tablets) and the Windows 10/11 operating systems (in the case of LG's laptops).  The Android and Windows 10/11 operating systems include software known as "Find My Device."  Ms. Hafeman contends that aspects of the "Find My Device" software infringe claims 1 and 4 of the '287 patent, claims 1, 4, and 7 of the '122 patent, and claims 1, 4, and 7 of the '393 patent.  These are known as the Asserted Claims.  Ms. Hafeman also contends that LG's infringement was willful, and that LG has contributed to and induced the end-users of its products to infringe the Asserted Claims.

LG denies that it has infringed the Asserted Claims of the '287, '122, or '393 Patents, and denies that it contributes to or induced infringement of others.  LG further denies that any infringement was willful.  LG also argues that the Asserted Claims are invalid.  Ms. Hafeman denies that the Asserted Claims are invalid.

Your job is to decide whether LG has infringed the Asserted Claims of the '287, '122, or '393 Patents and whether any of the Asserted Claims are invalid.  If you decide that any claim of the '287, '122, or '393 Patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Ms. Hafeman to compensate her for the infringement.

You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you make.  I will take willfulness into account later.

**JURY INSTRUCTION NO. 27:  PATENT CLAIMS**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.  In this case, Ms. Hafeman alleges that LG has infringed claims 1 and 4 of the '287 Patent, claims 1, 4, and 7 of the '122 Patent, and claims 1, 4, and 7 of the '393 Patent.  You may hear these claims referred to as the "Asserted Claims."

To know what a claim covers, a claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  The requirements of a claim are often referred to as "claim elements" or "claim limitations."  The coverage of a patent is assessed claim-by-claim.  When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to."  When "comprising" is used in the preamble of a claim, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.  For example, a claim to "a table comprising a tabletop, legs, and glue" would cover a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

The use of the terms "a" or "an" in a claim is a term of art, which has a special meaning in the context of a patent claim.  When used in a claim, the terms "a" or "an" mean "one or more."

For any words in the claim for which I have not provided you with a definition, you should apply

the plain and ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

My claim constructions are as follows:

| Claim Term | Construction |
|---|---|
| "owner" (all Asserted Claims) | "the person or entity that owns, rents, or licenses the recovery application or program, and/or the person or entity who controls the recovery service." |
| "computer recovery information" / "recovery information" / "return information" (all Asserted Claims) | "information provided by the owner so that the device can be returned to the owner" |
| "user" (all Asserted Claims) | "person who has physical possession of the device" |

**JURY INSTRUCTION NO. 28:  INFRINGEMENT GENERALLY**

I will now instruct you as to the rules you must follow when deciding whether Ms. Hafeman has proven that LG infringed any of the claims of the '287, '122, or '393 Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another. If, as here, a patent owner asserts multiple patent claims against the same product or method, then you must compare each claim separately against the product or method to determine whether the product or method infringes that individual patent claim. You may also find that none of the claims are infringed.

Here, Ms. Hafeman alleges that LG's accused smartphones, tablets, and laptops infringe claims 1 and 4 of the '287 Patent; claims 1, 4, and 7 of the '122 Patent; and claims 1, 4, and 7 of the '393 Patent.

In this case, there are two possible ways that a claim may be infringed. The two types of infringement are called: (1) direct infringement; and (2) indirect infringement. Contributory infringement and inducement of infringement are forms of indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.

In this case, Hafeman has alleged that LG directly infringes the Asserted Claims of the '287 patent, the '122 patent, and the '393 patent. In addition, Hafeman has also alleged that LG indirectly infringes the Asserted Claims of the '287 patent, the '122 patent, and the '393 patent. LG denies that it infringes, either directly or indirectly, any of the Asserted Claims of the '287 patent, the '122 patent, and the '393 patent.

In order to prove infringement, Hafeman must prove that the requirements for one or both of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

You have heard evidence about both the Front Door Software product and the Accused Products that include Find My Device functionality.  However, in deciding the issue of infringement you may not compare the Accused Products to the Front Door Software product. Rather, you must compare the Accused Products to the claims of the '287, '122, or '393 Patents when making your decision regarding infringement.

**JURY INSTRUCTION NO. 29:  DIRECT INFRINGEMENT GENERALLY**

A person or business entity that imports into the United States, or makes, uses, sells, or offers to sell in the United States a product claimed in a patent infringes that patent or performs the steps of a patented method in the United States.  Infringement is assessed on a claim-by-claim basis by comparing LG's accused products to the elements of each claim.  There may be infringement as to one claim but no infringement as to another claim.

In order to prove direct infringement of a claim by LG, Ms. Hafeman must prove infringement by a preponderance of the evidence, that is, that it is more likely than not that LG made, used, sold, or offered for sale within the United States, or imported into the United States, a product that meets all of the requirements of a claim and did so without the permission of Ms. Hafeman during the time the Asserted Patent was in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

A claim element is present if it exists in an Accused Product or was performed by an Accused Product as it is described in the claim language. If an Accused Product omits any requirement recited in one of the Asserted Claims, then that product does not infringe that claim.

You must determine, separately for each asserted claim, whether or not there is infringement.

**JURY INSTRUCTION NO. 30:  INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT**

In addition to direct infringement, Ms. Hafeman alleges that LG is liable for infringement by actively inducing end-users of the Accused Products to directly infringe the '287, '122, and '393 Patents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

LG is liable for active inducement of a claim of a patent only if Ms. Hafeman proves by a preponderance of the evidence:

> (1) that the acts actually carried out by end-users of LG's Accused Products directly infringe that claim;

> (2) LG took action during the time the patent was in force that was intended to cause and led to the infringing acts by end-users of LG's Accused Products; and

> (3) LG was aware of the patent and knew that the acts, if taken, would constitute infringement of the patent, or that LG believed there was a high probability that the acts by end-users of LG's Accused Products would infringe the patent and LG took deliberate steps to avoid learning of that infringement.

If you find that LG was aware of the patent, but believed that the acts it encouraged did not infringe that patent, LG cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that end-users of the Accused Products themselves directly infringe the claim. Nor is it sufficient that LG was aware of the act(s) by end-users of the Accused Products that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that LG specifically intended end-users of the Accused Products to infringe the patent or that LG believed there was a high probability that end-users of the Accused Products would infringe the patent, and took deliberate actions to avoid learning the infringing nature of LG's end-users' acts. The mere fact, if true, that LG knew or should have known that there was a substantial risk that LG's end-users' acts would infringe the patent would not be sufficient to support a finding of active inducement of infringement.

**JURY INSTRUCTION NO. 31:  INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT**

Hafeman also argues that LG is liable for contributory infringement by contributing to the direct infringement of the '287 Patent, the '122 Patent, and the '393 Patent by the end users of the Accused Products. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

LG is liable for contributory infringement of a claim of a patent if Hafeman proves by a preponderance of the evidence:

      (1)    LG sold, offered to sell, or imported within the United States a component of a product, material, or apparatus for use in a process, during the time that the patent was in force;

      (2)    The component, material, or apparatus was not a staple article or commodity of commerce suitable for substantial noninfringing use;

      (3)    The component, material, or apparatus constitutes a material part of the invention;

      (4)    LG was aware of the patent and knew that the component, material, or apparatus was especially made or adapted for use as an infringement of the claim; and

      (5)    End users of LG's Accused Products used the component, material, or apparatus to directly infringe a claim of the patent.

## JURY INSTRUCTION NO. 32:  WILLFUL INFRINGEMENT

If you decide that LG infringed any of the Asserted Claims, you must go on and address the additional issue of whether or not the infringement was willful. Willfulness requires you to determine whether Ms. Hafeman has proven by a preponderance of the evidence that LG knew of the patents and that the infringement by LG was deliberate or intentional. You may not determine that the infringement was willful just because LG was aware of the patent and infringed it. Instead, you must also find that LG deliberately or intentionally infringed the asserted claim of that patent.

To determine whether LG acted willfully, consider all facts and assess LG's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

1.      Whether or not LG acted consistently with the standards of behavior for its industry;

2.      Whether or not LG reasonably believed it did not infringe or that the patent was invalid;

3.      Whether or not LG made a good-faith effort to avoid infringing the '287 patent, the '122 patent, or the '393 patent, for example, whether LG attempted to design around the '287 patent, the '122 patent, or the '393 patent; and

4.      Whether or not LG tried to cover up its infringement.

If you decide the infringement was willful, that decision should not affect any damages award you give.  I will take willfulness into account later.

## JURY INSTRUCTION NO. 33:  INVALIDITY GENERALLY

I will now instruct you on the rules you must follow in determining whether LG has proven the affirmative defense of patent invalidity.

A patent is presumed to be valid.  In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.  As with infringement, invalidity is assessed on a claim-by-claim basis.

LG contends that the Asserted Claims are invalid based on anticipation and obviousness.

I will now instruct you on the invalidity issues you should consider.

## JURY INSTRUCTION NO. 34: PRIOR ART

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art." In this case, the prior art includes references, such as systems, publications, or patents, that LG contends disclose the claimed invention or elements of the claimed invention.

LG contends that the following is prior art to the Asserted Patents:

- Research in Motion's BlackBerry System
- Microsoft's Windows 2000
- IBM's EPO Publication No. EP0687968A2 ("Cohen")

You must determine whether each of the above is prior art that can be considered in determining whether the Asserted Claims of the Asserted Patents are invalid. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

LG contends that the Blackberry System, Windows 2000 System, and Cohen are prior art because they were known to or used by others, or on sale or offered for sale, in the United States or patented or described in a printed publication anywhere in the world before September 20, 2004, which is the date Hafeman filed U.S. Patent Application No. 10/945,332. The parties refer to this application as the '332 application.

LG must prove by clear and convincing evidence that the Blackberry System, Windows 2000 System, and Cohen are prior art.

**JURY INSTRUCTION NO. 35:  ANTICIPATION**

In order for someone to be entitled to a patent, the invention must actually be "new."  LG contends that the Asserted Claims are not new and are invalid as anticipated because the claimed invention was already publicly known or publicly used by others or offered for sale or sold in the United States through the Blackberry System. LG must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid. Invalidity is determined on a claim-by-claim basis. Therefore, there may be invalidity as to one claim but not as to another.

In general, an invention is new when the identical invention as claimed has not been used or disclosed before. If the claim is not new, we say that it was "anticipated" by prior art. Prior art is the general body of knowledge in the public domain, such as articles or other patents before the claim was made. A claim that is "anticipated" by the prior art is not entitled to patent protection. Anticipation must be proved on a claim-by-claim basis.

LG contends that the asserted claims of the patents-in-suit are invalid for anticipation. LG must convince you of this by clear and convincing evidence.

To anticipate a claim, each and every element in the claim must be present in a single item or system of prior art, and arranged or combined in the same way as recited in the claim. You may not combine two or more items or systems of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular item.

**JURY INSTRUCTION NO. 36:   OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described in a single prior art reference or system before the priority date of the claimed invention, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the priority date of the claimed invention.

LG may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.  Specifically, LG contends that the combination of Microsoft's Windows 2000 System + IBM's EPO Publication No. EP0687968A2 ("Cohen") renders obvious the Asserted Claims.

In determining whether a claimed invention is obvious, you must consider (1) the level of ordinary skill in the field of the Asserted Patents that someone would have had at the time of the priority date of the claimed invention, (2) the scope and content of the prior art, (3) any differences between the prior art and the claimed invention, and, (4) any so-called objective evidence or secondary considerations of non-obviousness, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you should may consider whether, at the time as of the priority date of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:

> (1)      whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

> (2)      whether the claimed invention provides an obvious solution to a known problem in the relevant field;

> (3)      whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

> (4)      whether the prior art teaches away from combining elements in the claimed invention; and

> (5)      whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

    a.       Whether products incorporating the claimed invention were commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities).

    b.       Whether the claimed invention satisfied a long-felt need;

    c.       Whether others had tried and failed to make the claimed invention;

    e.       Whether others copied the claimed invention;

    f.       Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

    g.       Whether the claimed invention achieved unexpected results;

    h.       Whether others in the field praised the claimed invention;

    i.       Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

    j.       Whether others sought or obtained rights to the patent from the patent holder; and

    k.       Whether the inventor proceeded contrary to accepted wisdom in the field.

You should consider these factors along with all the other evidence in the case in deciding whether LG has proven that the Asserted Claims would have been obvious.

In determining whether the claimed invention was obvious, consider each claim separately.

**JURY INSTRUCTION NO. 37:  LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

Ms. Hafeman contends that the level of ordinary skill is a Bachelor's Degree in Computer Science or a related field, and two years of experience working in the field of software development.  More education could be substituted for experience, and vice versa.

LG contends that the level of ordinary skill is a Bachelor's Degree in computer science, computer engineering, electrical engineering, or the equivalent and at least two years of experience in the relevant field, e.g., electronic communications systems.

**JURY INSTRUCTION NO. 38: DAMAGES GENERALLY**

If you find that LG infringed an Asserted Claim of the Asserted Patents, and that the claim is not invalid, you must determine the amount of damages to be awarded to Ms. Hafeman for the infringement.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that LG has not infringed any valid claim of the patent, then Ms. Hafeman is not entitled to any damages.

If you find that Ms. Hafeman is entitled to damages, the amount of damages must be adequate to compensate Ms. Hafeman for the infringement. Damages are not meant to punish an infringer. Your damages award, if you reach this issue, should put Ms. Hafeman in approximately the same financial position that it would have been in had the infringement not occurred.

Hafeman has the burden to establish the amount of her damages by a preponderance of the evidence. In other words, you should award only those damages that Hafeman establishes that she more likely than not has suffered. While Hafeman is not required to prove the amount of her damages with mathematical precision, she must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Hafeman seeks a reasonable royalty. A reasonable royalty is defined as the money amount Hafeman and LG would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. You must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that Hafeman is entitled to recover no less than a reasonable royalty for each infringing sale.

**JURY INSTRUCTION NO. 39:  REASONABLE ROYALTY (DEFINITION)**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time before the infringement first began.  Ms. Hafeman bears the burden of proving the amount of a reasonable royalty by a preponderance of the evidence.

In considering this hypothetical negotiation to determine a reasonable royalty in this case, you should focus on what the expectations of Ms. Hafeman and LG would have been had they acted reasonably in their negotiations and had they entered into an agreement just before any infringement began.  In determining this, you must assume that both parties believed the claims that you found valid and infringed were valid and would be infringed and that Ms. Hafeman and LG were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**JURY INSTRUCTION NO. 40:  REASONABLE ROYALTY—RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The value that the claimed invention contributes to the accused products.

(2)     The value that factors other than the claimed invention contribute to the accused products.

(3)     Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

The so-called *"Georgia-Pacific"* factors, which can be considered to inform the hypothetical negotiation, include the following:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)    The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)   The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)   The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)   The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)   The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)   The opinion and testimony of qualified experts.

(15)   The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

**JURY INSTRUCTION NO. 41:  DAMAGES—APPORTIONMENT**

Any amount of damages must be based on the value attributable to the patented invention, as distinct from the unpatented features of the Accused Products or other factors such as marketing or advertising, or LG's size or market position. A royalty compensating Hafeman for damages must reflect only the value attributable to the infringing features of the Accused Product or its performance of the method, and no more. In other words, any damages award must apportion (separate out) the value of the Android and Windows Find My Device programs that is attributable to the patented technology.

**JURY INSTRUCTION NO. 42:  DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS**

In determining the amount of damages you must consider when any alleged damages began. Damages commence on the date that LG received actual notice of the alleged infringement.

Actual notice means that Ms. Hafeman communicated to LG a specific charge of infringement of the '287, '122 and/or '393 Patents by a specific accused product or device.

Actual notice means a communication that (1) informs the recipient of the identity of the patent or a related patent, (2) informs the recipient of the activity that is believed to be an infringement, and (3) includes a proposal to abate the infringement, whether by license or otherwise.

Actual notice is an objective standard that is based on the actions of the patentee or the patentee's agent, not the knowledge or understanding of the alleged infringer.  It is not controlling whether the patentee threatens suit.  Rather, the actual notice requirement is satisfied when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient may be an infringer.  Notice of infringement of a parent patent can expand to include notice of infringement of a continuation patent.  You must consider the communication as a whole and it is not dispositive that the alleged notice contains a disclaimer of a charge of infringement or does not make an unqualified charge of infringement.

The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed (July 2, 2021).  However, Ms. Hafeman claims to have provided actual notice prior to the filing of the complaint, when Tangible IP sent emails and linked claim charts to LG on March 29, 2018, August 13, 2018, October 18, 2018, December 13, 2018, and/or August 4, 2020.  Ms. Hafeman has the burden of establishing that it is more probable than not LG received actual notice prior to the filing of the complaint in this action.

## JURY INSTRUCTION NO. 43:  DUTY TO DELIBERATE; NOTES

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during the trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  Answer each question in the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions to reach that result.  Your answers and your verdict must be unanimous.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

**JURY INSTRUCTION NO. 44:  SOCIAL MEDIA INSTRUCTION**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, a smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

# GLOSSARY

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations. definitions.

**Abstract:** A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment:** A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation:** A situation in which a claimed invention is described in a single prior art reference or system and, therefore, is not considered new and is not entitled to be patented.

**Claim:** Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Drawings:** The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements:** The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:** A product or method that contains the claimed invention.

**Examination:** Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:** Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:** Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing, urging or encouraging another to directly infringe a patent. Contributory

infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer, one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for noninfringing uses.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the words "requirement" and "element."

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the invention.

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed. When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Evidence that the claimed invention was already known or would have been obvious. This evidence includes items that were publicly known or that have been used or offered for sale, or references such as publications or patents.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Royalty**: A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.